# EXHIBIT "2"

COLLOT GUERARD
JOSHUA DOAN
MIRY KIM
AMANDA GRIER
(Each appearing pursuant to DUCivR 83-1.1(d)(1))
600 Pennsylvania Ave., NW, CC-8528
Washington, D.C. 20580
Telephone: (202) 326-3338
cguerard@ftc.gov; jdoan@ftc.gov
mkim@ftc.gov; agrier@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION
ROBERT G. WING (4445)
KEVIN MCLEAN (16101)
Assistant Attorney General
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
Telephone: 801-366-0310
rwing@agutah.gov; kmclean@agutah.gov
Attorneys for Plaintiff
UTAH DIVISION OF CONSUMER PROTECTION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>UTAH DIVISION OF CONSUMER PROTECTION,<br><br>      Plaintiffs,<br><br>vs.<br><br>ZURIXX, LLC, a Utah limited liability company,<br><br>BRAND MANAGEMENT HOLDINGS, LLC, a Delaware limited liability company, | **FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**<br><br>Case No: 2:19-CV-00713-DAK<br><br>District Judge Dale A. Kimball |

CAC INVESTMENT VENTURES, LLC, a
Puerto Rico limited liability company,

CARLSON DEVELOPMENT GROUP,
LLC, a Utah limited liability company,

CARLSON DEVELOPMENT GROUP,
LLC, a Puerto Rico limited liability
company,

CJ SEMINAR HOLDINGS, LLC, a Utah
limited liability company,

DORADO MARKETING AND
MANAGEMENT, LLC, f/k/a Zurixx, LLC,
a Puerto Rico limited liability company,

JSS INVESTMENT VENTURES, LLC, a
Utah limited liability company,

JSS TRUST, individually and as an owner
of JSS INVESTMENT VENTURES, LLC,

ZURIXX FINANCIAL, LLC, a Utah
limited liability company,

ZURIXX FINANCIAL, LLC, a Puerto Rico
limited liability company,

CRISTOPHER A. CANNON, individually
and as an officer of ZURIXX, LLC,

JAMES M. CARLSON, individually and as
an officer of ZURIXX, LLC,

JEFFREY D. SPANGLER, individually and
as an officer of ZURIXX, LLC, and

GERALD D. SPANGLER, as trustee for
the JSS TRUST.

Defendants.

Plaintiffs, the Federal Trade Commission ("FTC") and the Utah Division of Consumer Protection ("Division"), for the Complaint allege:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the CRFA, 15 U.S.C. § 45, and in violation of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

2.      The Division brings this action pursuant to the authority granted by Utah Code §§ 13-2-5(3), 13-11-17, 13-15-6, 13-26-8, and 13-26-8, and the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The Division seeks, among other things, temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, civil penalties, fines, and other equitable relief for Defendants' acts, omissions, or practices in violation of the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code § 13-11-1 *et seq.,* and the Business Opportunity Disclosure Act ("BODA"), Utah Code § 13-15-1 *et seq.*, the TSR, 16 C.F.R. Part 310, and the Telephone Fraud Prevention Act ("TFPA"), Utah Code § 13-26-1 *et seq*.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

4.      This Court has supplemental jurisdiction over the Division's claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## SUMMARY OF THE CASE

6.      Since at least July 2013, Defendants Zurixx, LLC, Brand Management Holdings, LLC, CAC Investment Ventures, LLC, Carlson Development Group, LLC (Utah), Carlson Development Group, LLC (Puerto Rico), CJ Seminar Holdings, LLC, Dorado Marketing and Management, LLC, JSS Investment Ventures, LLC, JSS Trust Zurixx Financial, LLC (Utah), and Zurixx Financial, LLC (Puerto Rico) (collectively "Zurixx") – led by individual defendants Cristopher Cannon, James Carlson, and Jeffrey Spangler – have marketed and sold real estate investment products and services ("products") that purport to allow consumers to make thousands of dollars in profit using Zurixx's system.

7.      Zurixx's "system" comprises two flipping strategies:  "fix and flip" and "wholesale flips."  A "fix and flip" involves purchasing and renovating a property before selling it to an end user.  A "wholesale flip" involves acquiring an interest in a property and then transferring that interest to a wholesale buyer, who will, in turn, fix and flip the property.

8.      To entice consumers to purchase its products, Zurixx routinely hosts free live events that depict celebrities from house flipping, home renovation, and entrepreneurship television programs, who indicate that their team of "experts" will teach consumers how to make money by following their system of real estate investing.

9.      During the free events, Zurixx repeatedly represents that consumers who sign up for its 3-day workshop are likely to earn thousands of dollars in profit, often with little risk, time, or effort.  Zurixx also represents that consumers who purchase the workshop will receive 100% funding for their real estate investments regardless of their credit history.  It backs up these representations with a money-back guarantee – consumers who do not make "a minimum of three times" the price of the 3-day workshop within six months will receive their money back.

10.     For example, a Zurixx presenter made the following representations during a December 2018 free event in Georgia:

> Not only are [Tarek and Christina El Moussa] going to give you a professional education, not only are they going to give you a list of all their lending partners to fund all your deals plus to rehab regardless of your credit, not only are they going to give you the cash buyers list so you have the buyers, but they are going to guarantee that you or your partners closes a deal within three months, you get your money back…

11.     A Zurixx presenter at a June 2018 free event in California told attendees, "[i]f it doesn't work for you, we still give you $2,000 back.  This really is a no-lose situation as long as you try it."

12.     Zurixx telemarketers have also called consumers who have purchased Zurixx's products to sell them real estate coaching packages, representing to consumers that the coaching packages will allow consumers to be even more successful financially in their real estate business. Zurixx's representations are false or unsubstantiated.  Consumers are unlikely to earn thousands of dollars in profit from real estate investments by using Zurixx's products. Consumers are unlikely to receive 100% funding for real estate deals through Zurixx or its partners and affiliates.  Moreover, Zurixx's six-month money-back guarantee contains

substantial limitations that Zurixx fails to disclose adequately until after consumers have paid for the 3-day workshop.

13.    Many dissatisfied consumers have requested refunds from Zurixx.  When Zurixx agrees to refund consumers' money, it routinely provides only a partial refund, which in many instances, Zurixx conditions on the consumers signing an agreement barring them from speaking with the FTC, state Attorneys General, and other regulators, submitting complaints to the Better Business Bureau, or posting negative reviews or complaints about Zurixx and its products.

14.    In perpetrating its scheme, Zurixx has violated the FTC Act, the CRFA, the TSR, the UCSPA, the BODA and the TFPA.

## PLAINTIFFS

15.    The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the CRFA, 15 U.S.C. § 45b.  The CRFA prohibits the offering of provisions in form contracts that restrict individual consumers' ability to communicate reviews, performance assessments, and similar analyses about a seller's products, services, or conduct.  The FTC also enforces the Telemarketing Act.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

16.    The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the CRFA, and the TSR and to secure such relief as may be appropriate in each case, including rescission or reformation of contracts, restitution,

the refund of monies paid, disgorgement of ill-gotten monies, other equitable relief, and damages. 15 U.S.C. §§ 53(b), 57b, and the CRFA, 15 U.S.C. § 45b.

17.     The Division is an agency of the State of Utah created by statute. Utah Code § 13-2-1(1). The Division administers and enforces the UCSPA, which prohibits deceptive acts and practices in connection with consumer transactions. It administers and enforces the BODA, which requires sellers of assisted marketing plans to file certain information with the Division and to provide disclosures to prospective purchasers.

18.     The Division is authorized to take legal action against persons who violate the UCSPA and the BODA to enjoin violations of the acts, seek other equitable relief, and to obtain damages, fines, civil penalties, fees, and costs. Utah Code §§ 13-2-5(3); 13-11-17(1)(a)-(d); 13-15-6(3).

## DEFENDANTS

19.     Defendant **Zurixx, LLC** is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah 84121. It does business under numerous fictitious names including, but not limited to, Advanced Financial Training, Advanced Real Estate Education, Doug Hopkins Real Estate Formula, Fast Track Flips, Flip Advantage, Flip It Forward, Flippin' On The Side, Flipping Formula Education, Good Flips, High Point Training, LLC, Property Wars, Real Estate Elevated, Rules of Renovation, Side Flips, Success Path Education, Two Chicks and Training Tools, Winning the Property War, 10X Success Real Estate, Fixing to Flip, Karen and Mina's Real Estate Education, Next Level Success Real Estate, and Will to Win Real Estate. Zurixx, LLC transacts or has transacted business in this District and throughout the United States. Its bank accounts have

been located in Utah, most of its employees have been located in Utah, it has directed its activities from its Utah headquarters, the majority of its efforts to fulfill its contracts have arisen from Utah, and it has used Utah transactional resources in engaging in its efforts. It formulated the Zurixx system in Utah. At all times material to this Complaint, acting alone or in concert with others, Zurixx, LLC has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

20. Defendant **Brand Management Holdings**, **LLC** ("Brand Management") is a Delaware limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah 84121. Brand Management transacts or has transacted business in this District and throughout the United States. Its bank accounts have been located in Utah, it has directed its activities from its Utah headquarters, the majority of its efforts to fulfill its contracts have arisen from Utah, and it has used Utah transactional resources in engaging in its efforts. It formulated the Zurixx system in Utah. Since at least October 2016, acting alone or in concert with others, Brand Management has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

21. Defendant **CAC Investment Ventures LLC** ("CAC Ventures") is a Puerto Rico limited liability company with its principal place of business at Centro Commercial Paseo del Plata, 602 Avenue José Efrón, Office 1002, Dorado, Puerto Rico 00646. CAC Ventures is a member of Dorado Marketing and Management, LLC. CAC Ventures transacts or has transacted business in this District and throughout the United States. Since at least July 2015, acting alone or in concert with others, CAC Ventures, as a member of Dorado, has advertised, marketed,

distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

22.     Defendant **Carlson Development Group, LLC** ("CDG Utah") is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah 84121.  CDG Utah is a manager and member of Zurixx Financial Utah.  CDG Utah transacts or has transacted business in this District and throughout the United States.  Its bank accounts have been located in Utah, it has directed its activities from its Utah headquarters, the majority of its efforts to fulfill its contracts have arisen from Utah, and it has used Utah transactional resources in engaging in its efforts.  It formulated the Zurixx system in Utah.  At all times material to this Complaint, acting alone or in concert with others, CDG Utah, by way of Zurixx Financial Utah and through Zurixx, LLC, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

23.     Defendant **Carlson Development Group, LLC** ("CDG Puerto Rico") is a Puerto Rico limited liability company with its principal place of business at 12 Dorado Beach East, Dorado, Puerto Rico.  CDG Puerto Rico is a member of Zurixx Financial Puerto Rico.  CDG Puerto Rico transacts or has transacted business in this District and throughout the United States. Since at least July 2015, acting alone or in concert with others, CDG Puerto Rico, by way of Zurixx Financial Puerto Rico and through Dorado and Brand Management, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

24.     Defendant **CJ Seminar Holdings, LLC ("CJ Seminar")** is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah 84121.  CJ Seminar is a member of Zurixx, LLC and Brand Management.  CJ Seminar transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, CJ Seminar, as a member of Zurixx, LLC and Brand Management, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

25.     Defendant **Dorado Marketing and Management, LLC ("Dorado")**, formerly known as Zurixx, LLC, is a Puerto Rico limited liability company with its principal place of business at 1302 Ponce de Leon Avenue, San Juan, Puerto Rico 00907.  Dorado transacts or has transacted business in this District and throughout the United States.  Since at least August 2014, acting alone or in concert with others, Dorado has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

26.     Defendant **JSS Investment Ventures, LLC ("JSS Ventures")** is a Utah limited liability company with its principal place of business at 814A Saiz Lane, Bloomfield, New Mexico 87413.  JSS Ventures is a member of CJ Seminar and Dorado.  JSS Ventures transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, JSS Ventures, by way of CJ Seminar and through Zurixx, LLC and Dorado, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

27.     Defendant **JSS Trust** is a Utah trust for which Jeffrey D. Spangler is the grantor. JSS Trust owns JSS Ventures.  JSS Trust transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, JSS Trust, by way of JSS Ventures and CJ Seminar, and through Zurixx, LLC and Dorado, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

28.     Defendant **Zurixx Financial, LLC ("Zurixx Financial Utah")** is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah 84121.  Zurixx Financial Utah is a manager and member of Zurixx, LLC.  Zurixx Financial Utah transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Zurixx Financial Utah, as a manager and member of Zurixx, LLC, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

29.     Defendant **Zurixx Financial, LLC ("Zurixx Financial Puerto Rico")** is a Puerto Rico limited liability company with its principal place of business at 12 Dorado Beach East, Dorado, Puerto Rico.  Zurixx Financial Puerto Rico is a member of Dorado and Brand Management.  Zurixx Financial Puerto Rico transacts or has transacted business in this District and throughout the United States.  Since at least July 2015, acting alone or in concert with others, Zurixx Financial Puerto Rico, as a member of Dorado and Brand Management, has advertised, marketed, distributed, or sold the real estate investment products at issue in this Complaint to consumers throughout the United States.

11

30.     Defendant **Cristopher A. Cannon** is an officer of Zurixx, LLC, a manager of CJ Seminar, and a member of CAC Ventures.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Cannon, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

31.     Defendant **James M. Carlson** is the chief executive officer of Zurixx, LLC and a manager and member of CDG Utah and CDG Puerto Rico.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Carlson, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

32.     Defendant **Jeffrey D. Spangler** is an officer of Zurixx, LLC, a manager of CJ Seminar, a member and manager of JSS Ventures, and the grantor of JSS Trust.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Spangler, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

33.     Defendant **Gerald D. Spangler** is the trustee of JSS Trust, and holds legal title to all of JSS Trust's assets, including Zurixx and Dorado through CJ Seminar and JSS Ventures.  In his capacity as trustee of JSS Trust, Gerald Spangler, at all times material to this Complaint, acting alone or in concert with others, has formulated, directed, controlled, had the authority to

control, or participated in the acts and practices set forth in this Complaint.  In his capacity as

trustee of JSS Trust and in connection with the matters alleged herein, Gerald Spangler transacts

or has transacted business in this District and throughout the United States.

### DEFENDANTS ARE A COMMON ENTERPRISE

34.     Defendants Zurixx, LLC, Brand Management, CAC Ventures, CDG Utah, CDG

Puerto Rico, CJ Seminar, Dorado, JSS Ventures, JSS Trust, Zurixx Financial Utah, and Zurixx

Financial Puerto Rico (collectively "Corporate Defendants" or "Zurixx") have operated as a

common enterprise while engaging in the deceptive acts or practices and other violations of the

law alleged herein.  Corporate Defendants have conducted the business practices described

herein through an interrelated and interdependent network of companies that have a common

business purpose, ownership, officers, managers, members, business functions, and office

locations.  Because Corporate Defendants have operated as a common enterprise, each of them is

jointly and severally liable for the acts and practices alleged herein.

35.     Individual Defendants Cristopher A. Cannon, James M. Carlson, and Jeffrey D.

Spangler have formulated, directed, controlled, or had the authority to control the acts or

practices of the Corporate Defendants that constitute the common enterprise.

36.     Carlson, Zurixx's CEO, has co-managed the day-to-day operations of the

Corporate Defendants, splitting his time between Zurixx's Utah office and Dorado's Puerto Rico

office.  Carlson has overseen the marketing, accounting, and customer-service departments,

approved expenses, and participated in weekly management meetings with Cannon, Spangler,

and others.  As part of his responsibilities, Carlson has attended regular meetings where

recordings of Zurixx's free events and 3-day workshops were reviewed.

37.     Cannon, the President of Dorado, has also been involved in managing the day-to-day operations of the Corporate Defendants, primarily within the Puerto Rico office, but also in Zurixx's Utah office.  Cannon has managed Zurixx's business development, relationships with celebrity endorsers, sales training, and free events and 3-day workshops.  Cannon has attended weekly management meetings and regular meetings where recordings of free events and 3-day workshops were reviewed.

38.     Spangler, President of Zurixx, has managed the Corporate Defendants' coaching and telesales departments.  Spangler has been present in the Utah office on a daily basis, overseeing the day-to-day activities in that office, including issues that arise while Cannon and Carlson are in the Puerto Rico office.  He has attended weekly management meetings and the regular meetings where recordings of Zurixx's free events and 3-day workshops were reviewed.

39.     All three Individual Defendants have participated in meetings with the Electronic Retailing Self-Regulation Program ("ERSP"), a program administered by the Council of Better Business Bureaus, during which ERSP staff brought to the Individual Defendants' attention misrepresentations and inadequate disclaimers ERSP had identified by its monitoring of Zurixx's sale presentations at the free events and 3-day workshops.

40.     All three Individual Defendants knew about and discussed chargeback levels that stemmed from consumers seeking to reverse their credit card payment because consumers felt that the presenters and telesales employees had made false earnings claims, and other false claims.

41.     All three have managed the common enterprise and received millions of dollars in distributions, salaries, and other funds from the enterprise.

## COMMERCE

42.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## ZURIXX'S BUSINESS ACTIVITIES

43.    Since at least July 2013, Zurixx has advertised, marketed, distributed, promoted, and sold its products to consumers throughout the United States and Canada.

44.    Zurixx has sold its products under numerous brand names including, but not limited to:  Advanced Financial Training, Advanced Real Estate Education, Doug Hopkins Real Estate Formula, Fast Track Flips, Flip Advantage, Flip It Forward, Flippin' On The Side, Flipping Formula Education, Good Flips, High Point Training, LLC, Property Wars, Real Estate Elevated, Rules of Renovation, Side Flips, Success Path Education, Two Chicks and Training Tools, Winning the Property War, 10X Success Real Estate, Fixing to Flip, Karen and Mina's Real Estate Education, Next Level Success Real Estate, and Will to Win Real Estate.

45.    The advertised "retail" prices for Zurixx's products typically range from $5,995 to $73,973; the "discounted" prices typically range from $1,997 to $41,297.

46.    Zurixx has received net deposits of more than $530 million from the sale of its real estate products and services, and the company claims to have sold its products to more than 70,000 individuals.

47.    Zurixx's products are "assisted marketing plans" as defined by the BODA because the products cost $500 or more and are sold for the purpose of enabling consumers to start a real estate investing business.  Utah Code § 13-15-2(1).  In addition, Zurixx has

represented that its real estate investment products will enable the consumer to derive a profit that exceeds the price paid for the products.  Utah Code § 13-15-2(1)(a)(iv).

48.     Zurixx is a "seller" as that term is defined by the BODA because Zurixx has sold or offered to sell assisted marketing plans.  Utah Code § 13-15-2(8).

49.     Zurixx has sold assisted marketing plans, but has not filed the required information with the Division, including names and addresses of the business, trademarks or trade names, the business experience of the company's directors and officers, amounts to be paid by consumers, a statement of services the seller will perform for the purchaser, a statement of representations made to prospective purchasers, a copy of any contracts, numbers of marketing plans sold to date, and numbers of cancelled sales.

50.     Zurixx has sold assisted marketing plans to consumers, but has not provided consumers with a disclosure statement containing the following warning after any earnings representation:

### CAUTION
No guarantee of earnings or ranges of earnings can be made.  The number of purchasers who have earned through this business an amount in excess of the amount their initial payment is at least ___ which represents ___% of the total number of purchasers of this business opportunity.

Utah Code §§ 13-15-4; 13-15-5.

### **Zurixx's Free Teaser Event**

51.     In an effort to lure consumers into purchasing its products, Zurixx conducts free live events throughout the country.

52.     Zurixx markets its free events via direct mailers, the internet, email, radio, social media, and newspaper advertisements.

53.     Zurixx has routinely advertised its free events as sponsored by celebrities from

fix-and-flip, home renovation, and entrepreneurship television programs including, among

others, Peter Souhleris and Dave Seymour from the A&E show "Flipping Boston," Hilary Farr

from the HGTV show "Love It or List It," Tarek and Christina El Moussa from the HGTV show

"Flip or Flop," and Robert Herjavec and Daymond John from the ABC show "Shark Tank."

54.     Zurixx invites consumers to attend the free event to learn how to make thousands

of dollars in profit by investing in real estate "using other people's money."

55.     In some instances, the free event starts with welcome videos by celebrity

endorsers who indicate that their team of "experts" will teach consumers how to make money by

following their system of real estate investing.

56.     In numerous instances at the free event, Zurixx teaches consumers very little, if

anything, about how to make thousands of dollars in profit by investing in real estate.  Instead,

Zurixx uses the free event to sell its 3-day workshop, which it advertises as retailing for $5,995.

It routinely uses misrepresentations to convince consumers to pay the "discounted" price of

$1,997 for the workshop, a price Zurixx represents is available only at the free event.

## Misrepresentations At The Free Event That Consumers Are Likely To Earn Thousands Of Dollars In Profit Through Real Estate Investing

57.     To persuade attendees to pay for the 3-day workshop, Zurixx routinely makes

earnings claims and shares testimonials about or from purportedly successful purchasers of its

products.  For example, Zurixx presenters made the following representations between March

2018 and July 2019 in California, Florida, Georgia, and Virginia:

> A.  "… our students are making right now in this area anywhere from $60,000 to upwards of $150,000 per flip, per transaction they do."

B.  "The average profit margin's about 20 percent [per flip].  So on a $500,000, I expect to walk away with…$100,000 on one check."

C.  The "average profit last year alone on a flip was about $68,000, which, by the way, represent a 40 percent – just under a 50 percent ROI…Is 50 percent, is that a pretty good ROI?"

D.  "… the average profit margin up here is about 25 percent.  So 25 percent of $200,000 is $50,000 per flip."

E.  "… average fix and flip profit margin in this country per house, do you want to know why so many people are loving and doing it, 68,000 dollars, per deal."

F.  "As far as expected profits – and these are averages for this area – on average with wholesale deals, you can expect to put $3,000 to $15,000 cash in your pocket.  Now, flipping is where you are going to make your bigger paychecks, $20,000, 50--, 100--…."

G.  "… you're making $15,000, $20,000" with a wholesale deal.

H.  "Now write this down, in this area finder's fee, low end, are going to be 6 grand, high end 20" for a wholesale deal.

58.     Zurixx's earnings claims are false and unsubstantiated.  Consumers who attend its 3-day workshop are not likely to earn thousands of dollars in profit through real estate investing.

### Misrepresentations At The Free Event That Consumers Will Receive 100% Funding For Their Real Estate Investments

59.     Zurixx routinely promises that consumers will have access to lenders that will provide 100% funding for consumers' real estate deals, including any rehabilitation costs.  In some instances, Zurixx represents that consumers will obtain 100% funding regardless of their credit score or background.

60.     In numerous instances, Zurixx represents to consumers that they will not have to use any of their own money for real estate deals because they will be using "other people's money".  In some instances, Zurixx represents that consumers will incur "no liability" investing

18

in real estate.  For example, Zurixx presenters made the following representations between

March 2018 and July 2019 in California, Florida, Georgia, and Virginia:

    A.  We have "our own group of private money lenders who will put up 100 percent of the money to fund your real estate deals, including rehab with no regard to your personal income, assets or credit."

    B.  "Would you like to know how you can make some immediate profits in real estate without using any money, none of your, none of ours, and have no liability, yes or no?"

    C.  Tarek and Christina's lending partners "will fund 100 percent of the real estate you buy, fund 100 percent of the rehab, regardless of your credit or your background."

    D.  "… we're going to give you money to buy and to renovate" the properties.

    E.  Trusted lending partners "will fund all of your deals, folks."

    F.  "Our lending partners, they don't care about your credit.  They don't care about your job history.  All that they care about is the what?  Is the deal.  If the deal is a good deal, then they will fund it."

    G.  The funding sources will help the audience "with no money out of your own pocket."

    H.  "Okay, then we're going to teach you to implement the right plan, start to finish.  When that happens, call us up, we get the funding for you, not you. We deal with these 100 percent funding partners every day, not you…And if they won't fund it, we'll get your deal funded, just know that, and we do that, not you, all right."

    61.    Zurixx's 100% funding claims are false or unsubstantiated.  In numerous

instances, if not virtually always, consumers who attempt to get 100% funding for potential real

estate investments are unable to do so.

**Misrepresentations At The Free Event That Making Thousands of Dollars In Profit From
Real Estate Investing Requires Little Time And Effort**

62.     Zurixx routinely represents to consumers that little time and effort are required to

make thousands of dollars in profit through real estate investing.

63.     For example, Zurixx presenters made the following representations between

March 2018 and December 2018 in California and Florida:

     A.  "A lot of our students are spending anywhere from eight to 10 hours a week
and getting above average results.  Because once you know the recipe, you're
able to get the results a whole lot faster."

     B.  "Flipping…figure 10 to 20 hours of your time…."

     C.  A single mother who spent "twenty hours of work, [earned a] $42,000 profit"
on her "first deal from start to finish."

     D.  "So, in the beginning, to make 40 offers, that would take anywhere from about
15 to maybe 20 hours over the next 12 months…."

     E.  "Frank" who purchased property for $335,000, sold it for $490,000, for a
profit of $131,000 and spent "25 hours of [his] time total invested in this
deal."

     F.  "… it will take anywhere from ten hours to 40 hours in the next six months to
make ten offers."

     G.  "… wholesaling, figure five to ten hours of your time…."

64.     Zurixx's claims that little time and effort are needed to make thousands of dollars

in profit by investing in real estate are false and unsubstantiated.  Consumers are not likely to

make thousands of dollars in profit by spending only a few hours a week on their real estate

investment business.

20

## Misrepresentations At The Free Event That Consumers Who Attend The 3-Day Workshop Will Learn Everything They Need To Know To Make Thousands of Dollars in Profit From Real Estate Investing

65.     Zurixx routinely represents that consumers will learn all they need to know at the

3-day workshop to make thousands of dollars in profit through real estate investing.

66.     For example, Zurixx made the following representations between March 2018 and

July 2019 in California, Florida, Georgia, and Virginia:

A.  "By the end of our three-day investment accelerator, graduates will have the knowledge, expertise, and training to put together sound, effective loan packages that are custom-tailored to appeal to the right lending solutions to fit your needs.  We will teach you what to do and what not to do to make sure your deals are profitable and attractive to lenders whether you're wholesaling, flipping, or acquiring income-producing properties."

B.  "You are going to come out of our three-day training class all set to be making ten offers a week on distressed properties…."

C.  "Not only are [Tarek and Christina El Moussa] going to give you a professional education, not only are they going to give you a list of all their lending partners to fund all your deals plus to rehab regardless of your credit, not only are they going to give you the cash buyers list so you have the buyers, but they are going to guarantee that you or your partners closes a deal within three months, you get your money back or you and partner don't do the deal in six months, if you want to make five offers and your partner makes five offers, that includes the ten right here."

D.  "Our three day investment accelerator will teach you to leverage cutting-edge real estate strategies to generate profits repeatedly and we'll grant you access to our network of lenders and private investors who are always looking to lend capital on sound real estate deals."

67.     The claim that consumers are likely to learn at the 3-day workshop all they need

to know to make thousands of dollars in profit from investing in real estate is false or

unsubstantiated.  In fact, at the 3-day workshop, Zurixx itself routinely represents to consumers

that the workshop is a just a "beginner" course, and in order to make thousands of dollars in

profit, consumers need to also purchase Zurixx's Diamond, Platinum, or Gold advanced package,

which it advertises as "retailing" from $35,792 to $73,973, and is available at discounted prices

from $21,297 to $41,297, but only if purchased at the 3-day workshop.

### **Failure To Disclose Material Aspects Of Zurixx's Refund Policy At The Free Event**

68.     Zurixx routinely touts two money-back guarantees to convince consumers to

purchase the 3-day workshop.  Zurixx represents that consumers who successfully complete a

"positive cash flow real estate transaction" within three months, and provide a testimonial to

Zurixx, will get their workshop purchase price back (the "three-month guarantee").

69.     Zurixx also represents that consumers who fail to "make a minimum of THREE

TIMES the amount" of the 3-day workshop within six months will receive 100% of the

workshop purchase price back (the "six-month guarantee").

70.     For example, Zurixx presenters made the following representations between

March 2018 and July 2019 in California, Florida, Georgia, and Virginia:

A.   ". . . we know our system works . . . And because of the fact that we are
     confident in our system, we're willing to give you not only one but two 100
     percent money-back guarantees around your success with this program."

B.   "If it doesn't work for you, we still give you $2,000 back.  This really is a no-
     lose situation as long as you try it."

C.   "Remember, do a deal in 90 days, get your $2,000 back.  Don't do a deal in
     six months, still get your $2,000 back."

D.   "You will either close your first profitable real estate deal within the first six
     months after that three-day [workshop] or 100 percent of your tuition will be
     sent back to you."

E.   "So do a deal within three months after the [3-day workshop], give us a
     testimonial, you get your tuition back…You then have six months.  If you
     have not closed at least one profitable real estate deal in six months with our
     help, the company sends you back 100 percent of your tuition anyway."

22

    F.   "If you don't make any money, you're going to get your money back . . . If it does not work out for you and your family, as long as you make an effort, they're going to give you your money back, okay?"

    G.   "If you didn't make at least 6 grand, which is basically a finder's fee, if we didn't teach you how to find a property and where the buyers are to sell them and at least make a little [over] 6 grand, then you get your 2 grand back."

    H.   "If this isn't everything you said it was or I said it was, six months, you'll know, if we weren't great at teaching you how to do it and it didn't work, you'll get your 2 grand back, in writing."

71.    Zurixx's oral representations at the free event about the six-month guarantee are false or misleading. Its presenters routinely fail to disclose material conditions that Zurixx requires consumers to meet in order to receive a refund of the money that they paid for the 3-day workshop.

72.    To be eligible for a refund under Zurixx's six-month guarantee, the consumer must make more than 25 offers within the time period, and make 15 offers under the "guidance of [Zurixx's] resource line help desk associates" if "in the first ten offers, [the consumer] ha[s] not made THREE TIMES [the] purchase price" of the 3-day workshop.

73.    Numerous consumers first receive any information about the conditions described in Paragraph 72 after they pay Zurixx for the 3-day workshop. These conditions are written, in fine print, in a "Guarantee Certificate," which Zurixx includes in a package of materials it provides to consumers who purchased the 3-day workshop.

74.    Zurixx's presenters routinely fail to mention these restrictions in their oral presentations, and often provide consumers the package that includes the Guarantee Certificate only after the consumers have paid for the 3-day workshop.

75. In numerous instances, consumers are not able to obtain a refund of the $1,997 they paid for the 3-day workshop because they do not meet the fine print requirements relating to the six-month guarantee.

76. Zurixx also fails to inform consumers that, as described in Paragraphs 110 through 113 below, in order to receive a refund of the $1,997 fee for the 3-day workshop, a consumer must sign Zurixx's standard form agreement, which prohibits them from filing a complaint about Zurixx or its products with regulators, including the FTC and state Attorneys General, or communicating with others about Zurixx or their settlement. The form agreement also prohibits consumers from posting reviews regarding Zurixx or its products in written publications and on the internet.

### The 3-Day Workshop

77. Zurixx typically conducts the 3-day workshops a week or two after holding the free event in a given locale.

78. Zurixx's presenters typically ask the audience how many attendees are new or just getting started in real estate investing. In numerous instances, consumers attending the 3-day workshop do not have experience in real estate investing.

79. The presenters speak generally about "fix and flipping" and "wholesaling" real estate investments. However, they spend much of the three days telling attendees they need to purchase one of Zurixx's three "advanced" packages in order to make thousands of dollars in profit through real estate investing.

80. At the workshop and on the receipts, Zurixx represents that the "retail" prices for its advanced Gold, Platinum, and Diamond packages are $35,972, $45,997, and $73,973,

24

respectively.  The least expensive is the Gold package, which includes various components such as attendance at a Las Vegas Investors Summit, where consumers can purchase purported "discounted 'turnkey'" properties, and access to an online resource center.  The Platinum package, the mid-level package, includes the components in the Gold package and adds the "Fast Start Three-Day Bootcamp," at which Zurixx's instructors "come to your area and work in a small group setting in class and in the field."  The Diamond package, the most expensive package, includes all of the components from the two less expensive packages and adds a two-day one-on-one mentorship.

81.     Zurixx's presenters and its receipts state that the "discounted" prices, which are $21,297, $26,297, and $41,297 for the Gold, Platinum, and Diamond packages, are only available if purchased at the 3-day workshop.

82.     Zurixx sells its three pricier "advanced" packages and related products, such as on-site mentoring or one-on-one telephone coaching, with misrepresentations designed to convince consumers they need to purchase one of the three advanced packages or the related products in order to make thousands of dollars in profit through real estate investing.

### Misrepresentations At The 3-Day Workshop That Consumers
### Are Likely To Make Thousands Of Dollars In Profit Through Real Estate Investing

83.     Zurixx makes representations about profit in order to sell its Gold, Platinum, and Diamond packages.  For instance, Zurixx presenters made the following representations between April 2018 and July 2019 in Florida, Texas, and Virginia:

A.  "So that's a pretty average flip, $40,000."

B.  "The average rehab makes $66,000 in the U.S."

C. With flipping, "you make a lot more money, probably about 40 to 100 [thousand] in your market."

D. "… we set goals of $120,000 to $180,000 your first year."

E. "Most of our rehab deals are 20 to 30 percent. 25 percent of 230,000 in Richmond, that's about 60 grand, maybe 55."

F. "… allows you to make well over $100,000 in a fraction of the time with even still the same set of repairs and things factored in."

G. If "I'm not making $30,000 on each flip, its not worth my time. Investors make far more money than most people do in the workplace."

H. "That's what most of our students make on their first or second deal. Sometimes you can make more than that. So $25,000 to $55,000."

I. "It doesn't take long to get $2 million when you're flipping houses over the years that you're working."

J. "With wholesaling...you make about three to five thousand dollars in profit, just pure cash" whereas flipping leads to about "40 to 100 grand…."

K. "So somewhere between three to five grand is typical for a wholesale deal."

L. "$384,126. Now, let's say you make 10 percent of that on your first wholesale deal. That's $38,000. How many think that's okay? I said okay."

M. "So if you do $100,000-plus deals, you can probably do one deal a month and make 10 grand from wholesaling."

84.    In addition, Zurixx typically distributes workbooks to attendees that contain the following earnings representations regarding wholesale deals:

A. "Make $5,000 (Minimum)…6 Hours Total"

B. "How much is that per hour?...$833.33 per hour!!!"

C. "Two Wholesale Deals Per Month is $120,000 Annual Income!"

85.     Zurixx presenters commonly reference consumers who purportedly purchased Zurixx's advanced packages and made a profit from fixing and flipping or wholesaling real estate properties, or completed numerous deals within a short period.

86.     For example, Zurixx presenters made the following representations between April 2018 and July 2019 in Florida, Texas, and Virginia:

A.  Brian did 40 flips in his first year.

B.  Izzie made $75 thousand on his first flip in Tulsa.

C.  Courtney and his wife used the credit they raised during the first day of the workshop to pay for the advanced education. He was able to make $35,000 on his first flipping deal after the advanced education and $67,000 after a second deal.

D.  "Brittany joined us. She was living in her car at one point…The first year, she did four deals, made about 300 grand using other people's money."

E.  "Our students are at least doing 10, 15, 20, 30 deals a month."

F.  "A lot of [our students] net 20 to 30 percent, sometimes 40 percent on their rehabs."

G.  "We've had students literally in their first year make upwards of half a million dollars. That's not an exaggeration."

H.  "We have students . . . making 30 grand a year doing five deals a year. 40, 50, 60, 70 grand, making hundreds of thousands of dollars . . . ."

I.  "A lot of our students on a deal or two make about 75 grand . . . ."

J.  "[MF], one of our students, he's a wholesaler in Hagerstown, Maryland, Washington, D.C., somewhere here in Virginia…He does 30 to 50 wholesale deals a month."

87.     Zurixx's earnings claims are false or unsubstantiated. Contrary to its representations, consumers who purchase one of the advanced packages are not likely to earn thousands of dollars in profit through real estate investing.

**Zurixx Instructs Consumers At The 3-Day Workshop To Provide Speculative And Unsubstantiated Future Income On Credit Applications**

88.     Many consumers need to rely on credit to pay for Zurixx's pricey advanced packages.

89.     Zurixx routinely instructs consumers to contact credit card issuers during the workshops in order to obtain new credit cards or increases in credit limits on existing cards to fund real estate deals.  It often provides a list of banks it suggests consumers contact.

90.     Zurixx presenters routinely instruct workshop attendees, to represent to credit card issuers, income that is significantly higher than the consumer's current income.

91.     Zurixx's presenters routinely tell consumers that it is permissible to state a higher income to credit issuers because of the income the consumers will realize from investing in real estate.  For example, Zurixx presenters made the following statements in April 2018 and September 2018 in Texas and Virginia:

> A.  "Tell them [(credit card issuers)] how much you are going to make this year as a real estate investor, okay?  So a good rule of thumb there would be about 100K more than you did last year…We are not lying.  We are projecting."
>
> B.  You are "legally able to…reasonably estimate the next 12 months of income" and "you decide anywhere between $120,000 to $200,000…you're reasonable estimating your next 12 months of income."

92.     Zurixx's income projection instructions to consumers, as described in Paragraphs 83 through 91, constitute another example of its use of false or unsubstantiated earnings claims to persuade consumers to purchase its products.  Zurixx has no reasonable basis for the earnings projections it instructs consumers to submit to credit issuers.

93.     In numerous instances, Zurixx's presenters tell consumers to use their credit cards to purchase the advanced packages.  In numerous instances, consumers spend some or all the money that they obtain from their increased credit limits to pay for Zurixx's advanced packages.

**Misrepresentations At The 3-Day Workshop That Profitable Real Estate Investing Requires Little Time And Effort**

94.     Zurixx often reiterates that making thousands of dollars in profit from real estate investing takes little time and effort.

95.     For example, Zurixx presenters made the following representations between February 2019 and July 2019 in Florida and Virginia:

A. "Our system is designed to fit into your life because it's been . . . changed in order to say, okay, start off at five to 10 hours a week . . . Because it was designed for adults with children and full-time jobs."

B. "Most of our students are part-time."

C. "It's easy to find great deals."

D. "It's easy to find buyers and money."

E. "Three to five hours a week focused."

96.     The claims that little time and effort are needed to generate thousands of dollars in profit from real estate investing are false or unsubstantiated.

97.     Purchasers of Zurixx's products are not likely to make thousands of dollars in profit through real estate investing with little time or effort.

**Zurixx's Telemarketing Activities**

98.     In numerous instances, Zurixx's telemarketers in its telesales division call consumers who have purchased and attended Zurixx's 3-day workshop to pitch coaching packages.

99.     These coaching packages often cost thousands or tens of thousands of dollars, in addition to the amount the consumer has already paid for the 3-day workshop, or the tens of thousands of dollars that some of these consumers have paid for advanced packages.

100.     Zurixx's telemarketers often tell consumers that the coaching packages are necessary to generate a profit of thousands of dollars in real estate investing—substantially more than they could earn after taking the 3-day workshop or purchasing the advanced packages.

101.     Zurixx's telemarketers often tell consumers that purchasing the coaching packages will help consumers generate profit more quickly than if the consumers had purchased only the 3-day workshop and the advanced packages.

102.     Zurixx's telemarketers often tell consumers that the coaching packages are only offered to a select group of investors who have been vetted to ensure that they will be successful.

103.     Zurixx telemarketers often tell consumers that the coaching packages will pay for themselves.

104.     Numerous consumers have paid Zurixx thousands of dollars for the coaching packages.

105.     Contrary to Zurixx's representations, consumers who purchase its coaching packages are not likely to make thousands of dollars in profit.

106.     Contrary to Zurixx's representations, consumers who purchase the coaching packages are not likely to generate a profit more quickly than if they had purchased only the 3-day workshop and the advanced packages.

107.     Contrary to Zurixx's representations, Zurixx's coaching packages are not offered only to a select group of investors who have been vetted to ensure that they will be successful.

30

108. Contrary to Zurixx's representations, Zurixx's coaching packages do not pay for themselves.

109. In numerous instances, consumers not only fail to earn back the thousands or tens of thousands of dollars they spent on Zurixx's coaching packages sold by the telemarketers, but also are left to deal with significant credit card debt they incurred to finance the purchase of Zurixx's products, or to pay off loans that they obtained to pay for those products. In some instances, consumers have had to file for bankruptcy because of such debt.

### Form Settlement Provisions That Prohibit Consumers From Pursuing Or Filing Complaints With Regulators And Other Entities

110. Some dissatisfied Zurixx consumers seek refunds of the monies they paid to Zurixx. In many instances, persistent consumers may succeed in getting a partial refund, but often only if they sign Zurixx's standard form agreement, which prohibits them from filing a complaint about Zurixx or its products with regulators, including the FTC and state Attorneys General, or communicating with others about Zurixx or their settlement. The form agreement also prohibits consumers from posting reviews regarding Zurixx or its products in written publications and on the internet.

111. The agreement that Zurixx requires consumers to sign in exchange for a partial or full refund commonly includes the following language:

> Customer agrees that it shall not file or pursue any other claim or action pertaining to Customer's interactions with [Zurixx brand name], its clients, officers, directors, affiliates, members, owners, employees, agents, spouses, partners, heirs, successors and assigns, including but not limited to administrative complaints with the Better Business Bureau, civil litigation, internet postings or blogs, magazine, newspaper or other such published articles, complaints with any state or federal government agency, including but not limited to Attorneys' General or FTC, or credit card/merchant chargeback,/refund transactions….

112. The agreements contain standardized terms that are or were imposed on consumers without a meaningful opportunity for them to negotiate the standardized terms.

113. Agreements executed by Zurixx and consumers that included the language quoted in Paragraph 111 have been in effect since December 14, 2017.

114. Zurixx has taken steps to enforce the agreement provision quoted in Paragraph 111. For example, it has sued consumers who have complained to the Better Business Bureau regarding its practices or have spoken to other consumers about their settlements. Some consumers have been reluctant to speak with regulators, including the FTC and the Division, about their experience with Zurixx because of the prohibition in their agreements.

115. Based on the facts and violations of law alleged in this Complaint, the FTC and the Division have reason to believe that Zurixx is violating or is about to violate laws enforced by the Commission and the Division.

## ZURIXX'S TIES TO UTAH

116. Each of Zurixx's transactions with consumers has originated from or is inextricably intertwined with Utah. Few, if any, of Zurixx's transactions with consumers occurred wholly outside of Utah.

### Zurixx is Headquartered in Utah

117. Zurixx is headquartered in Utah, and its conduct has been controlled and directed from Utah. Although Zurixx has performed some functions in Puerto Rico through Dorado, it has operated primarily out of an office building in Cottonwood Heights, Utah.

118. Zurixx's inherently deceptive and misleading business model was developed at Zurixx's Utah headquarters. Zurixx, including its principals, conceived of this scheme in Utah

and has carried it out from Utah.  The heart of the claim—Zurixx's business model—has been developed, advertised, managed and directed from Utah by a Utah-based company.

119.    Zurixx has maintained significant financial ties to Utah.  Zurixx had multiple accounts at Utah financial institutions.  Zurixx has used a Utah address to obtain merchant accounts it used to charge consumers for its products and services.  Zurixx's payroll payments are directed from Utah.

120.    Defendant Spangler is a Utah resident and is in Zurixx's Utah office on a daily basis.  Defendants Cannon and Carlson routinely travel to Zurixx's Utah office from Puerto Rico.

### *Zurixx's Fulfillment is Provided From Utah*

121.    The Marketing Camp, Find the Money Camp, and the Wealth Strategies Camp, which are part of Zurixx's Diamond, Platinum, and Gold Advanced Education packages, were all offered in Utah.  Some of Zurixx's customers have traveled to Utah for this additional training.

122.    Residents from other states have relied on Utah-based coaches for guidance and training.  Zurixx's coaches worked from a "coaching curriculum" to instruct their consumers. That coaching curriculum was developed by Mark Sanderson, a Utah resident, from his Zurixx office in Utah.

123.     Zurixx also sold the services of mentors, who traveled to the home cities of Zurixx's customers.  Zurixx did not employ the mentors itself.  Instead, it has contracted with R.G. Williams and the R.G. Williams Group.  R.G. Williams fulfilled most of Zurixx's mentoring.  The mentors Zurixx used worked for R.G. Williams.  R.G. Williams resides in Utah.

### *Zurixx Conducts Telesales From Utah*

124.     Zurixx has conducted telesales from its headquarters in Utah.  Zurixx's telesales representatives initiated telephone calls in Utah to consumers and tried to sell those consumers additional services and new products.  In many instances, a consumer's payment was sent to Utah if a Zurixx telesales representative successfully made a sale.  The agreements Zurixx has used to finalize telesales included a reference to the right of rescission in Utah's TFPA.  Zurixx instructed consumers to exercise this right of rescission by sending written notice to an address in Utah.

125.     Zurixx has maintained a registration to conduct telephone solicitations with the Division since at least 2017.  In its applications for this registration, Zurixx represented to the Division that it conducted telephone solicitations from Utah.

### *Zurixx's Customer Service is Provided Primarily From Utah*

126.     Zurixx has handled issues with aggrieved consumers primarily from Utah and partly from Puerto Rico.  Shane Andrus, a Zurixx employee in Utah, has responded to most, if not all, consumer complaints the Division forwarded to Zurixx.

### *Zurixx Sues Consumers in Utah*

127.     Zurixx has required those to whom it provided a refund, even a partial refund, to sign a standard form agreement preventing them from filing a complaint with regulators or communicating with others about their settlement.  Those agreements have been governed by Utah law and selected Utah courts as the appropriate forums for resolving disputes.

128.     Zurixx has sometimes sued consumers who allegedly violated those form agreements in Utah courts, using Utah lawyers.  See, for example, *Zurixx LLC v. Moore*, Case

No. 160904908, *Zurixx LLC v. Green*, et al., Case No. 160905595, *Zurixx LLC v. Keller*, Case No. 180904588, *Zurixx LLC v. Keller*, Case No. 190900238, *Zurixx LLC v. Crayton*, Case No. 190902336, all filed in Utah's Third District Court.

### *Utah Has a Valid Interest in Regulating Zurixx's Conduct*

129.   Zurixx has used transactional resources within Utah to perpetrate its scheme, such as: mail boxes or mail drops; telephones; business offices; financial accounts; and city, county, or state assets or facilities, including roads and highways.  Zurixx has committed the violations alleged herein wholly or partly within Utah.  Zurixx's conduct is therefore subject to regulation by the Division.

## <u>VIOLATIONS OF THE FTC ACT</u>

130.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

131.   Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

132.   As set forth below, Defendants have engaged in violations of Section 5(a) of the FTC Act in connection with the marketing and sale of their real estate investment products or services.

### COUNT I – MISREPRESENTATIONS REGARDING EARNINGS

### (By Plaintiff Federal Trade Commission)

133.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Zurixx's real estate investing products or services, Defendants have

represented, directly or indirectly, expressly or by implication, that consumers who purchase Zurixx's products or services are likely to earn thousands of dollars in profit.

134. The representations set forth in Paragraph 133 of this Complaint are false or were not substantiated at the time the representations were made.

135. Therefore, Defendants' representations as set forth in Paragraph 133 of this Complaint constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II – OTHER MISREPRESENTATIONS REGARDING ZURIXX'S PRODUCTS OR SERVICES

### (By Plaintiff Federal Trade Commission)

136. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Zurixx's real estate investing products or services, Defendants have represented, directly or indirectly, expressly or by implication, that by purchasing Zurixx's products or services consumers will:

(a)     Receive 100% funding to do real estate deals regardless of their credit;

(b)     Spend little time and effort to make thousands of dollars in profit through real estate investing; and/or

(c)     Learn everything they need to know at the 3-day workshop to make thousands of dollars in profit through real estate investing.

137. The representations set forth in Paragraph 136 are false or were not substantiated at the time the representations were made.

138.     Therefore, Defendants' representations as set forth in Paragraph 136 of this

Complaint constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a).

**COUNT III – FAILURE TO DISCLOSE MATERIAL ASPECTS OF REFUND POLICY**

**(By Plaintiff Federal Trade Commission)**

139.     In numerous instances, in connection with the advertising, marketing, promotion,

offering for sale, or sale of Zurixx's real estate investing products or services, Defendants have

represented, directly or indirectly, expressly or by implication, that Zurixx will provide refunds

to consumers who fail to make a minimum of three times the cost of the 3-day workshop within

six months.

140.     In numerous instances in which Defendants have made the representation set forth

in Paragraph 139, Zurixx has failed to disclose, or to disclose adequately, to consumers material

aspects of Zurixx's refund policy, including one or both of the following requirements:

(a) To obtain a refund of the cost of the 3-day workshop, consumers who fail to

make a minimum of three times the amount of the workshop must make more

than 25 offers within the time period and make 15 offers under the "guidance

of the resource line help desk associates" if, in the first ten offers, the

consumer has not made three times the purchase price of the workshop; and

(b) Consumers must sign a form settlement provision that prohibits them from

filing a complaint, or posting reviews, about Zurixx or its products with

regulators or other entities in order to obtain even a partial refund.

141.     In light of the representations set forth in Paragraph 140 above, Defendants'
failure to disclose or to disclose adequately the material information set forth in Paragraph 140 of
this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act,
15 U.S.C. § 45(a).

## COUNT IV – MISREPRESENTATIONS REGARDING COACHING PACKAGES
### (By Plaintiff Federal Trade Commission)

142.      In numerous instances, in connection with the advertising, marketing, promotion,
offering for sale, or sale of Zurixx's coaching packages, Defendants have represented, directly or
indirectly, expressly or by implication, that:

a. The coaching packages are necessary for consumers to generate a profit of
thousands of dollars in real estate investing—substantially more than the
consumers could earn after taking the 3-day workshop or purchasing the advanced
packages;

b. Purchasing the coaching packages will help consumers generate profit more
quickly than if the consumers had purchased only the 3-day workshop and the
advanced packages;

c. The coaching packages are only offered to a select group of investors who have
been vetted to ensure that they will be successful; or

d. The coaching packages will pay for themselves.

143.     The representations set forth in Paragraph 142 of this Complaint are false or were
not substantiated at the time the representations were made.

144.     Therefore, Defendants' representations as set forth in Paragraph 142 of this Complaint constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATION OF THE CONSUMER REVIEW FAIRNESS ACT

145.     The Consumer Review Fairness Act of 2016 ("CRFA") Pub. L. No. 114-258, 15 U.S.C. § 45b, was enacted on December 14, 2016.  As of March 14, 2017, Section 2(b) of the CRFA renders void, and Section 2(c) of the CRFA prohibits the offering of, provisions in form contracts that:  prohibit or restrict individual consumers' ability to communicate reviews, performance assessments, and similar analyses about a seller's goods, services, or conduct; or that impose a penalty or fee against individual consumers who engage in such communications. 15 U.S.C. §§ 45b(a)(2), 45b(b)(1), and 45b(c).

146.     The CRFA defines a "form contract" as a contract, other than an employer-employee or independent contractor contract, with "standardized terms" – "used by a person in the course of selling or leasing the person's goods or services" and "imposed on an individual without a meaningful opportunity for such individual to negotiate the standardized terms."  15 U.S.C. § 45b(a)(3).

147.     The Commission is authorized to enforce Section 2(c) of the CRFA in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the FTC Act, 15 U.S.C. §§ 41-58, were incorporated into and made a part of the CRFA. 15 U.S.C. § 45b(2)(A).  The Commission's enforcement authority under the CRFA applies to contracts in effect on or after December 14, 2017.  15 U.S.C. § 45b(i)(2).

148.    Pursuant to Section 2(d)(1) of the CRFA, 15 U.S.C. § 45b(d)(1), a violation of

Section 2(c) of the CRFA constitutes a violation of a rule promulgated under Section 18(a)(1)(B)

of the FTC Act, 15 U.S.C. § 57a(1)(B), and therefore constitutes an unfair or deceptive act or

practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT V – CRFA VIOLATION

### (By Plaintiff Federal Trade Commission)

149.    In numerous instances, since March 14, 2017, Defendants have offered, in the

course of selling Zurixx's real estate investing products or services, form contracts that contain

provisions that prohibit or restrict the ability of consumers purchasing Zurixx's products or

services from engaging in reviews, performance assessments, and similar analyses of Zurixx's

goods, services, or conduct.

150.    Therefore, the acts and practices set forth in Paragraph 149 of this Complaint,

violate the CRFA.

### <u>VIOLATIONS OF THE TELEMARKETING SALES RULE</u>

151.    In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and

deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-

6108.  The FTC adopted the TSR in 1995, extensively amended it in 2003, and amended certain

sections thereafter.

152.    Defendants are "sellers" or "telemarketers" engaged in "telemarketing" as defined

by the TSR, 16 C.F.R. §§ 310.2(dd), (ff), and (gg).

153.    The TSR prohibits sellers and telemarketers from "[m]isrepresenting, directly or

by implication, in the sale of goods and services . . . [a]ny material aspect of the performance,

efficacy, nature, or central characteristics of goods or services that are the subject of a sales

offer." 16 C.F.R. § 310.3(a)(2)(iii).

154.    The TSR prohibits sellers and telemarketers from "[m]aking a false or misleading

statement to induce any person to pay for goods or services. . . ." 16 C.F.R. § 310.3(a)(4).

155.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and

Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an

unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a). Pursuant to Section 4 of the Telemarketing Act, 15 U.S.C. §

6103(f)(2), the Division is authorized to bring civil actions to enforce the TSR.

## COUNT VI – DECEPTIVE TELEMARKETING

### (By Plaintiffs Federal Trade Commission and Utah Division of Consumer Protection)

156.    In numerous instances, in connection with telemarketing offers to sell coaching

packages, Defendants have misrepresented, directly or indirectly, expressly or by implication,

material aspects of the performance, efficacy, nature, or central characteristics of the coaching

packages, including, but not limited to, that:

  a.  The coaching packages are necessary for consumers to generate a profit of

      thousands of dollars in real estate investing—substantially more than they could

      earn after taking the 3-day workshop or purchasing the advanced packages;

  b.  Purchasing the coaching packages will help consumers generate profit more

      quickly than if the consumers had purchased only the 3-day workshop and the

      advanced packages;

     c.   The coaching packages are only offered to a select group of investors who have

been vetted to ensure that they will be successful; or

     d.   The coaching packages will pay for themselves.

157.    Defendants' acts or practices, as set forth in Paragraph 156, are deceptive

telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii) and (a)(4).

## VIOLATIONS OF THE UCSPA

158.    The UCSPA prohibits suppliers from committing deceptive and unconscionable

acts or practices in connection with a consumer transaction, whether the act occurs before,

during, or after the transaction.  Utah Code §§ 13-11-4(1); 13-11-5(1).

159.    Defendants engage in "consumer transaction[s]" by marketing and selling to

"person[s]" products and services that are primarily for personal, family, or household purposes,

or for purposes that relate to a business opportunity.  Utah Code §§ 13-11-3(2), (5).

160.    Defendants are "suppliers" because they regularly solicit, engage in, or enforce

consumer transactions, whether or not they deal directly with consumers.  Utah Code § 13-11-

3(6).

161.    As set forth below, Defendants have violated the UCSPA by engaging in

deceptive and unconscionable acts and practices in connection with the marketing and sale of

their real estate investment related products and services.

## COUNT VII – DECEPTIVE ACTS OR PRACTICES (EARNINGS CLAIMS)

### (By Plaintiff Utah Division of Consumer Protection)

162.    In numerous instances in connection with the advertising, marketing, promotion,

offering for sale, or sale of Zurixx's real estate investment products or services, Defendants have

represented, directly or indirectly, expressly or by implication, that consumers who purchase Zurixx's products or services are likely to earn thousands of dollars in profit.

163.    The representations as set forth in Paragraph 162 are false or were not substantiated at the time the representations were made.

164.    Therefore, Defendants' representations as set forth in Paragraph 162 of this Complaint constitute a deceptive act or practice in violation of the UCSPA, Utah Code § 13-11-4(1).

## COUNT VIII – DECEPTIVE ACTS OR PRACTICES (PRODUCTS AND SERVICES PROVIDED)

### (By Plaintiff Utah Division of Consumer Protection)

165.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Zurixx's real estate investing products or services, Defendants have represented, directly or indirectly, expressly or by implication, that by purchasing Zurixx's products or services, consumers will:

(a) Receive 100% funding to do real estate deals regardless of their credit;

(b) Spend little time and effort to make thousands of dollars in profit through real estate investing; and/or

(c) Learn everything they need to know at the 3-day workshop to make thousands of dollars in profit through real estate investing.

166.    The representations set forth in Paragraph 165 are false or were not substantiated at the time the representations were made.

167.    Therefore, Defendants' representations as set forth in Paragraph 165 of this Complaint constitute a deceptive act or practice in violation of the UCSPA § 13-11-4(1).

43

**COUNT IX – FAILURE TO DISCLOSE MATERIAL ASPECTS OF REFUND POLICY**

**(By Plaintiff Utah Division of Consumer Protection)**

168.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of its real estate investing products or services, Defendants have represented, directly or indirectly, expressly or by implication, that it will provide refunds to consumers who fail to make a minimum of three times the cost of the 3-day workshop within six months.

169.    In numerous instances in which Defendants have made the representations set forth in Paragraph 168, Defendants have failed to disclose, or to disclose adequately, to consumers material aspects of Zurixx's refund policy, including one or both of the following requirements:

(a) To obtain a refund of the cost of the 3-day workshop, consumers who fail to make a minimum of three times the amount of the workshop must make more than 25 offers within the time period and make 15 offers under the "guidance of the resource line help desk associates" if, in the first ten offers, the consumer has not made three times the purchase price of the workshop; and

(b) Consumers must sign a form settlement provision that prohibits them from filing a complaint, or posting reviews, about Zurixx or its products with regulators or other entities in order to obtain even a partial refund.

170.    In light of the representations set forth in Paragraph 169 above, Defendants' failure to disclose or to disclose adequately the material information set forth in Paragraph 168 of this Complaint constitutes a deceptive act or practice in violation of the UCSPA § 13-11-4(1).

## COUNT X – MISREPRESENTATIONS REGARDING COACHING PACKAGES

### (By Plaintiff Utah Division of Consumer Protection)

171.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Zurixx's coaching packages, Defendants have represented, directly or indirectly, expressly or by implication, that:

    a.   The coaching packages are necessary for consumers to generate a profit of thousands of dollars in real estate investing—substantially more than the consumers could earn after taking the 3-day workshop or purchasing the advanced packages;

    b.   Purchasing the coaching packages will help consumers generate profit more quickly than if the consumers had purchased only the 3-day workshop and the advanced packages;

    c.   The coaching packages are only offered to a select group of investors who have been vetted to ensure that they will be successful; or

    d.   The coaching packages will pay for themselves.

172.   The representations set forth in Paragraph 171 of this Complaint are false or were not substantiated at the time the representations were made.

173.   Therefore, Defendants' representations as set forth in Paragraph 171 of this Complaint constitute deceptive acts or practices in violation of the UCSPA § 13-11-4(1).

## **VIOLATIONS OF THE BODA**

174.   The BODA requires sellers of "assisted marketing plans" to annually file certain information with the Division.  Utah Code § 13-15-4.

175.    The BODA also requires sellers of assisted marketing plans to provide to prospective

purchasers of the assisted marketing plans written disclosures in a single disclosure statement

or prospectus at least ten days prior to execution of a purchase agreement or payment by the

purchaser.  Utah Code §§ 13-15-4; 13-15-5.

176.    The BODA defines a "seller" as "a person who sells or offers to sell an assisted

marketing plan."  Utah Code § 13-15-2(8).

177.    The BODA defines "assisted marketing plans" as "any products, equipment, supplies, or

services that are sold to the purchaser upon payment of an initial consideration of $500 or

more for the purpose of enabling the purchaser to start a business," in which the seller

represents, among other things, that "the seller will provide the purchaser with a guarantee

that the purchaser will receive income from the assisted marketing plan that exceeds the price

paid for the assisted marketing plan."  Utah Code § 13-15-2(1)(a)(iv).

178.    As set forth below, Defendants have violated the BODA by failing to file required

information with the Division, and by failing to provide required disclosures to prospective

purchasers of Defendants' assisted marketing plans.

## COUNT XI – FAILURE TO FILE REQUIRED INFORMATION WITH THE DIVISION
### (By Plaintiff Utah Division of Consumer Protection)

179.    In numerous instances, since at least July 2013, Defendants have offered and sold

assisted marketing plans under a variety of fictitious names.

180.    Since at least July 2013, Defendants have failed to file with the Division the information

required by Utah Code § 13-15-4 with respect to any of the assisted marketing plans

Defendants offered and sold.

181.    Therefore, the acts and practices set forth in Paragraphs 179-180 violate the BODA.

### COUNT XII – FAILURE TO PROVIDE REQUIRED DISCLOSURES TO PROSPECTIVE PURCHASERS

**(By Plaintiff Utah Division of Consumer Protection)**

182.    In numerous instances, since at least July 2013, Defendants have offered and sold assisted marketing plans to consumers.

183.    Since at least July 2013, Defendants have not provided any of the required disclosures to prospective purchasers of its assisted marketing plans in a single disclosure statement or prospectus at least ten business days prior to the execution of a consumer's agreement to purchase one of Defendants' plans, or ten business days prior to payment by the consumer of any consideration in exchange for the assisted marketing plan.  Utah Code §§ 13-15-4; 13-15-5.

184.    Therefore, the acts and practices set forth in Paragraphs 182-183 violate the BODA.

### <u>VIOLATIONS OF THE TFPA</u>

185.    A telephone solicitation is defined  by the TFPA as a sale or solicitation of goods or services in which the seller solicits the sale over the telephone, the purchaser's agreement to purchase is made over the telephone, and the purchaser, over the telephone, pays for or agrees to commit to payment for goods or services prior to or upon receipt by the purchaser of the goods or services.

186.    Zurixx offered for sale and sold its coaching packages to consumers through telephone solicitations.

187.    A telephone soliciting business is a sole proprietorship, partnership, limited liability company, corporation, or other association of individuals engaged in a

common effort to conduct telephone solicitations.

188.    Zurixx meets the definition of a telephone soliciting business.

189.    A telephone solicitor or solicitor is a person, partnership, limited liability

company, corporation, or other entity that makes a telephone solicitation; or causes a

telephone solicitation to be made.

190.    Zurixx meets the definition of a telephone solicitor or solicitor.

191.    An individual representative of Zurixx, to the extent he or she engages in telephone

solicitations, also meets the definition of a telephone solicitor or solicitor.

192.    The Individual Defendants each caused telephone solicitations to be made.  Each meets

the definition of a solicitor.

193.    As set forth below, Defendants have violated the TFPA by causing or permitting Zurixx

representatives and leadership to make or cause to be made untrue material statements in

connection with telephone solicitations.

**COUNT XIII—MISREPRESENTATIONS REGARDING COACHING PACKAGES**

**(By Plaintiff Division of Consumer Protection)**

194.    In numerous instances, in connection with the advertising, marketing, promotion, offering

for sale, or sale of Zurixx's coaching packages, Defendants have represented, directly or

indirectly, expressly or by implication, that:

      a.    The coaching packages are necessary for consumers to generate a profit of

           thousands of dollars in real estate investing—substantially more than the

           consumers could earn after taking the 3-day workshop or purchasing the advanced

           packages;

b. Purchasing the coaching packages will help consumers generate profit more quickly than if the consumers had purchased only the 3-day workshop and the advanced packages;

c. The coaching packages are only offered to a select group of investors who have been vetted to ensure that they will be successful; and/or

d. The coaching packages will pay for themselves.

195. The representations set forth in Paragraph 194 of this Complaint are false or were not substantiated at the time the representations were made.

196. The representations set forth in Paragraph 194 of this Complaint are material statements because they contain information that a person of ordinary intelligence or prudence would consider important in deciding whether or not to accept an offer extended through a telephone solicitation.

197. Therefore, Defendants' representations as set forth in Paragraph 194 of this Complaint constitute untrue material statements in violation of the TFPA, Utah Code §§ 13-26-11(1)(c) and 13-26-11(2)(a).

## **CONSUMER INJURY**

198. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the CRFA, the TSR, the UCSPA, the BODA, and the TFPA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## COURT'S POWER TO GRANT RELIEF

199.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive

and such other relief as the Court may deem appropriate to halt and redress violations of any

provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction,

may award ancillary relief, including rescission or reformation of contracts, restitution, the

refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any

violation of any provision of law enforced by the FTC.

200.     Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as

the Court finds necessary to redress injury to consumers resulting from Defendants'

violations of the CRFA, including the rescission or reformation of contracts, and the refund

of monies paid, the disgorgement of ill-gotten monies, and prejudgment interest.

201.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act,

15 U.S.C. § 6105(b) authorize this Court to grant such relief as the Court finds necessary to

redress injury to consumers resulting from Defendants' violations of the TSR, including

damages, the rescission or reformation of contracts, and the refund of money.

202.     The UCSPA authorizes this Court to enter a declaratory judgment that Defendants' acts

or practices violate the UCSPA, to enjoin, in accordance with the principles of equity, any

person who has violated, is violating, or is otherwise likely to violate the UCSPA, to award

damages or relief on behalf of consumers for Defendants' violations of the UCSPA, to award

a fine against Defendants for violations of the UCSPA in an amount determined by the Court,

and to award the Division reasonable attorney's fees, court costs, and costs of investigation.

Utah Code §§ 13-11-17(1)(a)-(d); 13-11-17.5.

203.    The BODA authorizes this Court, in addition to any other relief granted by the Court, to

grant judgment and injunctive relief in favor of the Division, and to award the Division

reasonable attorney's fees, costs of court, and investigative fees for Defendants' violations of

the BODA.  Utah Code § 13-15-6(3).

204.    The TFPA authorizes this Court to impose a civil penalty not exceeding $2,500 against

the Defendants for each of Defendants' transactions that violated the TFPA.  Utah Code §

13-26-8(2).

### PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C.

§§ 53(b) and 57b, Section 2(d) of the CRFA, 15 U.S.C. §§ 45b(d), and Section 6(b) of the

Telemarketing Act, 15 U.S.C. § 6105(b), and Plaintiff Division, pursuant to the UCSPA, the

BODA, and the TFPA, and as authorized by the Court's own equitable powers, request that the

Court:

A.      Award Plaintiffs such preliminary injunctive and ancillary relief as may be

necessary to avert the likelihood of consumer injury during the pendency of this action and to

preserve the possibility of effective final relief, including but not limited to, temporary and

preliminary injunctions against all Defendants and appointment of a monitor over Corporate

Defendants;

B.      Enter a permanent injunction against all Defendants to prevent future violations of

the FTC Act, the CRFA, the TSR, the UCSPA, the BODA, and the TFPA by Defendants;

C.      Award against Defendants such relief as the Court finds necessary to redress

injury to consumers resulting from Defendants' violations of the FTC Act, the CRFA, the TSR,

the UCSPA, the BODA, and the TFPA including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, and damages;

D.      Award civil penalties for each violation of the UCSPA, the BODA, and the TFPA; and

E.      Award Plaintiffs the cost of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated: May 12, 2020                    /s/Amanda Grier
                                       COLLOT GUERARD
                                       JOSHUA DOAN
                                       MIRY KIM
                                       AMANDA GRIER
                                       Federal Trade Commission
                                       600 Pennsylvania Ave., NW, CC-8528
                                       Washington, DC 20580
                                       Telephone: (202) 326-3338
                                       cguerard@ftc.gov; jdoan@ftc.gov
                                       mkim@ftc.gov; agrier@ftc.gov
                                       Attorneys for Plaintiff
                                       FEDERAL TRADE COMMISSION

Dated: May 12, 2020                    /s/ Robert G. Wing (*with permission*)
                                       ROBERT G. WING (4445)
                                       KEVIN MCLEAN (16101)
                                       Assistant Attorney General
                                       Utah Attorney General's Office
                                       160 East 300 South, Fifth Floor
                                       Salt Lake City, Utah 84114
                                       Telephone: 801-366-0310
                                       rwing@agutah.gov

kmclean@agutah.gov
Attorneys for Plaintiff
UTAH DIVISION OF CONSUMER
PROTECTION