# EXHIBIT "3"

COLLOT GUERARD
JOSHUA DOAN
MIRY KIM
(Each appearing pursuant to DUCivR 83-1.1(d)(1))
600 Pennsylvania Ave., NW., CC-8528
Washington, D.C. 20580
cguerard@ftc.gov  Telephone: (202) 326-3338
jdoan@ftc.gov  Telephone:  (202) 326 3187
mkim@ftc.gov  Telephone:  (202) 326-3622
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

THOMAS M. MELTON (4999)
ROBERT G. WING (4445)
DOUGLAS DEVORE (11170)
KEVIN MCLEAN (16101)
Assistant Attorneys General
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
Telephone: 801-366-0310
tmelton@agutah.gov
rwing@agutah.gov
dedevore@agutah.gov
kmclean@agutah.gov
Attorneys for Plaintiff
UTAH DIVISION OF CONSUMER PROTECTION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>UTAH DIVISION OF CONSUMER PROTECTION,<br><br>       Plaintiffs,<br><br>      vs.<br><br>ZURIXX, LLC, a Utah limited liability company, | Case Number :<br><br>**FILED UNDER SEAL** PURSUANT TO COURT ORDER (DOCKET NO.    )<br><br>PLAINTIFFS' MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER WITH LIMITED ASSET FREEZE AND OTHER EQUITABLE RELIEF AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND SUPPORTING MEMORANDUM |

CARLSON DEVELOPMENT GROUP,
LLC, a Utah limited liability company,

CJ SEMINAR HOLDINGS, LLC, a Utah
limited liability company,

ZURIXX FINANCIAL, LLC, a Utah
limited liability company,

CRISTOPHER A. CANNON, individually
and as an officer of ZURIXX, LLC,

JAMES M. CARLSON, individually and as
an officer of ZURIXX, LLC, and

JEFFREY D. SPANGLER, individually and
as an officer of ZURIXX, LLC

Defendants.

# TABLE OF CONTENTS

I.      INTRODUCTION AND REQUESTED RELIEF ....................................................1

II.     STATEMENT OF FACTS ...................................................................................3

        A.      Zurixx's Business Model ....................................................................3

        B.      Zurixx Uses False Or Unsubstantiated Claims To Entice Consumers To
                Purchase Its Products And Services..........................................................3

                1.      Zurixx's Free Event – A Venue To Sell Zurixx's $1,997 3-Day
                        Workshop............................................................................3
                2.      Earnings Claims At The Free Events.............................................4
                3.      Time and Effort Claims At The Free Event....................................6
                4.      100% Funding Claims At The Free Event......................................7
                5.      "Learn All You Need To Know" Claims At The Free Event.........8
                6.      Zurixx Fails To Disclose Material Aspects Of Its Refund Policy ...9

        C.      Zurixx Makes False Or Unsubstantiated Representations At The 3-Day
                Workshop.............................................................................................11

                1.      Earnings Claims At The 3-Day Workshop ...................................11
                2.      Zurixx Instructs Attendees Of The 3-Day Workshop To Provide
                        Speculative Future Income To Credit Card Issuers, Reinforcing Its
                        False Or Unsubstantiated Earnings Claims...................................14
                3.      Little Time And Effort Claims At The 3-Day Workshop.............15
                4.      100% Funding Claims At The 3-Day Workshop..........................16

        D.      Zurixx's Advanced Packages....................................................................16

        E.      Zurixx's Coaching And On-Site Mentoring Programs.............................18

        F.      Zurixx's Earnings And Other Material Claims Are False Or
                Unsubstantiated....................................................................................20

                1.      Zurrix's Earnings Claims Are False Or Unsubstantiated ..............20
                2.      Zurixx's 100% Funding Claims Are False Or Unsubstantiated ....23
                3.      Zurixx's "Little Time And Effort" Claims Are False Or
                        Unsubstantiated..................................................................24
                4.      Zurixx's "Learn Everything You Need To Know" Claims Are
                        False Or Unsubstantiated .......................................................16

        G.      Zurixx Has Caused Millions Of Dollars In Unreimbursed Consumer
                Injury ................................................................................................26

III.    THE ROLE OF THE DEFENDANTS. ...............................................................26

        A.      The Corporate Defendants..................................................................26

        B.      The Corporate Defendants Operate As A Common Enterprise.................27

        C.      The Individual Defendants..................................................................27

i

IV.  ARGUMENT ....................................................................................................29

  A.  This Court Has the Authority to Grant the Requested Relief....................29

  B.  The Evidence Justifies Granting Plaintiffs' Requested TRO ....................31

      1.  Plaintiffs Are Likely To Succeed On The Merits ...........................32
      2.  The Equities Weigh In Favor Of Granting Plaintiffs' Requested
          Relief..............................................................................................36

  C.  An Ex Parte TRO With Equitable Relief Is Appropriate And Necessary .37

      1.  Corporate Asset Preservation Is Warranted And Appropriate.......38
      2.  A Temporary Monitor Over Zurixx Is Warranted And
          Appropriate ....................................................................................40
      3.  *Ex Parte* TRO, Expedited Discovery, Financial Disclosures, And
          Immediate Access To Defendants' Business Premises And
          Records Are Warranted And Appropriate .....................................42

V.  CONCLUSION.................................................................................................43

# TABLE OF AUTHORITIES

## Cases

*Antoine Jennings & Courtney Jennings v. Zurixx, LLC dba Advanced Real Estate Education & The Flipping Formula*, No. 1616-CV-04827, Circuit Court of Jackson County, Missouri at Independence, Complaint Filed in Missouri and removed to federal court as Case No. 4:16-01004-SRB, Refiled on September 15, 2016 ............................................................................ xi

*Cary Schiffres and Jayne Schiffres v. Zuirxx, LLC, d/b/a Doug Hopkins Real Estate Formula*, No. CACE-18-001311 Division:03, 17th Judicial Circuit in and for Broward County, Florida, Complaint Filed January 17, 2018 ........................................................................................ xi

*SEC v. First Fin. Group of TPX*, 645 F.2d 429 (5th Cir. 1981) ................................................ 40

*FTC v. Affordable Media, Inc.*, 179 F.3d 1228 (9th Cir. 1999) ................................................ 37

*FTC v. Alliance Documents Preparation*, 296 F. Supp. 3d 1197 (C.D. Cal. 2017) .................... 33

*FTC v. AMG Services*, 29 F.Supp.3d 1338 (D. Nev. 2014) ...................................................... 33

*FTC v. AMG Services*, 2017 U.S. Dist. LEXIS 66689 (D. Nev. May 1, 2017) .......................... 38

*FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016) .................................................. 29

*FTC v. Cyberspace.com, LLC*, 453 F.3d 1196 (9th Cir. 2006) .................................................. 33

*FTC v. Dalbey*, 2012 U.S. Dist. LEXIS 67393 (D. Colo. May 15, 2012) .................................. 29

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ................................................ 33

*FTC v. Freecom Communications, Inc.*, 401 F.3d 1192 (10th Cir. 2005) .......................... 29, 32, 33

*FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307 (S.D. Fla. 2013) .................................... 39

*FTC v. International Computer Concepts, Inc.*, 1994 WL 730144 (N.D. Ohio Oct. 24, 1994).... 33,41

*FTC v. John Beck Amazing Profits, LLC*, 865 F.Supp.2d 1052 (C.D. Cal. 2012) ........................ 34

*FTC v. LoanPointe, LLC*, 525 F. App'x 696 (10th Cir. 2013) .................................................. 29

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ........................................ 38

*FTC v. Simple Health Plans, LLC*, 379 F.Supp.3d 1346 (S.D. Fla. May 14, 2019) .................... 40

*FTC v. Singer*, 668 F.2d 1107 (9th Cir. 1982) ...................................................................... 29

*FTC v. Skybiz.com, Inc.*, 57 F. App'x 374 (10th Cir. 2003) .................................................... 29

*FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003) ................................................................ 32

*FTC v. Thomsen-King & Co.*, 109 F.2d 516 (7th Cir. 1940) .................................................... 37

*FTC v. USA Financial, LLC*, 415 F. App'x 970 (11th Cir. 2011) .............................................. 29

*FTC v. World Patent Mktg., Inc.*, No. 17-CV-20848, 2017 U.S. Dist LEXIS 130486 (S.D. Fla. Aug. 16, 2017) ................................................................................................................ 39

*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988) ............................ 30

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989) .......................................... 31, 36

*FTC v. Your Yellow Book, Inc.*, No. 5:14-cv-00786-D, 2014 U.S. Dist. LEXIS 116524 (W.D. Okla. Aug. 21, 2014) ................................................................................................................ 30

*Karen Semmelmann & Larry Mondik v. Premier Mentoring, Inc., Cris Cannon, Jeff Spangler, et al.*, No. 1:16-cv-01053-RP, W.D. Tex., Austin Division, First Amended Complaint Filed October 3, 2016 ................................................................................................................ xi

*Katie Golbienko v. Advance Real Estate Education; Zurixx, LLC, Success Path, and DOE Defendants 1 through 20*, No. 17-2-01111-8-Sea, Superior Court of Washington in and for the County of King, Washington, Complaint Filed January 18, 2017 .......................... xi, 12, 15

*Kevin Poore, individually, and on behalf of others similarly situated v. Zurixx, LLC dba Advanced Real Estate Education and DOES 1-10*, No. 37-2017-00019078-CU-NP-CTL, Superior Court of California, San Diego, Complaint Filed May 26, 2017 .............................. xi

*Leone Indus. v. Assoc. Packaging, Inc.*, 795 F. Supp. 117 (D.N.J. 1992) .................................. 40

*FTC v. LoanPointe*, 2011 U.S. Dist. LEXIS 104982 (D. Utah Sept. 6, 2011) .......... 32, 33, 34, 38

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ........................................................ 29, 41

*Ron Ross, individually, and on behalf others similarly situated v. Zurixx, LLC DBA Advanced Real Estate Education*, No. 34-2016-00190874, Superior Court of California, Sacramento, Complaint Filed February 24, 2016. .................................................................................... x

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) .................................................................... 39

*SEC v. Keller Corp.*, 323 F.2d 397 (7th Cir. 1963) ........................................................ 40
*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972) .......................................... 39
*SEC v. Traffic Monsoon, LLC*, 245 F. Supp.3d 1275 (D. Utah 2017) ...................................... 38
*SEC v. Traffic Monsoon, LLC*, 913 F.3d 1204 (10th Cir. 2019) ............................................. 38
*FTC v. Skybiz.com, Inc.*, No. 01-CV-396-K(E), 2001 U.S. Dist. LEXIS 26175 (N.D. Okla. Aug 31, 2001) ....................................................................................................... 30, 31, 39, 40
*FTC v. U.S. Oil & Gas*, 748 F.2d 1431 .............................................................................. 39
*U.S. v. Greenwood*, No. 2:19-cv-249, 2019 WL 3717679 (August 7, 2019) ................................... 31
    *Zurixx, LLC v. Crayton*, Third Judicial District Court, Salt Lake County, Utah, March 20, 2019 ...................................................................................................... 11

## Statutes

15 U.S.C. §§45b(a)2) .................................................................................................... 29
15 U.S.C. §45(a) ..................................................................................................... 2, 29
15 U.S.C. §45b ............................................................................................................ 2
15 U.S.C. §53(b) ......................................................................................................... 29
Utah Code §13-15-4(3) ................................................................................................. 32
Utah Code §13-11-1 ...................................................................................................... 2
Utah Code §13-15-1 ...................................................................................................... 2
Utah Code Ann. §13-11-17(1)(b) (2019) .............................................................................. 30
Utah Code Ann. §13-11-2(4) (2019) ................................................................................... 31
Utah Code Ann. §13-15-2(1)(a)(iv) (2019) ........................................................................... 36
Utah Code Ann. §13-11-4(1) ........................................................................................... 32
Utah Code Ann. §13-15-3(1) ........................................................................................... 31
Utah Code Ann. §13-15-4 .............................................................................................. 35
Utah Code Ann. §13-15-4(5) (2019) ................................................................................... 36
Utah Code Ann. §13-15-2(1) (2019) ................................................................................... 35

## Other Authorities

1994 U.S.C.C.A.N. 1776, 1790-91 ..................................................................................... 30
Fed. R. Civ. P. 33(a) ................................................................................................... 42
Fed. R. Civ. P. 34(b) ................................................................................................... 42
Fed. R. Civ. P. 26(d) ................................................................................................... 42
Fed. R. Civ. P. 65(b) ................................................................................................... 42
S. Rep. No. 130, 103rd Cong., 2d Sess. 15-16 ....................................................................... 30

# LIST OF EXHIBITS

## TRANSCRIPTS, EXPERT REPORT, COMPLAINT RE GAG ORDER

Ex. 1      Transcript From the Recording of the Free Event, Indian Rocks, Florida, March 22, 2018.

Ex. 2      Transcript From The Recording of the Free Event, Pentagon City, Virginia, April 11, 2018.

Ex. 3      Transcript From the Recording of the Free Event, Sunnyvale, California, June 12, 2018.

Ex. 4      Transcript From the Recording of the Free Event, Norcross, Georgia, December 18, 2018

Ex. 5      Transcript From the Recording of Day 1 of the 3-day Workshop, Dulles, Virginia, April 20, 2018.

Ex. 6      Transcript From the Recording of Day 2 of the 3-day Workshop, Dulles, Virginia, April 21, 2018.

Ex. 7      Transcript From the Recording of Day 3 of the 3-day Workshop, Dulles, Virginia, April 22, 2018.

Ex. 8      Transcript From the Recording of Day 1 of the 3-day Workshop, Dallas, Texas, September 21, 2018.

Ex. 9      Transcript From the Recording of Day 2 of the 3-day Workshop, Dallas, Texas, September 22, 2018.

Ex. 10     Transcript From the Recording of Day 3 of the 3-day Workshop, Dallas, Texas, September 23, 2018.

Ex. 11     Transcript From the Recording of Day 1 of the 3-day Workshop, Ft. Myers, Florida, February 8, 2019.

Ex. 12     Transcript From the Recording of Day 2 of the 3-day Workshop, Ft. Myers, Florida, February 9, 2019.

Ex. 13     Transcript From the Recording of Day 3 of the 3-day Workshop, Ft. Myers, Florida, February 10, 2019.

Ex. 14     Transcript From Jeannie Keller Utah Investigational Hearing, March 6, 2019.

Ex. 15     Transcript From Phillip Keller Utah Investigational Hearing, March 6, 2019.

| | |
|---|---|
| Ex. 16 | Transcript From TV Interview With Cris Cannon re Success Path, March 17, 2017. |
| Ex. 17 | Expert Report of Teo Nicolais. |
| Ex. 18 | *Zurixx, LLC v. Crayton*, Third Judicial District Court, Salt Lake County, Utah, March 20, 2019. |
| Ex. 19 | Intentionally Blank |
| Ex. 20 | Transcript From the Recording of the Free Event in South Jordan, Utah, June 12, 2019. |
| Ex. 21 | Transcript From the Recording of the Free Event in Fredricksburg, Virginia, July 10, 2019. |
| Ex. 22 | Transcript From the Recording of Day 1 of the 3-Day Workshop, Richmond, Virginia, July 19, 2019. |
| Ex. 23 | Transcript From the Recording of Day 2 of the 3-day Workshop, Richmond, Virginia, July 20, 2019. |
| Ex. 24 | Transcript From the Recording of Day 3 of the 3-day Workshop, Richmond, Virginia, July 21, 2019. |

## CONSUMER DECLARATIONS

| | |
|---|---|
| Ex. 25 | Declaration of Jessica Anderson, California |
| Ex. 26 | Declaration of Cassandra Birocco, Rhode Island |
| Ex. 27 | Declaration of Kelly Campbell, Texas |
| Ex. 28 | Declaration of DeAnn Dutton, Montana |
| Ex. 29 | Declaration of William Eberhard, Ohio |
| Ex. 30 | Declaration of David Elliott, California |
| Ex. 31 | Declaration of Kathleen Ertmer, Wisconsin |
| Ex. 32 | Declaration of Corina Ferrer, California |
| Ex. 33 | Declaration of Richard John, California |
| Ex. 34 | Declaration of Kathy Johnson, Kentucky |

Ex. 35          Declaration of Thomas Kimura, Oregon

Ex. 36          Declaration of Karl King, Washington

Ex. 37          Declaration of Tzachi Litov, Washington

Ex. 38          Declaration of Laurie Majewski, Ohio

Ex. 39          Declaration of Norma Martinez, Washington

Ex. 40          Declaration of Catherine Murry, Missouri

Ex. 41          Declaration of Jerry Douglas Purcell, Jr., Florida

Ex. 42          Declaration of Susan Rowe, Florida

Ex. 43          Declaration of John Sakevich, New Jersey

Ex. 44          Declaration of Tony To, Washington

Ex. 45          Declaration of Audra Turner, Oregon

Ex. 46          Declaration of Carolyn Vilela, New York

Ex. 47          Declaration of Andrew Ziebro, Ohio

Ex. 48          Declaration of Christopher Fenrich, Nevada

Ex. 49          Intentionally Blank

## INVESTIGATOR DECLARATIONS

Ex. 50          Declaration of FTC Investigator Christine Barker

Ex. 51          Declaration of FTC Paralegal Maria Bazan

Ex. 52          Declaration of FTC Investigator Yasser Dandashly

Ex. 53          Declaration of FTC Paralegal Amber Howe

Ex. 54          Declaration of FTC Investigator Kelle Slaughter

Ex. 55          Declaration of FTC Investigator Diana Shiller

Ex. 56          Declaration of FTC Investigator Darren Wright

Ex. 57      Declaration of Utah Commerce Analyst Leigh Veillette

Ex. 58      Declaration of Utah Investigator Nate Kanbe

Ex. 59      Intentionally Blank

**CORPORATE DOCUMENTS AND 2019 TELEMARKETING APPLICATION**

Ex. 60      Articles of Organization of Zurixx, LLC, Filed on February 23, 2012

Ex. 61      Zurixx, LLC Annual Report – Summary of Online Changes, Filed on April 10, 2012

Ex. 62      Zurixx, LLC Annual Report – Summary of Online Changes, Filed on January 22, 2013

Ex. 63      Zurixx, LLC Annual Report – Summary of Online Changes, Filed on June 23, 2014

Ex. 64      Zurixx, LLC Annual Report – Summary of Online Changes, Filed on December 9, 2014

Ex. 65      Zurixx, LLC Annual Report – Summary of Online Changes, Filed on April 13, 2016

Ex. 66      Zurixx, LLC Annual Report – Summary of Online Changes, Filed on February 28, 2018

Ex. 67      Articles of Organization of Carlson Development Group, LLC, Filed on December 29, 2010

Ex. 68      Articles of Amendment to Articles of Organization of Carlson Development Group, LLC, Filed on March 22, 2011

Ex. 69      Carlson Development Group, LLC Annual Report – Summary of Online Changes, Filed on February 23, 2012

Ex. 70      Carlson Development Group, LLC Annual Report – Summary of Online Changes, Filed on April 10, 2012

Ex. 71      Carlson Development Group, LLC Annual Report – Summary of Online Changes, Filed on November 4, 2014

Ex. 72      Carlson Development Group, LLC Annual Report – Summary of Online Changes, Filed on April 13, 2016

Ex. 73       Carlson Development Group, LLC Annual Report – Summary of Online Changes, Filed on January 1, 2019

Ex. 74       Articles of Organization of CJ Seminar Holdings, LLC, Filed on October 9, 2012

Ex. 75       CJ Seminar Holdings, LLC Annual Report – Summary of Online Changes, Filed on October 31, 2013

Ex. 76       CJ Seminar Holdings, LLC Annual Report – Summary of Online Changes, Filed on August 29, 2016

Ex. 77       Articles of Organization of Zurixx Financial, LLC, Filed on April 10, 2013

Ex. 78       Zurixx Financial, LLC Annual Report – Summary of Online Changes, Filed on March 13, 2015

Ex. 79       Zurixx Financial, LLC Annual Report – Summary of Online Changes, Filed on April 5, 2016

Ex. 80       Zurixx Financial, LLC Annual Report – Summary of Online Changes, Filed on April 13, 2016

Ex. 81       Advanced Financial Training DBA Application, Filed on August 21, 2012

Ex. 82       Advanced Real Estate Education DBA Application, Filed on February 18, 2015

Ex. 83       Flipping Formula Education DBA Application, Filed on October 18, 2012

Ex. 84       Premium Financial Training DBA Application, Filed on February 17, 2014

Ex. 85       Rules of Renovation DBA Application, Filed on January 2, 2019

Ex. 86       Success Path Education DBA Application, Filed on April 13, 2016

Ex. 87       Zurixx, LLC 2019 Telemarketing Permit Application, February 2019

Ex. 88       Intentionally Blank

Ex. 89       Intentionally Blank

**LAWSUITS FILED AGAINST DEFENDANTS RELATED TO REAL ESTATE INVESTMENT PRODUCTS**

Ex. 90       *Ron Ross, individually, and on behalf others similarly situated v. Zurixx, LLC DBA Advanced Real Estate Education*, No. 34-2016-00190874, Superior Court of California, Sacramento, Complaint Filed February 24, 2016.

Ex. 91      *Antoine Jennings & Courtney Jennings v. Zurixx, LLC dba Advanced Real Estate Education & The Flipping Formula*, No. 1616-CV-04827, Circuit Court of Jackson County, Missouri at Independence, Complaint Filed in Missouri and removed to federal court as Case No. 4:16-01004-SRB, Refiled on September 15, 2016.

Ex. 92      *Karen Semmelmann & Larry Mondik v. Premier Mentoring, Inc., Cris Cannon, Jeff Spangler, et al.*, No. 1:16-cv-01053-RP, W.D. Tex., Austin Division, First Amended Complaint Filed October 3, 2016.

Ex. 93      *Katie Golbienko v. Advance Real Estate Education; Zurixx, LLC, Success Path, and DOE Defendants 1 through 20*, No. 17-2-01111-8-Sea, Superior Court of Washington in and for the County of King, Washington, Complaint Filed January 18, 2017.

Ex. 94      *Kevin Poore, individually, and on behalf of others similarly situated v. Zurixx, LLC dba Advanced Real Estate Education and DOES 1-10*, No. 37-2017-00019078-CU-NP-CTL, Superior Court of California, San Diego, Complaint Filed May 26, 2017.

Ex. 95      *Cary Schiffres and Jayne Schiffres v. Zuirxx, LLC, d/b/a Doug Hopkins Real Estate Formula*, No. CACE-18-001311 Division:03, 17th Judicial Circuit in and for Broward County, Florida, Complaint Filed January 17, 2018.

## I.     INTRODUCTION AND REQUESTED RELIEF

The Federal Trade Commission ("FTC") and the Utah Division of Consumer Protection ("Division") bring this case against Zurixx, LLC and six other defendants ("Zurixx" or "defendants"). Zurixx's business model is based on deception and misrepresentations. It invites consumers to a free event with the promise they will be taught how to make money through two types of property flipping – "fix-and-flipping" and "wholesale flipping" (or "wholesaling"). Fix-and-flipping entails purchasing a real property, repairing or improving it, and quickly reselling it for profit. Wholesaling entails putting a real property, typically distressed, under contract with the intent to assign that contract to another buyer (namely, a fix-and-flipper) for profit.

When consumers arrive at the free event, Zurixx tells them it does not have time to teach them all they need to know at the event and pitches a 3-day workshop costing $1,997. In the three-day workshop, Zurixx tells consumers that three days is not enough time to learn how to make money in real estate, and tells them to buy "advanced training," which typically costs between $20,000 and $40,000. At the advanced training, Zurixx continues to upsell, telling consumers that to be successful they need to pay tens of thousands more for a mentor.

Zurixx tells consumers they can make thousands, tens of thousands, or hundreds of thousands of dollars by following its "System." It tells consumers they can make money with little time and effort. It promises to arrange 100% financing for consumers' real estate projects, so that consumers need not spend their own money. It promises to teach consumers at the 3-day workshop everything they need to know to be successful. It instructs consumers to provide inflated income projections to credit card issuers. Based on these representations, consumers have paid Zurixx tens of millions of dollars. In addition to losing substantial amounts to Zurixx's scheme, many consumers have also faced ruined credit and even bankruptcy.

1

Because Zurixx makes earnings representations to consumers, Utah law requires it to provide consumers with information to support its claims. Zurixx does not do so and does not appear to compile data to substantiate its claims. In some instances, Zurixx agrees to provide consumers refunds, or partial refunds. Zurixx often requires consumers who receive a refund to sign a form agreement with a gag clause barring them from posting reviews and communicating with regulators, including state attorneys general and the FTC, about Zurixx and its products.

Zurixx's conduct violates: Section 5(a) of the FTC Act, 15 U.S.C. §45(a), the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. §45b, the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code §13-11-1 *et seq.*, and the Business Opportunity Disclosure Act ("BODA"), Utah Code §13-15-1 *et seq*.

To protect consumers from Zurixx's ongoing scheme, plaintiffs move the Court for a Temporary Restraining Order ("TRO") that: 1) halts Zurixx's unlawful conduct, 2) orders Zurixx to file with the Division and provide to consumers the information required under BODA; 3) imposes an asset preservation requirement on the corporate defendants; 4) appoints a temporary monitor to oversee Zurixx's operations, evaluate Zurixx's business practices, analyze Zurixx's finances, and report its findings to this Court; 5) allows plaintiffs and the monitor immediate access to the corporate defendants' premises and records; 6) requires defendants to provide sworn financial disclosures to plaintiffs and the monitor; and 7) allows plaintiff and the monitor to engage in expedited discovery. Plaintiffs also request that the Court order defendants to show cause why a preliminary injunction should not issue against them.

## II.    STATEMENT OF FACTS

### A.  Zurixx's Business Model

Zurixx invites consumers, most of whom are novices at real estate investing,[1] to a free event at which speakers make claims about the thousands of dollars to be made from real estate transactions using the Zurixx System. The free event, however, is primarily a sales pitch for Zurixx's first level of paid training: a 3-day workshop costing $1,997. Speakers at the 3-day workshops spend hours pitching the second level of paid training: "advanced packages" costing tens of thousands of dollars. Zurixx also touts additional real estate investing products, such as telephone coaching, on-site mentoring, and the FastStart Bootcamp.

### B.  Zurixx Uses False Or Unsubstantiated Claims To Entice Consumers To Purchase Its Products And Services

#### 1.  Zurixx's Free Event – A Venue To Sell Zurixx's $1,997 3-Day Workshop

Zurixx contacts consumers via mailers,[2] emails,[3] radio ads,[4] social media,[5] and notices in

---

[1] Zurixx knows that its audiences are largely new to real estate investing. *See* Ex. 4 at 15:14-17; Ex. 8 at 29:5-8 (90 percent of the audience is "brand new" to real estate investing); Ex. 9 at 390:20-21; Ex. 11 at 73:17 and Ex. 12 at 76:21 (lot of beginners in the room). Plaintiffs' expert who attended a 3-day workshop opines that "most of the Participants did not have sufficient familiarity with real estate investing or sufficient mathematical competency to correctly interpret and assess the information presented by Zurixx, to critically evaluate the earnings and other claims made during the Workshop, or to adequately grasp the financial risks involved in the Zurixx investment strategies." Ex. 17 *Expert Report* at 12 (Opinion # 1). Consumers' sworn declarations show that consumers who attended defendants' events were new to real estate investing. See Ex. 14 at 11:23-12:7; Ex. 25 at ¶2; Ex. 27 at ¶3; Ex. 30 at ¶3; Ex. 32 at ¶4; Ex. 34 at ¶15; Ex. 36 at ¶2; Ex. 38 at ¶2; Ex. 39 at ¶3; Ex. 42 at ¶5; Ex. 44 at ¶2.

[2] Ex. 25 at ¶2; Ex. 33 at ¶3; Ex. 35 at ¶4; Ex. 36 at ¶3; Ex. 38 at ¶3; Ex. 41 at ¶4; Ex. 43 at ¶3; Ex. 44 at 2.

[3] Ex. 14 at 6:23-25.

[4] Ex. 27 at ¶2; Ex. 30 at ¶2; Ex. 34 at ¶3.

[5] Ex. 26 at ¶2; Ex. 39 at ¶4; Ex. 42 at ¶3 (free event would teach consumers how to make money flipping real estate without any of their own money); Ex. 46 at ¶3.

newspapers[6] that feature celebrities from popular "fix and flip" and home renovation television shows. For example, a postcard with fix and flip stars Dave Seymour and Peter Souhleris from the A&E Show "Flipping Boston" invites consumers to attend a "**WEALTH BUILDING EVENT**" to learn "how you can create **MASSIVE WEALTH** for yourself and your family for generations" and "Create **cash flow** this year that surpasses your monthly income![7]

Consumers who register for the free event receive "VIP Tickets" with a "$147 Value"[8] and emails, which make representations that are later repeated at the free event. For example, defendants have sent emails that purport to be from Tarek El Moussa, a star of HGTV's "Flip or Flop," suggesting that those who attend will learn to "'flip[] houses for 5 to 6 figures of profit'";[9] obtain access to "'a list of hard money lenders who want to lend our graduates 100% of the money they need to invest'";[10] and be able to complete wholesale deals in "'5 to at most 10 hours per month,'" while earning "9,000 to potentially $15,000'" from those wholesale deals.[11]

The free events do not teach consumers how to make money in real estate. Its purpose is to persuade consumers to purchase the 3-day workshop for a "discounted" price of $1,997.[12]

### 2. Earnings Claims At The Free Events

Zurixx makes implicit and explicit earnings representations and other false or

---

[6] Ex. 35 at ¶4.

[7] Ex. 43 at ¶3 and Att. A (emphasis in original).

[8] Ex. 30 at ¶8 and Att. A.

[9] Ex. 50 at ¶6 and Att. A-5; Ex. 51 at ¶18 and Att. A-7.

[10] Ex. 50 at ¶ 6 and Att. A-3; Ex. 51 at ¶18 and Att. A-14.

[11] Ex. 50 at ¶6 and Att. A-3; Ex. 51 at ¶18 and Att. A-14 & A-15.

[12] Jeannie Keller testified that the free event "was a sales pitch for a three-day in-depth seminar on home flipping." Ex. 14 at 17:10-25; *see also* Ex. 36 at ¶5; Ex. 38 at ¶4 (free event was mostly about buying an advanced training package); Ex. 39 at 6.

unsubstantiated claims to entice consumers to purchase the 3-day workshop, such as:

- "As far as expected profits – and these are averages for this area – on average with wholesale deals, you can expect to put $3,000 to $15,000 cash in your pocket. Now, flipping is where you are going to make your bigger paychecks, $20,000 50-, 100- [dollars]." Ex. 1 at 25:19-23 (*Florida Free Event*).

- The average profit margin is 20 percent on a retail sale. Ex. 2 at 12:4-9 (*2018 Virginia Free Event*).

- ". . . the average flip here is $100,000." Ex. 2 at 73:12-13 (*2018 Virginia Free Event*).

- "Our students are making right now in this area anywhere from $60,000 to upwards of $150,000 per flip, per transaction they do." Ex. 3 at 45:7-9 (*California Free Event*).

- "But you're making $15,000, $20,000" with a wholesale deal. Ex. 3 at 53:2-5 (*California Free Event*).

- "The average profit margin up here is about 25 percent. So 25 percent of 200,000 is 50,000 per flip." Ex. 4 at 33:12-15 (*Georgia Free Event*).

- "How many people would love to be able to do that and make 8, 9, 10 grand, once a month?" Ex. 21 at 106:11-12 (*2019 Virginia Free Event*).

- "It's not big money, you only made 10 grand . . . But 10 grand once a month." Ex. 21 at 107:17-20 (*2019 Virginia Free Event*).

Speakers at the free event routinely stress the profitability of real estate investing using the Zurixx System.[13] Zurixx describes consumers who supposedly made thousands of dollars to convince attendees to pay for the 3-day workshop. Examples include, among others, a single mom who purportedly completed a transaction with a $42,000 profit in three weeks and with only 20 hours of work.[14] "Frank" who purportedly had a profit of $131,000 after about 25 hours of his time.[15] "Lisa," who 25 days after the workshop, purportedly bought a property for

---

[13] Ex. 26 at ¶4; Ex. 38 at ¶4; Ex. 39 at ¶7; Ex. 41 at ¶7.

[14] Ex. 1 at 39:1-14 and at 46:4-21.

[15] Ex. 1 at 64:23-65:7.

$136,000 without using any of her own money and sold it in one day, for a profit of more than $42,000.[16] A woman who purportedly made $50,000 on her first deal, which closed 83 days after the Zurixx seminar.[17] A police officer, who knew nothing about real estate, purportedly built up a multi-million dollar portfolio in Los Angeles.[18] A teacher who had lost her job purportedly did a wholesale deal and received a check for $21,000.[19]

### 3. Time and Effort Claims At The Free Event

Zurixx routinely tells consumers that little time and effort is necessary to make a profit in real estate investing. One speaker stated that consumers should look to devote 5-10 hours per wholesaling deal and 10-12 hours doing a flipping deal.[20] Other time and effort claims include:

- "Now, the way that we do this with the offers, that is not going to take you more than two, maybe three hours total." Ex. 1 at 60:18-20 (*Florida Free Event*).

- "A lot of our students are spending anywhere from eight to 10 hours a week and getting about average results. Because once you know the recipe, you're able to get the results a whole lot faster." Ex. 3 at 36:22-37:1 (*California Free Event*).

- "So, in the beginning, to make 40 offers, that would take anywhere from about 15 to maybe 20 hours over the next 12 months for you to submit 40 offers." Ex. 3 at 39:13-15 (*California Free Event*).

- "It will – after your training, it will take anywhere from ten hours to 40 hours in the next six months to make ten offers." Ex. 4 at 50:21-23 (*Georgia Free Event*).

Consumers report that Zurixx made similar claims at the events they attend.[21]

---

[16] Ex. 3 at 57:14-18 and 59:9-13.

[17] Ex. 4 at 67:22-68:5.

[18] Ex. 4 at 80:8-12.

[19] Ex. 4 at 88:8-10 and 89:1-12.

[20] Ex. 1 at 26:4-12.

[21] Ex. 27 at ¶6 (speaker said "we could earn money flipping houses in our spare time . . . ."); Ex. 34 at ¶17 (speaker said we would spend only about 6 hours of work over a 4-6 week period for wholesaling deals); Ex. 36 at ¶9; Ex. 39 at ¶7 (speaker said we could make "approximately

### 4. 100% Funding Claims At The Free Event

Zurixx routinely promises consumers that they will not need to use their own money to invest in real estate because Zurixx provides 100% funding regardless of income or credit history. Typical representations include:

- "Would you like to know how you can make some immediate profits in real estate without using any money, none of yours, none of ours, and have no liability, yes or no?" Ex. 1 at 76:19-22 (*Florida Free Event*).

- "So not only will we teach you how to find the deals, we're going to give you money to buy and to renovate them . . . ." Ex. 2 at 45:14-16 (*2018 Virginia Free Event*).

- "I'm going to share with you how we can help every single one of you do a deal . . . in the next 45 to 60 days with no money out of your own pocket." Ex. 3 at 17:20-23 (*California Free Event*).

- "We use other people's money then to do our deals . . . ." Ex. 3 at 63:6-7 (*California Free Event*).

- Tarek and Christina's lending partners "will fund 100 percent of the real estate you buy, fund 100 percent of the rehab, regardless of your credit or your background." Ex. 4 at 46:3-7 (*Georgia Free Event*).

Consumer report that the promise of 100% funding was important to their decision to purchase the 3-day workshop.[22]

---

$5,000-$10,000 on a deal involving assignment of a contract, $10,000-$20,000 on a wholesale deal, and anywhere from $20,000 -100,00 on a fix and flip, while only working 10-12 hours a week over a period of three months."); Ex. 41 at ¶7 (speaker said that we could buy and sell property while sitting at home without using any of our own money); Ex. 42 at ¶7; Ex. 46 at ¶3 (speaker said we needed to spend only a few hours each week to be successful and make a profit); Ex. 48 at ¶ 11 (speaker said we could make a profit in real estate investing with about 10 hours a week and on a part-time basis).

[22] Ex. 25 at ¶¶5, 17 ("The idea of not having to use my own money to flip houses was part of the reason I paid $1,997 for the 3-day workshop."); Ex. 26 at ¶4 (speaker said "we would not need to pay out of our own pockets to buy and remodel properties . . . ."); Ex. 27 at ¶6 (speaker said "we would gain access to funding so that we would not need to invest our own money"); Ex. 30 at ¶¶6, 9; Ex. 34 at ¶¶5, 6, 8 ("Over and over the speaker said we could do real estate transactions without using any of our own money."); Ex. 38 at ¶4; Ex. 41 at ¶7 ("Not having to use our own funds to start investing in real estate was important to me."); Ex. 42 at ¶8; Ex. 43 at ¶5 (speakers

### 5. "Learn All You Need To Know" Claims At The Free Event

Zurixx often tells consumers that the 3-day workshop includes all the training they would

need to be successful real estate investors. Typical representations include:

- "You are going to come out of our three-day training class all set to be making ten offers a week on distressed properties . . . ." Ex. 1 at 60:14-16 (*Florida Free Event*).

- "By the end of our three-day investment accelerator, graduates will have the knowledge, expertise, and training to put together sound, effective loan packages that are custom-tailored to appeal to the right lending solutions to fit your needs. We will teach you what to do and what not to do to make sure your deals are profitable and attractive to lenders, whether you're wholesaling, flipping, or acquiring income-producing properties." Ex. 2 at 37:1-9 (*2018 Virginia Free Event*); Ex. 3 at 81:12-19 (*California Free Event*).

- "Not only are [Tarek and Christina] going to give you a professional education, not only are they going to give you a list of all their lending partners to fund all your deals plus to rehab regardless of your credit, not only are they going to give you the cash buyers list so you have the buyers, but they are going to guarantee that you or your partners closes a deal within three months, you get your money back or you and partner don't do the deal in six months, if you want to make five offers and your partner makes five offers, that includes the ten right there." Ex. 4 at 100:6-16 (*Georgia Free Event*).

Consumers report that Zurixx made similar claims at the events they attended,[23] and that

---

said that we could finance deals using other people's money and that there would be no money out of my pocket); Ex. 46 at ¶3; Ex. 47 at ¶4.

[23] Ex. 14 at 24:19-22 (presenter said we would learn everything we needed to know to flip homes); Ex. 26 at ¶6 (". . . my wife and I understood that the Investment Accelerator workshop was the only training we would need to be successful and make a profit in real estate investing using the Success Path program."); Ex. 27 at ¶6 (the speaker said "we would learn everything we needed to know to flip houses. . . ."); Ex. 30 at ¶9 (the presenter led the audience to believe that the workshop would provide attendees with all the tools they needed to invest in real estate, regardless of their credit history and without needing to use their own funds."); Ex. 32 at ¶¶9, 10 ("training would teach [attendees] everything they need to know about how to flip homes . . . the training would deliver all of the secrets regarding how to invest in real estate."); Ex. 36 at ¶5; Ex. 38 at ¶4; Ex. 41 at ¶8; Ex. 42 at ¶8; Ex.43 at ¶¶6, 14; Ex. 44 at ¶4; Ex. 46 at ¶3 (presenter said we would learn everything we needed to know about how to make a profit in real estate at the 3-day workshop); Ex. 48 at ¶13 (speaker said we would learn all we needed to know to launch a successful real estate investment business and to begin flipping houses for a profit).

those claims were important to their decision to purchase the 3-day workshop.[24]

### 6. Zurixx Fails To Disclose Material Aspects Of Its Refund Policy

To persuade consumers that purchasing the 3-day workshop is risk-free, Zurixx offers a six-month guarantee. A Zurixx speaker at a free event in Florida promised that a consumer who did not close a profitable deal within the first six months would receive 100% of her money back.[25] In Virginia, a Zurixx speaker said that a consumer who did not make at least $6,000 in six months would get her money back.[26] Other examples include:

- "If it doesn't work for you, we still give you $2,000 back. This really is a no-lose situation as long as you try it." Ex. 3 at 74:25-75:2 (*California Free Event*).

- "Remember, do a deal in 90 days, get your $2,000 back. Don't do a deal in six months, still get your $2,000 back." Ex. 3 at 91:12-14 (*California Free Event*).

- "If you or your partner don't do a deal in six months, you get your money back." Ex. 4, at 56:4-6 (*Georgia Free Event*).

- Tarek and Christina "guarantee you in writing that you're going to make money with their system in the next six months. If you don't, they're going to give you your money back." Ex. 4 at 92:17-20 (*Georgia Free Event*) – free guarantees,[27] which were important

---

[24] Ex. 30 at ¶19 (consumer would not have paid $1,997 "if I had known I would not learn what I needed to succeed as a real-estate investor during the workshop); *see also* Ex. 32 at ¶10; Ex. 38 at ¶8 (had we known at the free event that there would be additional sales pitches for more training, we would not have signed up for the workshop or paid $1,997); Ex. 42 at ¶10.

[25] Ex. 1 at 92:14-17 and at 101:15-18 ("If you have not closed at least one profitable real estate deal in six months with our help, the company sends you back 100 percent of your tuition anyway.").

[26] Ex. 2 at 77:18-20, at 85:19-20, at 87:12-14, and at 88:18-21.

[27] Ex. 27 at ¶7 (speaker said "paying the $1,997 was risk free because Flip Advantage would give us our money back if we were not happy with what the company taught us."); Ex. 32 at ¶11 ("The presenters . . . said our money would be refunded if we did not make three times the amount paid for tuition."); Ex. 34 at ¶8; Ex. 42 at ¶9 ("The presenter guaranteed that we would get our money back if we did not flip a house within six months."); Jeannie Keller testified that the guarantees "took all of the risk out of it." Ex. at 14:11-15.

to their decision to buy the 3-day workshop.[28]

Zurixx's six-month guarantee representations are false or misleading because the speakers at the free events omit significant details related to the guarantee that the consumer must meet in order to receive a refund of the $1,997. To be eligible for a refund, the consumer must make more than 25 offers within the six-month period, and make 15 offers under the "guidance of [Zurixx's] resource line help desk associates" if "in the first ten offers, [the consumer] ha[s] not made THREE TIMES [the] purchase price" of the 3-day workshop.[29]

Consumers often do not learn of these requirements until they seek a refund after six months or when they read the requirements on certificates that they receive only after they have paid. In addition, in numerous instances, Zurixx fails to inform consumers that, in order to receive a refund of the $1,997 fee (or for a payment for any other Zurixx real estate product), the consumer must sign a form agreement that bars the consumer from filing a complaint with regulators, including the FTC and state attorneys general, or posting reviews on the Internet about Zurixx or its products. Below is the gag clause:

> "Customer agrees that it shall not file or pursue any other claim or action pertaining to Customer's interactions with [Zurixx brand name], its clients, officers, directors, affiliates, members, owners, employees, agents, spouses, partners, heirs, successors and assigns, including but not limited to administrative complaints with the Better Business Bureau, civil litigation, internet postings or blogs, magazine, newspaper or other such published articles, complains with any state or federal government agency, including but not limited Attorneys' General or FTC, or credit card/merchant chargeback, refund transactions . . ." (Section 5 of Settlement Agreement).[30]

---

[28] Ex. 32 at ¶12 (guarantees were "a significant factor in my decision to purchase training from Zurixx."); Ex. 34 at ¶8 ("The tuition guarantees made it seem like we could not lose money."); Ex. 42 at ¶9 ("I decided to purchase the three-day workshop because I thought I had nothing to lose since it was backed by a guarantee."); Ex. 44 at ¶6 ("This promise of a money-back guarantee heavily influenced my decision to purchase a ticket for the 3-Day Workshop.").

[29] Ex. 51 at ¶23 and Att. G.

[30] Ex. 27 at ¶22 and Att. G-2.

Zurixx's gag clause works to deny consumers information about Zurixx and its deceptive

conduct, and it impedes law enforcement. Indeed, some consumers were fearful to discuss with

the FTC their experience with Zurixx because of the clause,[31] and Zurixx has sued at least one

consumer who Zurixx claims violated the clause.[32]

## C. Zurixx Makes False Or Unsubstantiated Representations At The 3-Day Workshop

### 1. Earnings Claims At The 3-Day Workshop

Zurixx uses false or unsubstantiated earnings and other claims at the 3-day workshop to

convince consumers to pay for one of its three "advanced packages."[33] Any sporadic teaching at

the workshops is interspersed with hours of motivational speeches and pep talks about the

speaker and others who claim to have made big money using the Zurixx System, while telling

participants they need to buy an advanced package if they want to be successful.[34] Zurixx

explains that the workshop is actually just the beginning course, directly contradicting its "learn

---

[31] Ex. 28 at ¶6 ("Had I not signed the Settlement Agreement and Mutual Release with [Zurixx brand name], I would have been willing to speak with Federal Trade Commission staff about my experience with the company."); Ex. 29 at ¶6 (same); Ex. 31 at ¶6 (same); Ex. 37 at ¶6 (same); Ex. 40 at ¶6 (same); Ex. 45 at ¶6 (same).

[32] *See* Ex. 19, Complaint, *Zurixx v. Crayton*, Third Judicial District Court, Salt Lake County, March 20, 2019.

[33] Ex. 14 at 73:7-9 and at 46:1-3, 7-10; Ex. 26 at ¶¶13-14 ("Randy stated that if we followed the program we would make 30% profit from each house we wholesaled . . . Randy also explained that doing two wholesale deals per month would lead to $120,000 in annual income"); Ex. 30 at ¶16 (presenter said consumers could earn $5,000 to $10,000 per wholesale deal and could earn approximately $50,000 when remodeling and then selling a property for between $300,000 and $400,000); Ex. 34 at ¶19; Ex. 38 at ¶6; Ex. 39 at ¶14; Ex. 42 at ¶14; Ex. 46 at ¶5.

[34] Ex. 14 at 50:9-12 and at 57:1-4. *See also* Ex. 30 at ¶17; Ex. 32 at ¶28; Ex. 34 at ¶20 ("The real emphasis of the 3-day workshop, however, was to convince us that we needed to buy into the company's "continuing education" program in order to be successful in real estate investing."); Ex. 38 at ¶8 (according to the speaker, we needed to purchase the advanced training if we wanted to be successful); Ex. 41 at ¶14; Ex. 46 at ¶5; Ex. 47 at ¶10.

all you need to know" claims made at the free event.[35] Zurixx reassures skeptical consumers that

they will make back the money spent on an advanced package with their first real estate deal.[36] It

highlights the purported challenges individuals face without the advanced education.[37] Zurixx

offers the packages at a putative "discount," but only if purchased at the workshop.[38]

Examples of oral earnings claims Zurixx uses at the 3-day workshop include:

- "So that's a pretty average flip, $40,000." Ex. 5 at 55:21-22 (*2018 Virginia Workshop*).

- "With wholesaling . . . you make about three to five thousand dollars in profit, just pure cash" whereas flipping leads to about "40 to 100 grand . . . ." Ex. 5 at 177:25-178:8 (*2018 Virginia Workshop*). With flipping, "you make a lot more money, probably about 40 to 100 thousand in your market." Ex. 5 at 312:9-10 (*2018 Virginia Workshop*).

- The Zurixx representative told an FTC investigator that "we set goals of $120,000 to $180,000 your first year." Ex. 6 at 28:3-4 (*2018 Virginia Workshop*).

- "If we start you with $100,000, then a year from now with good spending and good

---

[35] Ex. 5 at 156:7 ("So this is the beginner course . . . ."); Ex. 8 at 128:15-16 ("So the only thing about this – this weekend is the beginning course. This is high school."): Ex. 30 at 18 ("I could not believe that Advanced Real Estate Education was telling me that I would need to spend tens of thousands of dollars to learn things that I was supposed to learn at the three-day workshop.").

[36] Ex. 36 at ¶18 (Mr. King believed he would recoup the cost of the Gold package "once I closed my first real estate deal."); Ex. 39 at ¶15 ("He said that I would make back the money I spent on this purchase [of the Diamond package] once I completed my first real estate deal.").

[37] Ex. 6 at 33:3-9 (Zurixx told an FTC investigator that "it's a bit challenging" to do the real estate investing without the advanced education); Ex. 7 at 112:20-21 ("So if you work with us, you don't have to make as many mistakes"), at 342:20-23 ("You can't go make the money on your own."); Ex. 9 at 165:10-13 ("If you're not doing [the advanced education], you got to be even extra careful because you're talking about doing this on your own, and then you're putting your money at risk without the guidance of a mentor."); Ex. 10 at 201:17-18 (". . . I would be for [*sic*] more afraid to do this business without a guide and a coach."); *see also* Ex. 93 *Golbienko Complaint* at ¶2.4 ("[Zurixx] stated that without the presence of a mentor in the attendees' business, they would likely not be successful.").

[38] Some consumers who could not afford one of the advanced packages bought a smaller package. Ex. 34 at ¶¶22, 27 (consumer could not initially afford any of the advanced packages but eventually purchased for $8,500 18 coaching sessions and a guarantee that the company would find two properties that Ms. Johnson and her husband could flip); Ex. 44 at ¶¶19-20 (consumer purchased for $15,297 the Fast Start Bootcamp, access to the Property Farm software, two online courses, and access to the company's Online Resource Center).

behavior, you can have it doubled to $200,000." Ex. 8 at 181:13-14 (*Texas Workshop*).

- "If I'm not making $30,000 on each flip, its not worth my time. Investors make far more money than most people do in the workplace." Ex. 8 at 85:14-16 (*Texas Workshop*).

- "Because most of our students actually replace the investment costs [for the advanced training] within their first two to three transactions." Ex. 9 at 213:9-10 (*Texas Workshop*).

- "I just wholesaled a little deal in Indianapolis. It was 80 grand and we made a $10,000 wholesale fee." Ex. 11 at 104:13-15 (*Florida Workshop*).

- "$384,126. Now, let's say you make 10 percent of that on your first wholesale deal. That's $38,000." Ex. 11 at 100:16-19 (*Florida Workshop*).

- Chris spent about 10 hours and made $11,000 on a wholesale or about "$900, $1000 per hour." Ex. 11 at 370:5-15 (*Florida Workshop*).

- "So that deal there Terry made $7,500 dollars wholesale . . . ." Ex. 12 at 212:21-22 (*Florida Workshop*).

The speakers also present stories about purportedly successful participants, which are rife with earnings claims, such as:[39]

- ". . . he sent me a picture of him and Izzie with their first check, 75 grand. It was not a wholesale, but $75,000 on his first flip in Tulsa." Ex. 5 at 311:19-22 (*2018 Virginia Workshop*).

- Courtney was able to make $35,000 on his first flipping deal after the advanced education program and $67,000 on his second deal. Ex. 9 at 342:12-18, at 344:7-8 and at 348:11-349:9 (*Texas Workshop*).

- "A lot of our students make 20, 30 percent." Ex. 11 at 62:1-2 (*Florida Workshop*).

- "We've had students literally in their first year make upwards of half a million dollars. That's not an exaggeration." Ex. 11 at 144:2-4 (*Florida Workshop*).

- "We have students . . . making 30 grand a year doing five deals a year. 40, 50, 60, 70 grand, making hundreds of thousands of dollars . . . ." Ex. 12 at 502:6-10 (*Florida Workshop*).

- "A lot of our students on a deal or two make about 75 grand . . . ." Ex. 12 at 505:20-21

---

[39] Ex. 35 at ¶11; Ex. 36 at ¶9; Ex. 38 at ¶6 (speakers gave examples of consumers who had made thousands of dollars using the Zurixx System); Ex.46 at ¶5 (there were stories about very successful investors, including the speaker).

(*Florida Workshop*).

The workbooks Zurixx distributes before or at the 3-day workshop similarly make earnings claims.[40] The stories about successful customers have been persuasive to consumers.[41] However, the impression that they convey – that consumers who purchase Zurixx's products are likely to make substantial income from investing in real estate – is false or unsubstantiated, as Zurixx appears not to track the results of its customers.[42]

### 2. Zurixx Instructs Attendees Of The 3-Day Workshop To Provide Speculative Future Income To Credit Card Issuers, Reinforcing Its False Or Unsubstantiated Earnings Claims

Zurixx directs consumers to obtain new credit cards or increase the credit limits on existing cards, purportedly to help finance real estate deals. Zurixx instructs consumers to represent to card issuers income that is significantly higher than the consumer's current income, based on the supposed likely increase in the consumer's income from investing in real estate. Below are typical representations:

- "Tell them [bank, credit card company] how much you are going to make this year as a real estate investor, okay? So a good rule of thumb there would be about a 100K more than you did last year . . . We are not lying. We are projecting." Ex. 5 at 410:13-20 (*2018 Virginia Workshop*).

- According to the Zurixx speaker, consumers are "legally able to . . . reasonably estimate the next 12 months of income" and "You decide anywhere between $120,000 to $200,000 . . . you're reasonably estimating your next 12 months of income." Ex. 8 at 242:8-14 and at 244:5-7 (*Texas Workshop*).

---

[40] Ex. 27 at ¶11 and Att. B at p. 18 ("Make $5000," "6 Hours Total," and "833.33 per HOUR.") and at p. 32 ("Two Wholesale Deals Per Month is $120,000 Annual Income!").

[41] Ex. 38 at ¶6 (the consumers' stories were persuasive to me and made me think that we too could make money in real estate investing).

[42] The speaker at a workshop stated that Zurixx does not have statistics about the success of its students. Ex. 12 at 256:13-25 (*Florida Workshop*).

These instructions help convince consumers that Zurixx's earnings claims are accurate and that they too are likely to generate such income.[43] While Zurixx claims that the purpose of increasing credit limits is to help consumers' anticipated real estate investment projects, the true purpose appears to be enabling consumers to pay Zurixx for expensive products and services.[44]

### 3. Little Time And Effort Claims At The 3-Day Workshop

The Zurixx speaker at a Virginia workshop stated that wholesaling takes four to six weeks, whereas flipping takes about three months.[45] Zurixx made similar little time and effort claims at a Florida workshop:

- "Most of our students are part-time." Ex. 11 at 102:8-9 (*Florida Workshop*).

- "Our system is designed to fit into your life because it's been designed over the last 14 years and changed in order to say, okay, start off at five to 10 hours a week. . . Because it was designed for adults with children and full-time jobs." Ex. 11 at 145:9-15 (*Florida Workshop*). "[i]t's easy to find great deals [Ex. 12 at 378:24-25]; "It's easy to find buyers and money." Ex. 12 at 379:3-4 (*Florida Workshop*).

- A Zurixx presenter told an FTC investigator posing as a consumer that it would take about 30 days for a wholesale deal and 90-120 days for a fix and flip. Ex. 10 at 13:7-9

---

[43] Ex. 26 at ¶11; Ex. 34 at ¶18 (The speaker told participants to tell the banks and card companies they expected to make $250,000; at the time, Ms. Johnson was making $11,000. "That my projected annual income from real estate investing would be $250,000, even if unrealistic, led me to believe the representations the speaker was making about the money I would make from real estate investing were accurate."); Ex. 35 at ¶14; Ex. 41 at ¶13 (speaker said to say that Mr. Purcell and his wife were each making $110,000 even though at the time their combined income was $85,000); Ex. 44 at ¶12 ("To increase the odds that our credit card companies would extend our credit limits, we were told to say that we expected our income to double over the next year because of the profits that we would make from our business."); Ex. 48 at ¶24 (speaker told Mr. Fenrich to state that our annual income had increased to at least $100,000 when at the time it was less than $20,000). *See also* Ex. 93 *Golbienko Complaint* at ¶2.5.

[44] Ex. 9 at 342:13-18 (presenter at the Texas Workshop told consumers that he used the credit he raised during the workshop to pay for Zurixx's advanced education); Ex. 14 at 114:22-115:6 and 123:5-6 (all the money from the increased limits and the new cards obtained went to pay Zurixx for additional training); Ex. 25 at ¶14; Ex. 93 *Golbienko Complaint* at ¶2.8.

[45] Ex. 5 at 177:24-25 and at 312:13-16 (*2018 Virginia Workshop*).

and at 13:21-25 (*Texas Workshop*).

- A consumer reports: "They said we could do the business in our spare time, ten minutes a day." Ex. 14 at 47:12-25 (*J. Keller Investigational Hearing*).[46]

### 4. 100% Funding Claims At The 3-Day Workshop

At the 3-day workshops, Zurixx continues to send the 100% funding message. For example, one attendee states: "Throughout the workshop, Mr. Swails [the Zurixx presenter] claimed that everyone who attended the 3-day workshop would have access to 100% funding for their investments, regardless of their credit rating."[47]

### D. Zurixx's Advanced Packages

Zurixx tells consumers at the 3-day workshop to purchase one of three advanced packages in order to be successful in real estate investing.[48] Zurixx explains that the workshop is just the beginner course.[49] It offers the advanced packages at a "discounted" price – but only if bought at the workshop.[50] The least expensive package, the Gold, includes an Online Resource Center, software, and two 2-day camps; the Platinum package adds a Fast Start 3-day Bootcamp;

---

[46] *See also* Ex. 30 at ¶16 (presenter said we would need to work about six hours per week to succeed as wholesalers); Ex. 42 at ¶14 (the presenters said it would not take much time or effort to make at least tens of thousands of dollars per flip).

[47] Ex. 36 at ¶11; *see also* Ex. 14 at 51:3-5 and 20-22 ("The funding is there, guys; the funding is there, the money is there, and all you have to do is follow our program . . . You can do this using other people's money."); Ex. 26 at ¶12 ("Randy said if we had properties we wanted to buy, his company would fund them."); Ex. 35 at ¶12; Ex. 41 at ¶12 (speaker stated that we would not need to use any of our own money to buy investment real estate with Success Path's system); Ex. 42 at ¶18.

[48] Ex. 14 at 50:9-12 and at 57:1-4; *see also* Ex. 30 at ¶17; Ex. 32 at ¶28; Ex. 34 at ¶20; Ex. 48 at ¶28.

[49] Ex. 5 at 156:7; Ex. 8 at 128:15-16 ("So the only thing about this – this weekend is the beginning course. This is high school.").

[50] The retail and discount price for the three advanced training packages are as follows: Diamond package is $73,973 discounted to $41,297, Platinum package is $45,997 discounted to $26,297 and the Gold package is $35,972 discounted to $21,297. Ex. 51 at ¶37 and Att. W.

the Diamond package adds a two-day one-on-one mentorship.[51]

Many consumers who purchased an advanced package found that it did not train them to be successful real estate investors.[52] There was no 100% funding,[53] the software, PropFinder, was not useful.[54] The Boots-on-the-Ground training was supposed to be specific to the consumer's locale, but was not. For example, a couple who expected to learn about investing in the Portland-Vancouver market, found that the Boots-on-the-Ground trainer could speak only of real estate investing in mid-west cities.[55]

Laurie Majewski attended all three days of the Fast Start Bootcamp, but it did not discuss fix and flipping and no useful information was given during the half-day they visited several potential flips. According to Ms. Majewski, the main message that the speaker repeated over and

---

[51] Ex. 51 *FTC Paralegal Bazan Dec.* at ¶37 and Att. W. Some declarants paid $41,297 for the Diamond package: Ex. 18 at ¶2.15, Ex.27 at ¶14, Ex. 38 at ¶13, Ex. 39 at ¶16, Ex. 41 at ¶15, and Ex. 43 at ¶18. Others paid $26,297 for the Platinum package: Ex. 26 at ¶ 37, Ex. 32 at ¶30, Ex. 46 at ¶6, and Ex. 47 at ¶12. And yet others bought the Gold package for $21,297: Ex. 33 at ¶12 and Ex. 36 at ¶17.

[52] Ex. 46 at ¶6 (no results from having purchased the Platinum package).

[53] Ex. 41 at ¶20 (Mr. Purcell, an experienced contractor, bought the Diamond package because he had been led to believe by statements at the free event and the workshop that there was 100% funding using other people's money for real estate investments. There was no such funding. He was told that he had to bring $98,000 of his own money to a proposed real estate transaction).

[54] Ex. 36 at ¶¶ 17, 26 ("did not show any real estate data for my area"); Ex. 48 at ¶ 36 (software was not useful because the entries said not to call or were out-of-date).

[55] Ex. 14 at 66:13-14, 68:22-69:4, and 70:7-9 ("I don't recall him saying you – teaching us really anything in the [Boots on the Ground class] that we could apply in our own area."). *See also* Ex. 33 at ¶13 (". . . the forms and info we received at Boot Camp were not applicable to California law."); Ex. 38 at ¶¶18-19 (did not learn a lot about how to get started in real estate investing during the Fast Start Bootcamp); Ex. 39 at ¶20 ("After the Boot Camp concluded, I still did not feel that I had received enough information from the Flipping Formula to launch my own business and make profitable investments in real estate."); Ex. 41 at ¶18; Ex. 43 at ¶¶22-23; Ex. 44 at ¶24; Ex. 47 at ¶13 (speaker at Bootcamp was from South Carolina and not familiar with the Cleveland real estate market, did not have any of the local connections that had been promised at the 3-day workshop).

over on all three days of the Bootcamp was the need to have a personal mentor to be successful.[56] Kelly Campbell found the mentor was of no use.[57] Corina Ferrer found the Las Vegas Investors Summit "was nothing but an upsell for additional training."[58] And training that was supposed to be included within the advanced package was never available.[59]

### E. Zurixx's Coaching And On-Site Mentoring Programs

Zurixx pitches additional packages via telemarketing regardless of whether consumers have purchased one of its advanced packages.[60] For instance, Kathy Johnson did not initially purchase an advanced package, but Zurixx sold her a coaching program for $8500.[61] The Kellers, who bought the most expensive advanced package and attended both the 3-day and the Boots-on-the-Ground workshops, were persuaded to part with an additional $27,000 for telephone-based

---

[56] Ex. at 38 at ¶19 ("The mentor is the key").

[57] Ex. 27 at ¶¶18-19 (mentor told Campbells to use a realtor to find properties that fit the Flip Advantage formula, but then said none of the properties was suitable).

[58] Ex. 32 at ¶¶41-42; Ex. 41 at ¶24 (attended the Las Vegas Summit but it did not provide him with information about funding options as had been promised in the earlier programs).

[59] Ex. 32 at ¶¶44-45 (never received Marketing Mastery or Find the Money purchased as part of the Platinum package "because they were never made available."); Ex. 38 at ¶33 ("Even though the Diamond package included two days with a mentor, the company never sent us a mentor, although we asked for one several times."); Ex. 47 at ¶18 (with respect to the promised national seminars and events, no dates were ever set).

[60] Ex. 42 at ¶20 (Success Path pitched mentor program for $6,000); Ex. 34 at ¶¶26-27; Ex. 36 at ¶19 (after 3-day workshop, Mr. King received numerous calls from Success Path "trying to convince me to purchase a series of one-on-one coaching sessions with their trainers for $7,000."); Ex. 38 at ¶21-22 (almost immediately after returning from Fast Start Bootcamp, received call to purchase a coaching program for $30,000, which they did); Ex. 46 at ¶7 (Zurixx representative said we needed a personal coach to make certain we could find, make offers on, and buy properties); Ex. 47 at ¶¶14-15 (shortly after Bootcamp, consumer received call to purchase a year's worth of telephone coaching, for which he for $44,500).

[61] Ex. 34 at ¶¶ 22, 27-29.

coaching.[62] Other consumers purchased coaching or mentoring programs from Zurixx telemarketers.[63] The agents told consumers how profitable their real estate business would be with a coach. For instance, a Zurixx telemarketer told the Kellers that with the coaching they should expect 300 to 400 thousand dollars, but only 100 to 200 thousand without coaching.[64]

Norma Martinez worked with a coach for several months at the same time she was working with a local real estate agent, who told her that the conditions in the Yakima market "were unfavorable for fix-and-flip and wholesale projects," directly contradicting what the speakers had said at the events she had attended.[65] Many consumers find Zurixx's coaching and other expensive packages unhelpful.[66]

### F. Zurixx's Earnings And Other Material Claims Are False Or Unsubstantiated

### 1. Zurrix's Earnings Claims Are False Or Unsubstantiated

The evidence shows that Zurixx's earnings claims are false or unsubstantiated. First,

---

[62] Ex. 14 at 82:17-25 and 84:8-12.

[63] Ex. 32 at ¶40 (paid $12,000 for the mentorship package); Ex. 33 at ¶¶14-15 (caller offered 18 one-on-one coaching sessions for $25,500); Ex. 35 at ¶24 (during telephone call consumer signed up for one-on-one coaching that cost $10,500); Ex. 38 at ¶¶21-23; Ex. 39 at ¶¶22-23 & Att. N (paid $28,500 for the coaching program); Ex. 46 at ¶¶7-8 (a month after purchasing the Platinum package, Zurixx telemarketer said we really needed a personal coach who would make certain we could find, make offers on, and buy properties. Ms. Vilela paid $25,500 for the coaching package).

[64] Ex. 14 at 110:15-111:5.

[65] Ex. 39 at ¶¶ 26-27.

[66] Ex. 14 at 84:14-85:17 (the Kellers called their coach for help on a flipping project. He told them they needed to get more credit cards and to apply for a home equity loan); Ex. 33 at ¶17 (". . . our coach was a Utah realtor that did not understand the California real estate market. The instructions we received did not work for the California market."); Ex. 34 at ¶¶27, 31-32, and 44 (consumer found the flipping formula was not working for her notwithstanding all the effort she was putting into it); Ex. 46 at ¶8 (consumer paid $25,500 for personal coaching on the promise that the coaches would always be available on weekends. The coaches were not available on weekends and Ms. Vilela was not able to use the coaching package).

consumer testimony shows that consumers who followed the Zurixx System did not attain thousands of dollars in profit; rather, they consistently lost money.[67] Consumers found it difficult to find properties that met the Zurixx flipping formula.[68] Even if they made offers, the offers were rejected because the flipping formula led to offers that were too low.[69]

Second, Zurixx appears to lack substantiation for the success rates of its students, as a Zurixx speaker admitted in a 3-day workshop in Florida.[70]

Third, the FTC has retained the expert services of Teo Nicolais who teaches at the Harvard Extension School. In addition to teaching real estate courses, Mr. Nicolais is a real estate entrepreneur with vast knowledge and experience in real estate investing. Mr. Nicolais opines that Zurixx's flipping formula is likely to lead consumers to underestimate the cost of finding a property,[71] the amount of cash that the consumer should expect to pay when purchasing

---

[67] Ex. 25 at ¶¶17-18 (lost $1,997); Ex. 34 at ¶51 (lost $10,497); Ex. 33 at ¶19 (lost $50,000); Ex. 38 at ¶36 (lost more than $70,000 "because I believed Zurixx and its representatives that they would teach us to make money in real estate investing. They did not"); Ex. 43 at ¶¶33-34 (even after the refund, consumer paid more than $33,000 for training that was not given or was not as promised); Ex. 46 at ¶¶6, 8-10 (consumer paid $53,794 for training, never received a requested refund of $25,500 for coaching program when she learned that the promise that coaches were available on weekends was untrue); Ex. 47 at ¶24 (consumer lost $21,794 after partial refund); Ex. 48 at ¶38 (lost more than $17,000 and credit card debt now with a collections agency).

[68] Ex. 27 at ¶21 (One challenge "was finding properties that would meet the company's formula for calculating the maximum allowable offer.").

[69] Ex. 32 at ¶¶47-48 (Zurixx formula led to offers that were "unrealistically low" and using the formula "resulted in a purchase offer that was too low for the California market."); Ex. 35 at ¶31 (bid was too low); Ex. 44 at ¶26 ("Success Path's formula relies on the assumption that the buyer will place very low bids on the property that he or she is looking to purchase in order to have money left over to cover the costs of rehabbing the property and still make a profit. The problem I encountered was that the maximum amount I could offer for properties in my area were much lower than what other buyers were willing to pay and increasing my bids would not have been profitable.").

[70] Ex. 12 at 256:13-25.

[71] Ex. 17 *Expert Report* at p. 27, Opinion #2.

a property,[72] the holding costs while a property is undergoing repairs,[73] the costs relating to the sale of a residential property,[74] and contingency costs.[75] Underestimating the costs associated with a potential fix and flip leads consumers to the false belief that they will be able to find properties that will allow them to make a 20% profit.[76] Zurixx's flipping formula does not reflect the realities of the market and consumers are unlikely to find properties based on the formula.[77]

Fourth, during the September 2018 workshop in Texas, the Zurixx speaker discussed 11 property transactions to show the supposed profitability of the Zurixx System. Mr. Nicolais compared the gross profits and the gross return on investment ("ROI") for the 11 transactions with market data for the average gross profits and gross ROI on fix and flips for the United States for the period 2013-2018. He used data compiled by ATTOM Data Solutions, a real estate data warehouse that has compiled data on more than 1.1 million flips in the United States.[78] Gross profits and gross ROI compare only the prices at which the property was purchased and sold.[79] These two measures do not take into account any of the repair or other costs the investor

---

[72] Ex. 17 *Expert Report* at p. 33, Opinion #3.

[73] Ex. 17 *Expert Report* at p. 37, Opinion #4.

[74] Ex. 17 *Expert Report* at p. 41, Opinion #5,6.

[75] Ex. 17 *Expert Report* at p. 41, Opinion #7,8.

[76] Mr. Nicolais opines "that by using Investor Profit of 20% ARV in the Zurixx Flipping Formula, Zurixx misleads Participants as to the Investor's Profit a typical Fix and Flipper is likely to achieve on a typical Fix and Flip. In reality, typical Participants are likely to find that the Zurixx Flipping Formula is of little or no value in acquiring properties for flipping…" Ex. 17 *Expert Report* at p. 17, Opinion #13.

[77] Ex. 17 *Expert Report* at p. 17, Opinion #13.

[78] Ex. 17 *Expert Report* at p. 16 n. 13. Zurixx also uses the ATTOM data. Zurixx refers to ATTOM data in a television interview in a March 2017 television interview with Cris Cannon, who was promoting free events in the Phoenix area. Ex. 16 at p. 6.

[79] Ex. 17 *Expert Report* at pp. 16-7.

incurs between the time she purchased and she sold the property.[80] In comparing the Zurixx results with the ATTOM data, the expert opined that by using sample transactions that had significantly above market gross flipping profit and gross ROIs, Zurixx misrepresents the usefulness and value of the flipping formula.[81] Moreover, by using sample transactions that had gross ROIs that were double, triple, or nearly quadruple that of the typical flipping market "Zurixx misrepresents the earnings potential Participants could reasonably expect to achieve using the Zurixx System."[82] In his opinion, "Zurixx lacks any reasonable market-based support for using the figures it did in the [11] Sample Transactions."[83]

Mr. Nicolais opines that the profits associated with the sample transactions do not reflect the profit of a typical fix and flip as shown by the ATTOM data, and hence are likely to be false, misleading, or lack any support in market-based data.[84] With respect to wholesale flips, Mr. Nicolais opines that, because the flipping formula is not grounded in the realities of the flipping market as shown by the ATTOM data, the earnings claims for wholesale flips "are false and misleading."[85] He further opines that "Zurixx misled Participants when it represented that typical Participants could earn an Investor's Profit of 20% of each Fix and Flip's ARV."[86] According to

---

[80] Ex. 17 *Expert Report* at p. 17 (gross flipping profit is the amount from which all expenses, such as holding, repair, and sales costs, must be paid) before the net profit is determined.

[81] Ex. 17 *Expert Report* at p. 55, Opinion #11.

[82] Ex. 17 *Expert Report* at p. 90, Opinion #19.

[83] Ex. 17 *Expert Report* at p. 90, Opinion #18.

[84] Ex. 17 *Expert Report* at p. 80, Opinion #14.

[85] Ex. 17 *Expert Report* at p. 83, Opinion #15.

[86] Ex. 17 *Expert Report* at p. 85, Opinion #17.

the expert, "Zurixx misrepresented the certainty with which typical Participants were likely to achieve the earnings Zurixx claimed" by using the Zurixx System.[87]

Finally, as Mr. Nicolais opines, Zurixx's instructions to consumers to project speculative higher income to credit issuers are misleading.[88] Zurixx knows that most workshop attendees are new to real estate investing. It is unreasonable for Zurixx to represent that novice investors are likely to earn, in their first year, a significant income through fixing and filliping properties.

### 2. Zurixx's 100% Funding Claims Are False Or Unsubstantiated

Consumers report that Zurixx's claim that students will obtain 100% funding for their real estate investing is false.[89] If there is 100% funding, it is only for wholesale deals, not for fix and flips, and even then it is generally available for some but not others.[90]

---

[87] Ex. 17 *Expert Report* at p. 92, Opinion #20.

[88] Ex. 17 *Expert Report* at p. 84, Opinion #16.

[89] Ex. 27 at ¶16 (consumer learned at the workshop that she would not be able to finance house flips by relying strictly on other people's money because "hard money" lenders would only fund 80 percent of a house's purchase price."); Ex. 36 at ¶¶27-28 (USA Money, recommended at the workshop, offered a short-term loan of only $80,000 for a wholesale flip on a house with a selling price of $126,000, and required a $2,500 application fee and a $4,500 backend fee that needed to be paid in full in advance of the wholesale flip before it would provide the short-term loan); Ex. 41 at ¶20 (Mr. Purcell located three properties to fix and flip. Zurixx told him he needed to bring $98,000 of his own money to the transaction); Ex. 48 at ¶35 (loan from source recommended by Zurixx would take 30 days to consider the application; "I was surprised because I had been led to believe at both the free event and at the 3-day workshop that USA Private Money would be able to give us a loan almost immediately.").

[90] Ex. 36 at ¶¶27-28 (only able to get an $80,000 short-term loan for a wholesale transaction on a house with selling price of $126,000; consumer subsequently learned that the amount a consumer qualified for "was based exclusively on our credit scores and had nothing to do with the projected returns of the investment. This information contradicted everything that Alan Swails and other program representatives had told us about the loan application process up to that point."); Ex. 38 at ¶32 (at the free event and all programs the Majewskis attended (3-day Workshop, Fast Start Boot camp, Las Vegas Investor Summit, Inner Circle), the company referred to the 100% percent funding availability, but no funding was ever available to them); Ex. 41 at ¶20; Ex. 42 at ¶18 (consumer applied to a lender recommended at the workshop and learned she would have to pay $30,000-$40,000 for each house. "I was surprised that I would

### 3. Zurixx's "Little Time And Effort" Claims Are False Or Unsubstantiated

Zurixx's claim that little time and effort are needed to be successful in real estate investing with its system is false or unsubstantiated. First, the steps required by the Zurixx System and the calculations required by the Zurixx flipping formula consume far more time and effort than the 5 to 20 hours represented at the free events and workshops. As Zurixx customer Jeannie Keller testified "you cannot do this – I am telling you, you cannot do this business if you work a full-time job and you are the average Joe."[91] Kathy Johnson notified Zurixx that "it took more than 3-5 hours a week to do real estate investing."[92] Second, Mr. Nicolais opines that Zurixx understates the amount of time, money, and effort a reasonably prudent property flipper would be required to spend on the activities involved in Zurixx's System.[93]

### 4. Zurixx's "Learn Everything You Need To Know" Claims Are False Or Unsubstantiated

Zurixx tells free event attendees that they will learn all they need to know at the 3-day workshop to make thousands of dollars in profit through real estate investing. The claim is false or unsubstantiated. First, at 3-day workshop. Zurixx itself states that the workshop is just the beginner course.[94] Second, Zurixx tells workshop attendees that they need to sign up for

---

have to pay anything. During both the free event and the three-day workshop, [the presenters] indicated that the lenders would provide all the necessary funding to purchase the real estate properties, and that I would not have to use my own money.").

[91] Ex. 14 at 49:21-24.

[92] Ex. 34 at ¶47.

[93] Ex. 17 *Expert Report* at p. 27 Opinion #2, and at p. 43 Opinion #9.

[94] Ex. 5 at 156:7 ("So this is the beginner course . . . ."); Ex. 8 at 128:15-16 ("So the only thing about this – this weekend is the beginning course. This is high school"); Ex. 30 at ¶18 ("I could not believe that Advanced Real Estate Education was telling me that I would need to spend tens of thousands of dollars to learn things that I was supposed to learn at the three-day workshop.").

additional training to be successful.[95] Indeed, the purpose of the workshop appears to be to sell advanced packages.[96] Third, consumers testify that the workshop did not teach them everything they needed to know to be successful real estate investors.[97] Fourth, Mr. Nicolais opines that the workshop did not teach participants all they need to know to be successful real estate investors.[98]

### G. Zurixx Has Caused Millions Of Dollars In Unreimbursed Consumer Injury

As of March 2017, more than 70,000 consumers had purchased at least one Zurixx real investing package according to a television interview with defendant Cannon.[99] Even if each consumer purchased only the workshop at $1,997 and no other package, the amount consumers would have paid is $139,790,000. This amount does not include any 2018-19 purchases or any purchases of the advanced packages or other products.

---

[95] Ex. 30 at ¶17 (presenter said "if we really wanted to succeed as real-estate investors, we should purchase an advanced training package); Ex. 38 at ¶8 (according to the speaker, we needed to purchase the advanced training if we wanted to be successful at our new business of real estate investing); Ex. 46 at ¶5; Ex. 47 at ¶10.

[96] Ex. 14 at 50:9-12 and at 57:1-4 (agrees that a primary purpose of the 3-day workshop was to encourage you to buy additional training); Ex. 26 at ¶19 ("Les kept pressuring us to buy one of the three packages even though we repeatedly told Les we did not want any of them."); Ex. 34 at ¶20 ("The real emphasis of the 3-day workshop, however, was to convince us that we needed to buy into the company's "continuing education" program in order to be successful in real estate investing.").

[97] Ex. 25 at ¶11 (main speaker never provided specific information about how to flip houses that consumer had been led to believe "from what had been said at the free event, we would learn"); Ex. 30 at ¶20 (workshop did not teach "all that I needed to know to invest in real estate using other people's money. In fact, I found it to be a complete waste of time and money . . . . "); Ex. 32 at ¶22 ("We were taught very little about real estate investing on the first day."), at ¶24 ("on the second day of training the presenters started to pressure students to purchase additional advanced training"), at ¶28 ("There was not much actual teaching that occurred on the third day."); Ex. 33 at ¶¶10, 13 (much of the information provided at the 3-day workshop and at the Boot camp was not applicable to California).

[98] Ex. 17, Expert Report at p. 47, Opinion #10; p. 96, Opinion #22.

[99] Ex. 16 at 5-6.

## III.    THE ROLE OF THE DEFENDANTS.

### A. The Corporate Defendants

**Zurixx, LLC** is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah.[100] Since at least 2013, Zurixx has sold real estate investment products and services via free live events, paid workshops, and telemarketing under 17 different brand names using a number of celebrities on fix and flip television shows.[101] Zurixx Financial, LLC is a manager and CJ Seminar Holdings, LLC is a member of Zurixx, LLC.[102]

**Zurixx Financial, LLC** is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah.[103] Zurixx Financial is Zurixx, LLC's manager and registered agent.

**Carlson Development Group, LLC ("CDG")** is a Utah limited liability with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah.[104] CDG is Zurixx's Financial's manager and registered agent.[105]

**CJ Seminar Holdings, LLC** ("CJ Seminar") is a Utah limited liability company with its principal place of business at 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah.[106] CJ Seminar is a member of Zurixx, LLC.

---

[100] Ex. 57 at ¶12.

[101] Ex. 51 at ¶¶4-12; Ex. 55 at ¶¶10, 24-25, & 28-30; Ex. 57 at ¶¶30-35, 38 & 39.

[102] Ex. 57 at ¶12.

[103] Ex. 57 at ¶29.

[104] Ex. 57 at ¶20.

[105] Ex. 57 at ¶29.

[106] Ex. 57 at ¶24.

### B. The Corporate Defendants Operate As A Common Enterprise

The corporate defendants operate as common enterprise, sharing a common business purpose of selling real estate investment products and services, common office location, managers, members, employees, and advertising.[107]

### C. The Individual Defendants

**Cristopher A. Cannon ("Cannon")** is identified as Zurixx, LLC's president in the 2019 telemarketing license application that Zurixx filed with the Division.[108] He is also identified as Zurixx, LLC's president on a video posted to Zurixx LLC's YouTube site and in his LinkedIn profile.[109] He is one of the signatories on Zurixx, LLC's Zion First National Bank corporate account.[110] Cannon controls, or has authority to control Zurixx, LLC through his position as a manager of CJ Seminar, which is a member of Zurixx, LLC.[111] Cannon resides in Puerto Rico.[112]

**James M. Carlson ("Carlson")** is identified as Zurixx, LLC's chief executive in the 2019 telemarketing license application that Zurixx filed with the Division.[113] He is also identified as Zurixx, LLC's chief executive on a video posted to Zurixx, LLC's YouTube site, and in his LinkedIn profile.[114] He used that title in a 2018 letter to a consumer.[115] His is also one of the

---

[107] Ex. 57 at ¶¶12, 20, 24, 29, and 37.

[108] Ex. 57 at ¶37.

[109] Ex. 55 at ¶¶37&40.

[110] Ex. 55 at ¶¶35-36.

[111] Ex. 57 at ¶¶12 & 24.

[112] Ex. 57 at ¶36; Ex. 87 at 85.

[113] Ex. 57 at ¶37.

[114] Ex. 55 at ¶¶37 & 39.

[115] Ex. 14 at Att. 15.

signatories on Zurixx LLC's JPMorgan Chase corporate account.[116] Carlson controls, or has

authority to control, Zurixx, LLC through his position as a manager of CDG – a manager of

Zurixx Financial, which is a manager of Zurixx, LLC.[117] Carlson resides in Puerto Rico.[118]

**Jeffrey D. Spangler ("Spangler")** is identified as Zurixx, LLC's president in the 2019

telemarketing license application that Zurixx filed with the Division.[119] He is identified as

Zurixx, LLC's president on a video posted to Zurixx's YouTube site and in his LinkedIn

profile.[120] He is also one of the signatories on Zurixx, LLC's Zion First National Bank corporate

account.[121] Spangler controls, or has authority to control Zurixx, LLC through his position as a

manager of CJ Seminar, which is a member of Zurixx, LLC.[122] He resides in Utah.[123]

## IV.    ARGUMENT

The FTC and the Division seek a TRO halting defendants' ongoing law violations.

Plaintiffs request that the Court order the corporate defendants to preserve assets, appoint a

temporary monitor over the corporate defendants with authority to review company financial and

business records, and approve expenditures that are in the ordinary course of business, allow the

monitor and plaintiffs immediate access to the corporate defendants' business premises and

records, allow plaintiffs and the monitor to engage in expedited discovery, and require

defendants to submit sworn financial disclosures to the monitor and plaintiffs.

---

[116] Ex. 55 at ¶¶31-32 and Att. K.

[117] Ex. 57 at ¶¶12, 20 & 29.

[118] Ex. 57 at ¶36; Ex. 87 at 85.

[119] Ex. 57 at ¶37.

[120] Ex. 55 at ¶¶37&41.

[121] Ex. 55 at ¶¶35-36.

[122] Ex. 57 at ¶¶12 & 24.

[123] Ex. 57 at ¶36; Ex. 87 at 85.

### A. This Court Has the Authority to Grant the Requested Relief

The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. §45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce. The FTC also enforces the CRFA, Section 2(b) of which renders void, and Section 2(c) of which prohibits, the offering of provisions in form contracts that prohibit or restrict individual consumers' ability to communicate reviews, performance assessments, and similar analyses about a seller's goods, services, or conduct. 15 U.S.C. §§45b(a)2) and 45b(b)(1). Section 13(b) of the FTC Act, 15 U.S.C. §53(b), gives the Court authority to issue permanent injunctive relief to enjoin practices that violate any law enforced by the FTC and to grant "any ancillary relief necessary to accomplish complete justice."[124] This ancillary relief may encompass "the full range of equitable remedies," including a TRO, a preliminary injunction, an asset freeze, and any other measures that the Court deems necessary to protect consumers and preserve the possibility for complete and permanent relief.[125] Indeed, when the public interest is involved, the court's equitable powers "assume an even broader and more flexible character."[126] The District of Utah and other district courts in the Tenth Circuit have granted the type of preliminary relief plaintiffs seek

---

[124] *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016); *FTC v. USA Financial, LLC*, 415 F. App'x 970, 976 (11th Cir. 2011); *FTC v. Dalbey*, 2012 U.S. Dist. LEXIS 67393, at 6 (D. Colo. May 15, 2012) (citing *FTC v. Singer*, 668 F.2d 1107, 1113 (9th Cir. 1982)).

[125] *FTC v. LoanPointe, LLC*, 525 F. App'x 696, 699 (10th Cir. 2013); *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *see also FTC v. Skybiz.com, Inc.*, No. 01-CV-396-K(E), 2001 U.S. Dist. LEXIS 26175, at *23 (N.D. Okla. Aug 31, 2001), *aff'd*, 57 F. App'x 374 (10th Cir. 2003) ("Section 13(b) also empowers this Court to grant...*any measures* that may be needed to make permanent relief possible.") (emphasis added).

[126] *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)); *accord Skybiz.com*, 2001 U.S. Dist. LEXIS 26175, at *23-24.

here,[127] including issuing TROs *ex parte*.[128]

    Utah enforces the UCSPA and BODA. The UCSPA authorizes injunctive relief against violators.[129] They are to be construed liberally and consistently with the policies of the FTC Act relating to consumer protection.[130] BODA authorizes the Division to take judicial action against those who violate its provisions.[131]

### B. The Evidence Justifies Granting Plaintiffs' Requested TRO

    To obtain a TRO, the FTC must show "(1) a likelihood of success on the merits; and (2) that a balance of the equities weighs in favor of granting the requested relief."[132] Unlike private

---

[127] *See, e.g., FTC v. Elite IT Partners, Inc.*, No. 2:19-cv-125-RJS (D. Utah February 27, 2019) (unpublished) (*ex parte* TRO with conduct prohibitions, asset freeze, receiver, and financial disclosure requirement); *FTC v. Peterson*, No. 4:18-cv-00049-DN (D. Utah July 10, 2018) (unpublished) (*ex parte* TRO with conduct prohibitions, asset freeze, and financial disclosure requirement); *FTC v. Your Yellow Book, Inc.,* No. 5:14-cv-00786-D (Doc. 10) (W.D. Okla. July 25, 2014) (unpublished) (*ex parte* TRO with conduct prohibitions, asset freeze, and financial disclosure requirement); *Skybiz.com,* No. 01-CV-396-K(E) (Doc. 12) (N.D. Okla. June 6, 2001) (unpublished) (*ex parte* TRO with conduct prohibitions and asset freeze); *cf. FTC v. Vision Solution Mktg. LLC,* No. 2:18-cv-00356-TC (Doc. 41) (D. Utah May 4, 2018) (unpublished) (stipulated TRO with conduct prohibitions, asset freeze, and financial disclosure requirement); *FTC v. LoanPointe, LLC,* No. 2:10-cv-00225-DAK (Doc. 14) (D. Utah Apr. 2, 2010) (unpublished) (stipulated preliminary injunction with conduct prohibitions and financial disclosure requirement).

[128] When it amended the FTC Act in 1994, Congress reemphasized the FTC's authority to seek preliminary injunctive relief *ex parte*: "Section 13 of the FTC Act authorizes the FTC to file suit to enjoin any violation of the FTC [Act]. The FTC can go into court *ex parte* to obtain an order freezing assets, and is also able to obtain consumer redress." S. Rep. No. 130, 103rd Cong., 2d Sess. 15-16, *reprinted in* 1994 U.S.C.C.A.N. 1776, 1790-91.

[129] Utah Code Ann. §13-11-17(1)(b) (2019).

[130] Utah Code Ann. §13-11-2(4) (2019).

[131] Utah Code Ann. §13-15-3(1) and §13-2-5(3) (2019).

[132] *FTC v. Your Yellow Book, Inc.*, No. 5:14-cv-00786-D, 2014 U.S. Dist. LEXIS 116524, at *11 (W.D. Okla. Aug. 21, 2014); *see also Skybiz.com*, 2001 U.S. Dist. LEXIS 26175 at *21-22 (citing *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988)).

litigants, "it is not necessary for the FTC to demonstrate irreparable injury."[133] Here, the FTC

meets the requirements to obtain a TRO because the evidence demonstrates that defendants

violate the law through deceptive marketing.

### 1. Plaintiffs Are Likely To Succeed On The Merits

#### a. *Defendants Violate Section 5(a) Of The FTC Act*

Defendants' false, misleading, or unsubstantiated earnings, funding, time and effort, and

---

[133] *Skybiz.com*, 2001 U.S. Dist. LEXIS 26175 at *21-22 ("As irreparable harm is presumed in a statutory enforcement action, the district court need only find some chance of probable success on the merits.") (citing *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989)). Recently, Judge Shelby held that the government must meet the traditional four prong standard for a preliminary injunction. *U.S. v. Greenwood*, No. 2:19-cv-249, 2019 WL 3717679 at *2 (August 7, 2019) (unpublished). Even assuming the holding from that case, which involved the Controlled Substance Act, applies to plaintiffs seeking a preliminary injunction under a different statute, plaintiffs can easily meet the standard.

1. Plaintiffs have shown they are likely to succeed on the merits of showing that defendants have violated four separate laws.

2. Plaintiffs and consumers will suffer irreparable injury if the Court denies the preliminary injunction. Consumers have paid and are paying thousands of dollars based on material misrepresentations. In the aggregate, consumers have lost millions of dollars. Not only have consumers lost money but they have declared bankruptcy, incurred enormous credit card debt, damaged significantly their credit scores, and are fighting collection efforts. Continued use of the gag clause impedes law enforcement by preventing consumers from conveying information about Zurixx's deceptive sales tactics to regulators. As it is evident that Zurixx wants to prevent the FTC and state Attorneys General from learning about complaints, it is likely that Zurixx will destroy electronic and other documents absent temporary and preliminary relief. Once destroyed, documents cannot be retrieved. Moreover, consumers who abide by the gag clause are prevented from speaking about their interactions with Zurixx. Consumers who are seeking information about Zurixx will not find it.

3. The threatened injury to plaintiffs and consumers outweighs any injury to defendants. Defendants can continue in their business, their assets are not frozen—they just need to stop making misrepresentations and using the gag clause, disclose during live events the limits to their six-month guarantee and refund policies, and comply with the Utah statutes. There can be little harm to defendants to comply with the law.

4. The proposed temporary and preliminary relief serves the public interest in stopping law violations and preserving funds for consumer redress.

learn all you need to know claims violate Section 5(a) of the FTC Act and the UCSPA. Their failure to disclose adequately the material conditions of Zurixx's six-month guarantee and refund policy is also a violation of Section 5(a) of the FTC Act and Section §13-11-4(1) of the USCPA. The gag clause in Zurixx's form settlement agreement violates the CRFA. Defendants' continued sale of the real estate coaching services without registration, and without providing statutorily required disclosures, violates BODA §13-15-4(3) and §13-15-5.

In order to establish liability under Section 5 of the FTC Act, "the FTC must establish that: (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances; and (3) the representation was material."[134] A representation is material if it involves information that is important to consumers and is "likely to affect a consumer's choice of or conduct regarding [the subject of the representation]."[135] Express and deliberate claims are presumed to be material.[136] In establishing that a representation is likely to mislead, the FTC does not need to show that defendants intended to mislead; "[i]nstead, the 'cardinal factor' in determining whether an act or practice is deceptive under Section 5 is the likely effect the promoter's handiwork will have on the mind of the ordinary consumer."[137] Further, "[w]hile proof of actual deception is unnecessary to establish a violation of Section 5,

---

[134] *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003); *see also LoanPointe*, 2011 U.S. Dist. LEXIS 104982, at *9 (D. Utah Sept. 6, 2011) ("an act or practice is deceptive if it involves a material representation or omission that is likely to mislead consumers, acting reasonably under the circumstances, to their detriment.") (internal quotation omitted). .

[135] *LoanPointe*, 2011 U.S. Dist. LEXIS 104982 at *13 (citation omitted); *see also FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) ("A misleading impression created by a solicitation is material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (internal quotation omitted).

[136] *LoanPointe*, 2011 U.S. Dist. LEXIS 104982 at *10 (citation omitted).

[137] *Freecom*, 401 F.3d at 1202.

such proof is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances."[138]

The records shows that Zurixx makes express misrepresentations that are presumed to be misleading. Consumers who attend the free events, workshops, and other Zurixx presentations are vulnerable because they have little or no background in real estate investing.[139] Defendants prey upon consumers' lack of knowledge or understanding of real estate investing or financial concepts to convince them that investing using the Zurixx System is highly profitable[140] and takes little time and effort. Consumer testimony provides strong evidence of deception.

Zurixx's misrepresentations are material.[141] "Misrepresentations concerning anticipated income from a business opportunity generally are material and likely to mislead consumers because such representations strike at the heart of a consumer's purchasing decision."[142] Express

---

[138] *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 633 (6th Cir. 2014) (citation omitted).

[139] *See supra*, n. 1.

[140] Zurixx includes a statement on the first page of a workbook that it "do[es] not sell a business opportunity," and "make[s] no earnings or return on investment claims." On the reverse side of a receipt for its 3-day workshop and advanced package, it includes the statement that the purchaser "acknowledge[s] that the Company's representatives stated that the testimonials shared at Company events are not typical and that my results will vary depending on my time, effort, resources and personal circumstances." Zurixx's deliberate and repeated misrepresentations "are not remedied by the single presence of disclaimers in a contract, especially when aggressive sale tactics are used to rush consumers through the process...." *FTC v. Alliance Documents Preparation*, 296 F. Supp. 3d 1197, 1209 (C.D. Cal. 2017); "A [representation] may be likely to mislead by virtue of the net impression it creates even though the [representation] also contains truthful disclosures." *FTC v. AMG Servs*, 29 F.Supp.3d 1338, 1351 (D. Nev. May 28, 2014) (citing *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)). "In determining the message conveyed by a representation it is the overall net impression that counts. Fine print or ineffective disclaimers do not change the message conveyed if the overall net impression is different." *FTC v. Int'l Computer Concepts, Inc.*, 1995 U.S. Dist. LEXIS 22702, at *7-8 (N.D. Ohio Oct. 24, 1995).

[141] *LoanPointe*, 2011 U.S. Dist. LEXIS 104982 at *10 (citation omitted).

[142] *Freecom*, 401 F.3d at 1203.

and deliberate claims of high profits with little time and effort using other people's money led numerous consumers to pay Zurixx $1,997 and more. Moreover, Zurixx leads consumers to believe its offers are risk-free bargains, failing to disclose adequately key requirements consumers must meet to receive a refund.

###### b. *Defendants Violate The CRFA*

Congress empowered the FTC to enforce the CRFA with respect to agreements in effect on or after December 14, 2017. Zurixx's post-December 2017 form refund agreement with customers has included the language that bars consumers from speaking with the FTC and state attorneys general, as well as posting reviews on the internet and elsewhere. In addition to violating the CRFA, Zurixx's gag clause has also deterred consumers from speaking with the FTC, as reflect in sworn declarations.[143]

###### c. *Defendants Violate The UCSPA*

When Zurixx makes earnings claims without adequate substantiation, it engages in deceptive acts and practices in violation of the UCSPA. In *FTC v. John Beck Amazing Profits,*[144] the FTC sued a company that sold real estate and tax lien coaching services. The court granted summary judgment to the FTC, holding that a seller commits a deceptive act or practice when it tells consumers they can quickly and easily earn back the money they spend on coaching programs when the company lacks substantiation for the claims. Zurixx routinely represents to consumers that they are likely to recoup that cost of its workshops and other products and services. As demonstrated above, such representations are false or unsubstantiated.

---

[143] *See supra* n. 31.

[144] *FTC v. John Beck Amazing Profits, LLC,* 865 F.Supp.2d 1052 (C.D. Cal. 2012).

### d. Defendants Violate BODA

A "business opportunity," also called an "assisted marketing plan," is the sale or lease of goods and services to consumers purportedly to enable them to start a business and derive income.[145] The Utah Legislature saw the potential for consumer abuse and harm in such transactions, and adopted BODA, which requires sellers of assisted marketing plans to: a) file information with the Division; and b) provide certain disclosures to consumers.[146]

Zurixx sells assisted marketing plans, but has failed to file the information required by BODA with the Division. It also does not provide consumers with information and disclosures required by BODA. Most importantly, Zurixx does not disclose the percentage of consumers who have actually made money using Zurixx's System. BODA requires suppliers who make earnings representations to provide a disclosure in not less than 12 point boldface type saying:

<b>CAUTION</b>

**No guarantee of earnings or ranges of earnings can be made. The number of purchasers who have earned through this business an amount in excess of the amount of their initial payment is at least ___which represents ____% of the total number of purchasers of this business opportunity.**[147]

Truthful information about the success of prior Zurixx consumers is critical for consumers spending thousands of dollars on Zurixx's assisted marketing plans. Zurixx impliedly admits as much because much of its presentations describe how much money prior consumers have purportedly made and how much purchasers are likely to make in the future. Zurixx's failure to provide truthful or substantiated information is part and parcel of its deceptive business model. As demonstrated above, Zurixx made representations that trigger BODA. It repeatedly

---

[145] Utah Code Ann. §13-15-2(1) (2019).

[146] Utah Code Ann. §§13-15-4; 13-15-5 (2019).

[147] Utah Code Ann. §13-15-4(5) (2019).

told consumers they would make money, often going so far as to guarantee them a profit. An assisted marketing plan exists if the seller represents that upon payment of more than $500 the seller will provide a sales or marketing program that will enable the purchaser to derive income from the assisted marketing plan that exceeds the price paid.[148] Zurixx routinely told consumers they would make much more than the cost of the training.

Finally, BODA requires a cooling off period – a seller must provide the mandated information at least 10 business days before a purchase.[149] Utah's Legislature determined that 10 days would give consumers a chance to consider adequately their purchase outside of high-pressure sales meetings. Zurixx does not provide this mandated cooling off period. Unless a TRO issues, Zurixx is likely to continue to violate BODA irreparably harming consumers and in contravention of the public interest.

## 2. The Equities Weigh In Favor Of Granting Plaintiffs' Requested Relief

The balance of the equities weighs in favor of the requested relief. "When a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."[150] No entity has a legitimate interest in deceptive marketing, and "there is no oppressive hardship to defendants in requiring them to comply with the FTC Act, refrain from fraudulent representations, or preserve their assets from dissipation or concealment."[151] Where the danger of asset dissipation exists, "the public interest in preserving the illicit proceeds

---

[148] Utah Code Ann. §13-15-2(1)(a)(iv) (2019).

[149] Utah Code Ann. §13-15-5 (2019).

[150] *Skybiz.com*, 2001 U.S. Dist. LEXIS 26175 at *23 (citing *FTC v. Affordable Media, Inc.*, 179 F.3d 1228, 1236 (9th Cir. 1999)). "Balancing the equities tips in favor of the public interest in issuing such relief to federal agencies like the FTC." *Id.* at *22 (citing *World Wide Factors*, 882 F.2d at 347.

[151] *World Wide Factors*, 882 F.2d at 347.

of the [ ] scheme... is great."[152] "[A] court of equity ... has no duty...to protect illegitimate profits or advance business which is conducted by [unlawful] business methods."[153]

### C. An *Ex Parte* TRO With Equitable Relief Is Appropriate And Necessary

The evidence demonstrates that plaintiffs are likely to succeed in proving that defendants have engaged and continue to engage in deceptive practices in violation of the FTC Act, CRFA, UCSPA, and BODA, and that the balance of equities favors entry of a TRO in the public interest. In order to stop defendants' law violations and to preserve the Court's ability to grant meaningful final relief plaintiffs request the Court to enter an *ex parte* TRO that:

(1) prohibits defendants from engaging in conduct that violates the FTC Act, the CRFA, the UCSPA, and BODA;

(2) imposes an asset preservation provision on the corporate defendants that
    (a) allows them to pay customary and usual expenses in the ordinary course of business such as rent, taxes, insurance, payroll, and utilities, subject to the approval by the monitor;
    (b) prohibits the transfer of any funds to the individual defendants;

(3) appoints a temporary monitor with authority to review defendants' financial and business records and approve payment of customary and usual expenses by the corporate defendants, and

(4) grants plaintiffs and the temporary monitor immediate access to defendants' business premises and records, wherever located, and expedited discovery.

### 1. Corporate Asset Preservation Is Warranted And Appropriate

In many cases where the FTC seeks *ex parte* relief, courts grant a complete freeze of defendants' assets, including the assets of the individual defendants.[154] Here, plaintiffs do not

---

[152] *Affordable Media*, 179 F.3d at 1236.

[153] *FTC v. Thomsen-King & Co.*, 109 F.2d 516, 519 (7th Cir. 1940).

[154] *See, e.g.*, *FTC v. Elite IT Partners, Inc.*, No. 2:19-cv-125-RJS (D. Utah February 27, 2019) (unpublished) (*ex parte* TRO with full asset freeze); *FTC v. Peterson*, No. 4:18-cv-00049-DN (D. Utah July 10, 2018) (unpublished) (same); *FTC v. Your Yellow Book, Inc.*, No. 5:14-cv-00786-D

seek to freeze the individual defendants' assets at this time,[155] and seek only an asset preservation as to the corporate defendants, which allows Zurixx to pay ordinary and customary business expenses. The proposed TRO merely requires the corporate defendants to obtain monitor's approval for ordinary expenses that are $25,000 or above. This will maintain the *status quo* and ensure that no corporate funds disappear or are otherwise dissipated, while allowing Zurixx to pay ordinary business expenses such as rent, utilities, taxes, payroll, and insurance that the temporary monitor deems reasonable. During the pendency of the TRO, plaintiffs will seek financial related information from the other defendants and third parties to evaluate whether a more comprehensive asset freeze is warranted.

    To obtain an asset freeze, the FTC must show that it is likely to prevail on the merits.[156]

---

(Doc. 10) (W.D. Okla. July 25, 2014) (unpublished) (same); *Skybiz.com,* No. 01-CV-396-K(E) (Doc. 12) (N.D. Okla. June 6, 2001) (unpublished) (same).

[155] In attempt to keep the confidentiality of this investigation given the serious nature of the conduct at issue, plaintiffs refrained from contacting Zurixx's financial institutions and payment processors. As a result, plaintiffs have no information about the funds that have moved from Zurixx to the individual defendants. Accordingly, the proposed TRO requires financial disclosures from all defendants and seek expedited discovery on this subject. The individual defendants are the officers and leaders of the corporate defendants – closely held companies operating as a common enterprise in executing the scheme at issue. An individual who controls, or participates in, a corporate defendant's unlawful conduct may be held liable for monetary relief if "the individual had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud and intentionally avoided the truth." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). "A corporate officer is presumed to be in control of a small, closely held corporation." *LoanPointe*, 2011 U.S. Dist. LEXIS 104982 at, * 26 (citation omitted) (unpublished); see also *FTC v. AMG Servs.*, 2017 U.S. Dist. LEXIS 66689, at *18 (D. Nev. May 1, 2017) ("An individual's position as a corporate officer or authority to sign documents on behalf of the corporate defendant is sufficient to show requisite control") (internal citation omitted). There is, therefore, a significant likelihood that plaintiff will seek to modify the preliminary asset preservation requirements based on the information obtained in discovery.

[156] "[A]n injunction that maintains the status quo, such as an asset freeze, can be issued upon a 'showing that the probability of [the SEC] prevailing [on the merits] is better than fifty percent.'" *SEC v. Traffic Monsoon, LLC*, 245 F. Supp.3d 1275, 1296 (D. Utah 2017), *aff'd* 913 F.3d 1204 (10th Cir. 2019) (citing *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998)). Moreover, the

In addition, some courts consider the conduct at issue. Where a company's business operations are permeated by fraud, as they are here, courts have found a strong likelihood that assets may be dissipated during the pendency of the case.[157] Courts have also considered whether the amount of frozen assets is sufficient to compensate consumer victims.[158]

Plaintiffs estimate conservatively that defendants have caused consumer injury totaling at least tens of millions of dollars. Moreover, the FTC's experience from prior cases reveals that numerous defendants who were engaged in similarly unlawful practices dissipated assets upon learning of an impending law enforcement action.[159] Under these circumstances, the risk of dissipation is high, and a temporary, limited asset preservation requirement is therefore necessary to preserve the Court's ability to preserve the possibility of meaningful monetary relief.

### 2. A Temporary Monitor Over Zurixx Is Warranted And Appropriate

Plaintiffs request that the Court appoint a temporary monitor over the four corporate defendants pursuant to the Court's equitable powers under Section 13(b) of the FTC Act.[160]

---

court stated, "to the extent that the SEC seeks an asset freeze, proof of likelihood of future violations is not required." *Id.* at 1303.

[157] *See, e.g., SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1106 (2d Cir. 1972) ("Because of the fraudulent nature of appellants' violations, the court could not be assured that appellants would not waste their assets prior to refunding public investors' money").

[158] *See, e.g., FTC v. IAB Mktg. Assocs., LP,* 972 F. Supp. 2d 1307, 1313, n.3 (S.D. Fla. 2013) ("there does not need to be evidence that assets will likely be dissipated in order to impose an asset freeze. The asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement"); *FTC v. World Patent Mktg., Inc.,* No. 17-CV-20848, 2017 U.S. Dist LEXIS 130486, at *56 (S.D. Fla. Aug. 16, 2017) ("Dissipation does not necessarily mean that assets will be spirited away in secret; rather, it means that less money will be available for consumer redress").

[159] *See* Rule 65(b)(1) Certification of Federal Trade Commission Counsel Collot Guerard in Support of Ex Parte Motion For A TRO and Motion To Temporarily Seal Docket and Entire File, filed herewith.

[160] *U.S. Oil & Gas,* 748 F.2d at 1432; *Skybiz.com,* 2011 U.S. Dist. LEXIS 26175, at *23.

Appointment of a temporary monitor is appropriate where, as here, there is "imminent danger of property being lost, injured, diminished in value or squandered, and where legal remedies are inadequate."[161] When corporate defendants have used deception to obtain money from consumers, "it is likely that, in the absence of the appointment of a receiver (or monitor) to maintain the status quo, the corporate assets will be subject to diversion and waste" to the detriment of victims.[162]

Appointment of a temporary monitor is particularly appropriate where it appears, from Zurixx's gag clause, that defendants have taken actions to prevent the FTC and state attorneys general from learning about consumers' experience with Zurixx. A temporary monitor will ensure that assets are not transferred offshore or to the individual defendants, and ensure also that document destructions does not occur by identifying, securing, and controlling the use of the corporate defendants' assets, as well as marshaling and preserving its records. The monitor can also ensure that Zurixx does not continue to engage in the deceptive conduct at issue in this matter. A temporary monitor can assist in determining the extent of the conduct and identify consumers whose refund requests were denied. For these reasons, plaintiffs request the Court to appoint a temporary monitor over the corporate defendants.

---

[161] *Leone Indus. v. Assoc. Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992); *FTC v. Simple Health Plans, LLC,* 379 F.Supp.3d 1346, 1365 (S.D. Fla. May 14, 2019).

[162] *First Fin. Group of TPX*, 645 F.2d at 438; *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963).

### 3. *Ex Parte* TRO, Expedited Discovery, Financial Disclosures, And Immediate Access To Defendants' Business Premises And Records Are Warranted And Appropriate

In order to locate documents and assets related to the deceptive conduct at issue, plaintiffs request the Court to allow plaintiffs and the temporary monitor immediate access to the corporate defendants' premises and records, and expedited discovery. This relief is critical to determine fully: (a) Zurixx's structure, its financial status, and the participants involved in the alleged scheme; (b) the full range and extent of the defendants' alleged law violations; (c) the identities of injured consumers; (d) the total amount of estimated consumer injury; and (e) the nature, extent, and location of defendants' assets.

The requested relief is also necessary to protect against evidence destruction. As explained more fully in the Rule 65(b) Certification of Counsel Collot Guerard ("Guerard Certification"), in the FTC's experience, there is a substantial risk that defendants will take steps to destroy documents that relate to the alleged scheme.[163] The proposed order includes provisions designed to grant access to defendants' documents and business and financial information before they can be destroyed.[164] Courts in this District have granted *ex parte* TROs

---

[163] Fed. R. Civ. P. 65(b) authorizes the Court to issue a TRO *ex parte* if "immediate and irreparable injury, loss, or damage will result" from advance notice to defendants. To further prevent premature notice, plaintiffs have filed concurrently an *Ex Parte* Motion to Temporarily Seal Entire File and Docket. In support of the Plaintiffs' request for an *ex parte* TRO and to temporarily seal this case, FTC counsel has filed concurrently a written Certification.

[164] District courts have broad and flexible authority in equity to depart from routine discovery procedures and applicable time frames, particularly in cases involving the public interest. *See* Fed. R. Civ. P. 26(d), 33(a), 34(b); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). *See also FTC v. Int'l Computer Concepts, Inc.*, 1994 WL 730144, at *16 (N.D. Ohio Oct. 24, 1994) ("Where, as in this case, business operations are permeated by fraud, there is a strong likelihood that assets may be dissipated during the pendency of the legal proceedings.... Without an immediate freeze of assets, it is unlikely that funds will be available to satisfy any final order....") (internal citation omitted).

that include these provisions.[165] Accordingly, plaintiffs request the Court to allow them and the temporary monitor immediate access and authorizing limited expedited discovery.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant the requested *ex parte* TRO.

September 30, 2019

Respectfully submitted,

COLLOT GUÉRARD
JOSHUA DOAN
MIRY KIM
(Each appearing pursuant to DUCivR 83-1.1(d)(1))
600 Pennsylvania Ave., NW., CC-8528
Washington, D.C. 20580
cguerard@ftc.gov  Telephone: (202) 326-3338
jdoan@ftc.gov  Telephone:  (202) 326 3187
mkim@ftc.gov  Telephone:  (202) 326-3622
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

THOMAS M. MELTON (4999)
ROBERT G. WING (4445)
DOUGLAS DEVORE (11170)
KEVIN MCLEAN (16101)
Assistant Attorneys General
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
Telephone: 801-366-0310
tmelton@agutah.gov
rwing@agutah.gov
dedevore@agutah.gov
kmclean@agutah.gov
Attorneys for Plaintiff
UTAH DIVISION OF CONSUMER PROTECTION

---

[165] *See supra* note 27.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>UTAH DIVISION OF CONSUMER PROTECTION,<br><br>Plaintiffs,<br><br>vs.<br><br>ZURIXX, LLC, a Utah limited liability company,<br><br>CARLSON DEVELOPMENT GROUP, LLC, a Utah limited liability company,<br><br>CJ SEMINAR HOLDINGS, LLC, a Utah limited liability company,<br><br>ZURIXX FINANCIAL, LLC, a Utah limited liability company,<br><br>CRISTOPHER A. CANNON, individually and as an officer of ZURIXX, LLC,<br><br>JAMES M. CARLSON, individually and as an officer of ZURIXX, LLC, and<br><br>JEFFREY D. SPANGLER, individually and as an officer of ZURIXX, LLC<br><br>Defendants. | Case Number :<br><br>**FILED UNDER SEAL PURSUANT TO COURT ORDER (DOCKET NO. _____)**<br><br>**[Proposed]** *EX PARTE* **TEMPORARY RESTRAINING ORDER WITH ASSET PRESERVATION, APPOINTMENT OF A TEMPORARY MONITOR OVER CORPORATE DEFENDANTS, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

Plaintiffs, the Federal Trade Commission ("FTC") and the Utah Division of Consumer

Protection ("Division"), have filed their Complaint for Permanent Injunction and Other Equitable

Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §

53(b), the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b, the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code § 13-11-1 *et seq.*, and the Business Opportunity Disclosure Act ("BODA"), Utah Code § 13-15-1 *et seq.*, and have moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order that includes asset preservation, appointment of a temporary monitor over Defendants Zurixx, LLC, Carlson Development Group, LLC, CJ Seminar Holdings, LLC, and Zurixx Financial, LLC ("Corporate Defendants"), other equitable relief, and an order to show cause why a preliminary injunction should not issue against all Defendants.

## FINDINGS OF FACT

The Court, having considered Plaintiffs' Complaint, *ex parte* Motion for a Temporary Restraining Order, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.      In numerous instances, Defendants, in marketing and selling real estate-related investing products and services ("Defendants' Products"), have falsely represented that by purchasing Defendants' Products, consumers will likely earn thousands of dollars in profit, spend little time and effort to earn thousands of dollars in profit, have access to 100% funding for their real estate investments, or learn all they need to know to make thousands of dollars in profit through real estate investing at the 3-day workshop. Additionally, Defendants have failed to disclose, or to disclose adequately, to consumers material aspects of their refund policy. Defendants also use form agreements that bar or restrict impermissibly the ability of consumers

who purchase Defendants' Products from engaging in reviews, performance assessments, and similar analyses of Defendants and Defendants' Products.

C.     Defendants, in marketing and selling Defendants' Products, for a price exceeding $500, and for the purpose of enabling purchasers to start a business, have represented that Defendants' Products would enable purchasers to generate income exceeding the price paid for the products.  Defendants have been operating in Utah since at least 2013, but have never filed the information and documents required to be filed annually with the Division under BODA. BODA requires them to file a complete statement of oral, written, or visual representations that would be made to prospective purchasers about specific levels of potential sales, income, gross and net profits, or any other representations that would have suggested the same.

D.     Defendants' earnings representations were not followed, as required by BODA, by a warning to purchasers that: Defendants could not guarantee earnings or ranges of earning; identifying the number of purchasers who had earned an amount in excess of the amount of their payment; and clarifying what percentage of total purchasers had earned an amount in excess of the amount of their payment.  In addition to depriving the Division of information about Defendants and their operations, Defendants likewise have not provided this information to purchasers in a single disclosure statement or prospectus, accompanied by a mandatory cover sheet, at least ten business days prior to the purchase.

E.     There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Consumer Review Fairness Act, 15 U.S.C. §§ 45b, the UCSPA, Utah Code § 13-11-1 *et seq.*,

3

and BODA, Utah Code § 13-15-1 *et seq.*, and that the FTC and the Division are likely to prevail on the merits of this action.

      F.     As demonstrated by the declarations of consumers, investigator declarations, transcripts of undercover recordings, public records, a report by the Plaintiffs' expert Teo Nicolais, and additional evidence contained in the volumes of exhibits filed by Plaintiffs in support of their *ex parte* Motion for Temporary Restraining Order, Plaintiffs have established a likelihood of success in showing that Defendants have: (1) made false or unsubstantiated earnings claims regarding the products they market and sell to consumers; (2) misrepresented that little time and effort is required to earn thousands of dollars in profit using their system, that consumers will have access to 100% funding for their real estate investments regardless of their credit history, and that consumers who attend Defendants' 3-day workshop will learn all they need to know about real estate investing; (3) failed to disclose, or disclose adequately, material terms of their refund policy; (4) used form contract provisions that restrict impermissibly consumers' ability to review and share information about Defendants and Defendants' Products; (5) failed to annually file information with the Division required to be filed under BODA; and (6) failed to provide a disclosure statement or prospectus to any prospective purchaser at least ten business days prior to a purchase, as required by BODA.

      G.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, CRFA, UCSPA, and BODA unless Defendants are restrained and enjoined by order of this Court.

      H.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers — including monetary restitution,

rescission, disgorgement, or refunds – will occur from the sale, transfer, destruction, or other

disposition or concealment by Defendants of assets or records, unless Defendants are

immediately restrained and enjoined by order of this Court; and that, in accordance, with Fed. R.

Civ. P. 65(b), the interests of justice require that this Order be granted without prior notice to

Defendants. Thus, there is good cause for relieving the Plaintiffs of the duty to provide

Defendants with prior notice of Plaintiffs' *ex parte* Motion for a Temporary Restraining Order.

I.      Good cause exists for appointing a temporary monitor over the Corporate

Defendants, preserving Corporate Defendants' assets, permitting Plaintiffs and the temporary

monitor immediate access to the Defendants' business premises and records, and permitting

Plaintiffs and the temporary monitor to engage in expedited discovery.

J.      Weighing the equities and considering Plaintiffs' likelihood of ultimate success

on the merits, a temporary restraining order with asset preservation, the appointment of a

temporary monitor, immediate access to business premises and records, limited expedited

discovery, and other equitable relief is in the public interest.

K.      This Court has authority to issue this Order pursuant to Section 13(b) of the FTC

Act, 15 U.S.C. § 53(b), Federal Rule of Civil Procedure 65, the All Writs Act, 28 U.S.C. § 1651,

Utah Code §§ 13-11-17(1)(b); 13-11-2(4); 13-15-3(1); and 13-2-5(3).

L.      No security is required of any agency of the United States for issuance of a

temporary restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

A.      "**Asset**" means any legal or equitable interest in, right to, or claim to, any

property, wherever located and by whomever held.

B.    **"Corporate Defendants"** means Zurixx, LLC, Carlson Development Group, LLC, CJ Seminar Holdings, LLC, and Zurixx Financial, LLC, and each of their subsidiaries, affiliates, successors, and assigns.

C.    **"Covered Communication"** means a written, oral, or pictorial review, performance assessment, or other similar analysis of goods or services, including conduct related to the goods or services.

D.    **"Defendants"** means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination.

E.    **"Defendants Products"** means any real estate-related investing products and services marketed and sold by any Defendant.

F.    **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

G. **"Earnings Claim"** means any representation, specific or general, about income, revenues, financial gains, percentage gains, profit, net profit, gross profit, or return on investment.

H. **"Electronic Data Host"** means any Person in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

I. **"Individual Defendants"** means Cristopher A. Cannon, James M. Carlson, Jeffrey D. Spangler, individually, collectively, or in any combination.

J. **"Monitor"** means the temporary monitor appointed in Section X of this Order and any deputy monitors that shall be named by the temporary monitor.

K. **"Monitored Entities"** means Corporate Defendants and any other entity that has conducted any business related to the marketing or sale of Defendants' Products, including receipt of Assets derived from any activity that is subject of the Complaint in this matter, and that the Monitor determines is controlled or owned by any Defendant.

L. **"Person"** means any natural person or any entity, corporation, partnership, or association of persons.

M. **"Review-Limiting Contract Term"** means a standardized contract term that: prohibits or restricts the ability of a person who is a party to the contract to engage in a Covered Communication; imposes a penalty or fee against a person who is a party to the contract for engaging in a Covered Communication; or transfers, or requires a person who is a party to the contract to transfer, to any other person any intellectual property rights in a Covered

7

Communication, with the exception of a non-exclusive license to lawfully use a Covered Communication about a Defendant's goods or services.

## ORDER

### I.        PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are temporarily restrained and enjoined from:

A.        Making any Earnings Claim, unless the Earnings Claim is truthful and not misleading, and, at the time such claim is made, Defendants: (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claim; and (3) make the written substantiation available upon request to the consumer, potential purchaser or investor, the Monitor, and Plaintiffs;

B.        Misrepresenting or assisting others in misrepresenting, expressly or by implication, that:

1.   Consumers who purchase any of Defendants' Products will receive 100% funding to do real estate deals regardless of their credit;

2.   Defendants' Products allow consumers to make thousands of dollars in profit through real estate investing with little time and effort;

3.   Consumers will learn everything they need to know at Defendants' 3-day workshops to make thousands of dollars in profit through real estate investing;

8

C.     Misrepresenting or assisting others in misrepresenting, expressly or by implication, any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics;

D.     Failing to disclose, or disclose adequately, to consumers material aspects of Defendants' refund policy; and

E.     Offering Defendants' Products for sale without complying with BODA, including filing required information annually with the Division, providing a disclosure statement or prospectus to any prospective purchaser at least 10 business days prior to a purchase, and providing the required warning to purchasers following an earnings representation that: Defendants cannot guarantee earnings or ranges of earning; identifying the number of purchasers who had earned an amount in excess of the amount of their payment; and clarifying what percentage of total purchasers had earned an amount in excess of the amount of their payment.

## II.     INJUNCTION AGAINST SUPPRESSING COVERED COMMUNICATIONS THROUGH CONTRACT TERMS

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are temporarily restrained and enjoined from offering, attempting to enforce, or asserting the validity of, any Review-Limiting Contract Term.

Provided, however, that nothing in this Section shall: require a Defendant to publish or host the content of any person; affect any other legal duty of a party to a contract; or affect any cause of action arising from the breach of such duty.

### III.     <u>PROHIBITION ON RELEASE OF CUSTOMER INFORMATION</u>

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.     Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with the practices charged in the Complaint or Defendants' Products; and

B.     Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with the practices charged in the Complaint or Defendants' Products.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## IV.   PRESERVATION OF RECORDS AND ASSETS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.   Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly any business record, including a record from a personal account used for business purposes, including Documents that relate to: (1) Defendants' Products, business practices, marketing, Assets, or finances of any Defendant; (2) the real estate investment-related business practices or finances of entities directly or indirectly under the control of any Defendant; or

B.   Disbursing, spending, liquidating, or assigning any Corporate Defendant's Assets in the amount of $25,000 or greater, in any manner, directly or indirectly, without the Monitor's advance approval.

      1.   Each Corporate Defendant may make the following payments without Monitor approval for the following purposes, and only for those obligations due during the pendency of this Order, as long as the total amount spent is less than $25,000;

      2.   Payments of reasonable and customary expenses to fulfill contractual obligations to third parties other than the Individual Defendants;

      3.   Payments to fulfill federal, state, and local tax obligations;

4.    Payments to employees that are reasonable and customary – other than the

directors, owners, officers, or Individual Defendants – as required under

the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, or other state laws;

and

C.    Failing to create and maintain Documents that, in reasonable detail, accurately,

fairly, and completely reflect Corporate Defendants' revenues, disbursements, transactions, and

use of Corporate Defendants' Assets.

## V.    DUTIES OF ASSET HOLDERS OF CORPORATE DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic

Data Host, credit card processor, payment processor, merchant bank, acquiring bank,

independent sales organization, third party processor, payment gateway, insurance company,

business entity, or Person who receives actual notice of this Order (by service or otherwise) that:

(a)    has held, controlled, or maintained custody, through an account or otherwise, of any

Document on behalf of any Corporate Defendant or any Asset that has been: owned or

controlled, directly or indirectly, by any Corporate Defendant; held, in part or in whole,

for the benefit of any Corporate Defendant; in the actual or constructive possession of

any Corporate Defendant; or owned or controlled by, in the actual or constructive

possession of, or otherwise held for the benefit of, any corporation, partnership, asset

protection trust, or other entity that is directly or indirectly owned, managed or controlled

by any Corporate Defendant;

(b)    has held, controlled, or maintained custody, through an account or otherwise, of any

Document or Asset associated with credits, debits, or charges made on behalf of any

12

Corporate Defendant, including reserve funds held by payment processors, credit card

processors, merchant banks, acquiring banks, independent sales organizations, third party

processors, payment gateways, insurance companies, or other entities; or

(c)     has extended credit to any Corporate Defendant, including through a credit card account,

shall:

A.     Provide Plaintiffs' counsel and the Monitor, within three (3) business days of

receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered

by this Section:

1.     The identification number of each such account or Asset;

2.     The balance of each such account, or a description of the nature and value

of each such Asset as of the close of business on the day on which this Order is

served, and, if the account or other Asset has been closed or removed, the date

closed or removed, the total funds removed in order to close the account, and the

name of the Person to whom such account or other Asset was remitted;

3.     The identification of any safe deposit box, commercial mail box, or

storage facility that is either titled in the name, individually or jointly, of any

Corporate Defendant, or is otherwise subject to access by any Corporate

Defendant; and

B.     Upon the request of Plaintiffs' counsel or the Monitor, promptly provide

Plaintiffs' counsel and the Monitor with copies of all records or other Documents pertaining to

each account or Asset covered by this Section, including originals or copies of account

applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and

from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

## VI.  **FINANCIAL DISCLOSURES**

**IT IS FURTHER ORDERED** that each Defendant, within three (3) business days of service of this Order upon them, shall prepare and deliver to Plaintiffs' counsel and the Monitor:

A.  Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.  Completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Corporate Defendant.

## VII.  **FOREIGN ASSET ACCOUNTING**

**IT IS FURTHER ORDERED** that within three (3) business days following the service of this Order, each Defendant shall:

A.  Provide Plaintiffs' counsel and the Monitor with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Take all steps necessary to provide Plaintiffs' counsel and the Monitor with access to all Documents and records relating to the Corporate Defendants that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment D**;

## VIII.   CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiffs' counsel and the Monitor may obtain credit reports concerning any Corporate Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs' counsel.

## IX.   REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiffs' counsel and the Monitor with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## X. APPOINTMENT OF TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that _____ is appointed as temporary monitor for the Monitored Entities and any of their affiliates, subsidiaries, successors, and assigns, wherever located. The Monitor shall be solely the agent of this Court in acting as Monitor under this Order. The Monitor shall be accountable directly to this Court.

## XI. DUTIES AND AUTHORITY OF THE TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that the Monitor shall have the following duties and authority:

A.    Monitor the Monitored Entities' compliance with this Order by identifying and reviewing their marketing materials, live events, recordings of live events, telephone calls (both live and recorded), call logs, call detail records, reports, or other Documents that reflect Monitored Entities' marketing, advertising, promotion, distribution, offer for sale, sale or fulfillment of their real estate investing products;

B.    Identify and review the Monitored Entities' records and financial transactions, including bank records, as they relate to the practices charged in the Complaint or Defendants' Products and ensure that all such related documents are preserved;

C.    Identify and inventory all Assets of the Monitored Entities, including but not limited to:

        1.    Conducting an accounting of the Monitored Entities' Assets; and

        2.    Opening and inventorying any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Monitored Entity, either individually or jointly, or subject to access by any Monitored Entity;

16

D.   Review and authorize, any Monitored Entities' request to:

  1.   Incur reasonable charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Monitored Entity or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Monitored Entity or of which any Monitored Entity is an Officer, Director, Member, or Manager, including but not limited to corporate bank cards or corporate credit card accounts for which any Defendant is, or was on the date that this Order was signed, an authorized signor;

  2.   Make reasonable payments to fulfill contractual obligations to third parties other than the Individual Defendants;

  3.   Make payments to fulfill federal, state, and local tax obligations; and

  4.   Make reasonable and customary payments to the Monitored Entities' employees – other than the directors, owners, officers, or the Individual Defendants – as required under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, or other state laws; pursuant to Section IV;

Provided, however, that this Section does not prohibit any Corporate Defendant from making any payments authorized by Section IV.B.

E.   Maintain accurate records of all receipts and expenditures of the Monitored Entities;

F.   Maintain accurate records of all receipts and expenditures incurred as Monitor;

17

G.      The Monitor shall have immediate, unfettered access to all information or

Documents the Monitor deems necessary to carry out the Monitor's duties pursuant to this Order,

to the same extent as the Monitored Entities, themselves, are allowed by right, contract, or

practice including, but not limited to:

1.      Access to all Documents pertaining to the Monitored Entities' business

activities and finances related to the practices charged in the Complaint or

Defendants' Products wherever located and in whomever's custody or

control;

2.      Access to all property or premises in possession of, owned by, or under

the control of the Monitored Entities related to the practices charged in the

Complaint or Defendants' Products, wherever located;

3.      The right to interview any current or former employee, independent

contractor, principal, owner, manager or member of the Monitored

Entities, including Individual Defendants, to obtain and copy pertinent

information including, but not limited to, the name, home address, Social

Security number, job description, company history, passwords or access

codes, method of compensation, and all accrued and unpaid commissions

and compensation of each such employee;

4.      The right to interview any Monitored Entity's current or former officer,

manager, independent contractor, subcontractor, financial institution,

vendor, telecommunications provider, agent, service bureau, or other

entity involved in the provision of any services from, to, or on behalf of the Monitored Entities, including Individual Defendants;

5.      Access to all Documents of any officer, manager, independent contractor, employee, or agent of any Monitored Entity pertaining to the Monitored Entities' business activities and finances related to the practices charged in the Complaint or Defendants' Products;

6.      The right to copy or image all Documents that the Monitor deems necessary to carry out the Monitor's duties pursuant to this Order, including any documents in the custody, or control of Individual Defendants; and

7.      The right to issue subpoenas to obtain Documents and records pertaining to the Monitored Entities, and conduct discovery in this action that the Monitor deems necessary to carry out the Monitor's duties pursuant to this Order; and

H.      The Monitor is authorized to choose, engage, and employ attorneys, investigators, accountants, appraisers, and other independent contractors and technical specialists, as the Monitor deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order. The Monitor is also authorized to obtain the assistance of the U.S. Marshal's office and other federal, state, and local law enforcement officers as the Monitor deems necessary to fulfill the duties set forth in this Section. If requested by the Monitor, the United States Marshal shall provide, and state or local law enforcement may provide, appropriate

and necessary assistance to the Monitor to implement this Order and is authorized to use any necessary and reasonable force to do so.

## XII.   REPORTING BY THE MONITOR

**IT IS FURTHER ORDERED** that, prior to the preliminary injunction show cause hearing set by Section XXII of this Order, the Monitor is directed to report to this Court on the Monitor's findings, including:

A.   The Monitored Entities' compliance with this Order;

B.   An accounting of the Monitored Entities' financial transactions as they relate to the practices charged in the Complaint or Defendants' Products;

C.   A description of the Monitored Entities' corporate structures including all parents, subsidiaries (whether wholly or partially owned), divisions (whether incorporated or not), affiliates, branches, charters, joint ventures, partnerships, franchises, operations under assumed names, and all ownership interests of the Monitored Entities.

## XIII.   PROVISION OF INFORMATION TO MONITOR

**IT IS FURTHER ORDERED** that Defendants shall provide to the Monitor, immediately upon request, without need of any subpoena or further order, the following:

A.   A list of all Assets and accounts of the Monitored Entities, including Assets of the Monitored Entities that are held in any name other than the name of a Monitored Entity, or by any Person other than a Monitored Entity;

B.   A list of all Assets and Documents belonging to other Persons whose interests are under the direction, custody, or control, or in the possession, of the Monitored Entities;

C.     A list of all locations where Documents of the Monitored Entities are located, and the means to access such Documents within five (5) hours of the Monitor's request;

D.     Access to all Documents of the Monitored Entities including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents and other papers that relate to the practices charged in the Complaint or Defendants' Products;

E.     Access to all computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account), electronic file in any medium, or other data in whatever form used to conduct the business of the Monitored Entities;

F.     Copies of all keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of the Monitored Entities including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

G.     A list of all agents, employees, independent contractors, officers, attorneys, servants, and those Persons in active concert and participation with the Monitored Entities, or who have been associated or done business with the Monitored Entities since January 1, 2013.

## XIV.   COOPERATION WITH THE MONITOR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, all other Persons in active concert or participation with any of them, and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the

Monitor. This cooperation and assistance shall include, but is not limited to, providing information to the Monitor that the Monitor deems necessary to exercise the authority and discharge the responsibilities of the Monitor under this Order; providing any keys, codes, user names, and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; informing the Monitor of all Persons who owe money to any Monitored Entity; transferring funds at the Monitor's direction; and producing Documents related to the Assets and sales and refunds of the Monitored Entities.

## XV.  NON-INTERFERENCE WITH THE MONITOR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order; and any other Person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.      Interfering with the Monitor's efforts to inventory or review the Assets or Documents of the Monitored Entities;

B.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Monitored Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Monitored Entities except as provided in Section IV;

D.     Refusing to cooperate with the Monitor or the Monitor's duly authorized agents in the exercise of their duties or authority under any order of this Court; and

E.     Failing to provide any assistance or information requested by the Monitor in connection with the performance of the Monitor's duties under this Order.

## XVI.   COMPENSATION OF MONITOR

**IT IS FURTHER ORDERED** that the Monitor and all personnel hired by the Monitor, as herein authorized, including counsel to the Monitor and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Monitored Entities.  The Monitor shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVII.   IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.     To ensure the preservation of Assets and evidence relevant to this action, Plaintiffs and the Monitor, and their representatives, agents, contractors, and assistants, shall have immediate access to the business premises, records, and storage facilities, owned, controlled, or used by the Monitored Entities.  Such locations include, but are not limited to, 2750 East Cottonwood Parkway, Suite 200, Cottonwood Heights, Utah 84121, and any offsite location or commercial mailbox used by the Monitored Entities;

B.     Plaintiffs and the Monitor, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Monitored Entities' premises in order that they may be inspected, inventoried, and copied.  Plaintiffs shall return any removed materials to the Monitor within five (5) business days of completing inventorying and copying, or such time as is agreed upon by Plaintiffs and the Monitor;

C.     Plaintiffs' and the Monitor's access to the Monitored Entities' Documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for Documents or other discovery served by Plaintiffs or the Monitor;

D.     Plaintiffs and the Monitor, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state, and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

E.     If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Monitored Entities are at a location other than that listed above, including personal residence(s) of any Individual Defendant, then, immediately upon receiving notice of this Order, Individual Defendants and Monitored Entities shall produce to the Monitor all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access.  In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

24

F.     If any communications or records of any Monitored Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this Order, provide the Monitor with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third-party to attempt to access, the communications or records.

## XVIII.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiffs and the Monitor with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone numbers, and email addresses of each such Person who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other Persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XIX.  EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiffs and the Monitor are granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of

Defendants' Assets; (2) the nature, location, and extent of Corporate Defendants' business transactions and operations; (3) Documents reflecting Corporate Defendants' business transactions and operations; (4) control of the Corporate Defendants; (5) information related to Individual Defendants' role in Corporate Defendants' business transactions and operations; and (6) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A.    Plaintiffs and the Monitor may take the deposition of parties and non-parties. Forty-eight (48) hours' notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual or corporation shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A), and depositions may be taken by telephone or other remote electronic means;

B.    Plaintiffs and the Monitor may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) calendar days of service, provided, however, that three (3) calendar days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format;

C.    Plaintiffs and the Monitor may serve upon parties interrogatories that require response within five (5) calendar days after service of the interrogatories. Any interrogatories served pursuant to this Section shall be not counted toward the interrogatory limit set forth in Rule 33(a)(1);

D.    Plaintiffs and the Monitor may serve subpoenas upon non-parties that direct production or inspection within five calendar (5) days of service;

E.    Service of discovery upon any Defendant or non-party taken pursuant to this Section, shall be sufficient if made by email, or by personal or overnight delivery;

F.    Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure; and

G.    The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XX.    **SERVICE OF THIS ORDER**

**IT IS FURTHER ORDERED** that copies of this Order as well as the *Ex Parte* Motion for Temporary Restraining Order, and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion (other than the Complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant or any Person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Corporate Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section,

service upon any branch, subsidiary, affiliate, or office of any entity shall effect service upon the

entire entity.

## XXI.   CORRESPONDENCE AND SERVICE ON PLAINTIFFS

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence

and service of pleadings on Plaintiffs shall be addressed to:

> Collot Guerard
> Josh Doan
> Miry Kim
> FEDERAL TRADE COMMISSION
> 600 Pennsylvania Ave., N.W., CC-8528
> Washington, DC  20580
> cguerard@ftc.gov
> jdoan@ftc.gov
> mkim@ftc.gov
>
> Thomas M. Melton
> Robert G. Wing
> Kevin Mclean
> Assistant Attorneys General
> Attorneys for Plaintiff Utah Division of Consumer Protection
> UTAH ATTORNEY GENERAL'S OFFICE
> 160 East 300 South, Fifth Floor
> Salt Lake City, Utah 84114
> tmelton@agutah.gov
> rwing@agutah.gov
> kmclean@agutah.gov

## XXII.  PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall

appear before this Court on the _____ day of _____, 2019, at _____, to

show cause, if there is any, why this Court should not enter a preliminary injunction, pending

final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in

the Complaint, continuing the preservation of Corporate Defendants' Assets, continuing the

appointment of the Monitor, and imposing such additional relief as may be appropriate.

## XXIII. BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that:

A.     Defendants shall file with the Court and serve on Plaintiffs' counsel any

answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no

later than four (4) calendar days prior to the order to show cause hearing set by Section XXII of

this Order.  Plaintiffs may file responsive or supplemental pleadings, materials, affidavits, or

memoranda with the Court and serve the same on counsel for Defendants no later than one (1)

calendar day prior to the order to show cause hearing.

Provided that such affidavits, pleadings, motions, expert reports, declarations, legal

memoranda, or oppositions must be served by personal or overnight delivery, or by email, and be

received by the other party or parties no later than 5:00 p.m. Mountain Time on the appropriate

dates set forth in this Section; and

B.     An evidentiary hearing on Plaintiffs' request for a preliminary injunction is not

necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that

raises a genuine and material factual issue.  The question of whether this Court should enter a

preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda

filed by, and oral argument of, the parties.  Live testimony shall be heard only on further order of

this Court.  Any motion to permit such testimony shall be filed with the Court and served on

counsel for the other parties at least five (5) calendar days prior to the order to show cause

hearing.  Such motion shall set forth the name, address, and telephone number of each proposed

witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court. Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least three (3) calendar days prior to the order to show cause hearing.

Provided, however, that service shall be performed by personal or overnight delivery, or by email, and Documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. Mountain Time on the appropriate dates provided in this Section.

## XXIV.  DURATION OF THE ORDER

**IT IS FURTHER ORDERED** that this Order shall expire fourteen (14) days from the date of entry noted below, unless within such time, the Order is extended for an additional period pursuant to Fed. R. Civ. P. 65(b)(2).

## XXV.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this _____ day of _____, 2019, at _____.m.


_____
UNITED STATES DISTRICT JUDGE

# ATTACHMENT A

## FEDERAL TRADE COMMISSION

### FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT

**Definitions and Instructions:**

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you. If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1. Information About You

| Full Name | Social Security No. | |
|---|---|---|

Current Address of Primary Residence

Driver's License No.    State Issued

Phone Numbers
Home: (      )
Fax:    (      )

Date of Birth:      /    /
(mm/dd/yyyy)
Place of Birth

☐Rent ☐Own       From (Date):    /    /
(mm/dd/yyyy)

E-Mail Address

Internet Home Page

**Previous Addresses for past five years** (if required, use additional pages at end of form)

Address

From:    /    /
(mm/dd/yyyy)      Until:    /    /
(mm/dd/yyyy)

☐Rent ☐Own

Address

From:    /    /      Until:    /    /

☐Rent ☐Own

Address

From:    /    /      Until:    /    /

☐Rent ☐Own

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

### Item 2. Information About Your Spouse or Live-In Companion

Spouse/Companion's Name

Social Security No.

Date of Birth
    /    /
(mm/dd/yyyy)

Address (if different from yours)

Phone Number
(      )

Place of Birth

☐Rent ☐Own       From (Date):    /    /
(mm/dd/yyyy)

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

Employer's Name and Address

Job Title

Years in Present Job

Annual Gross Salary/Wages
$

### Item 3. Information About Your Previous Spouse

Name and Address

Social Security No.

Date of Birth
    /    /
(mm/dd/yyyy)

### Item 4. Contact Information (name and address of closest living relative other than your spouse)

Name and Address

Phone Number
(      )

Initials: _____

## Item 5. Information About Dependents (whether or not they reside with you)

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |

| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |

## Item 6. Employment Information/Employment Income

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, distributions, dividends, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (*e.g.*, health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | | | Year | Income |
| | From (Month/Year) / | To (Month/Year) / | 20 | $ |
| Ownership Interest? ☐ Yes ☐ No | | | | $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | | | Year | Income |
| | From (Month/Year) / | To (Month/Year) / | 20 | $ |
| Ownership Interest? ☐ Yes ☐ No | | | | $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | | | Year | Income |
| | From (Month/Year) / | To (Month/Year) / | 20 | $ |
| Ownership Interest? ☐ Yes ☐ No | | | | $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |
| | / | / | | $ |

Initials: _____

### Item 7.  Pending Lawsuits Filed By or Against You or Your Spouse

List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory.  **Note:**  At Item 12, list lawsuits that resulted in final judgments or settlements in your favor.  At Item 21, list lawsuits that resulted in final judgments or settlements against you.

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

### Item 8.  Safe Deposit Boxes

List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Initials: _____

## FINANCIAL INFORMATION

**REMINDER:** When an item asks for information regarding your "assets" and "liabilities" include <u>ALL</u> assets and liabilities, located within the United States or in any foreign country or territory, or institution, whether held individually or jointly, and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. In addition, provide all documents requested in Item 24 with your completed Financial Statement.

### ASSETS

### Item 9.  Cash, Bank, and Money Market Accounts

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit.  The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

a.  Amount of Cash on Hand  $ | Form of Cash on Hand

| b.  Name on Account | Name & Address of Financial Institution | Account No. | Current Balance |
|---|---|---|---|
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |

### Item 10.  Publicly Traded Securities

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds.  Also list any U.S. savings bonds.

| Owner of Security | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|
| Broker House, Address | Broker Account No. | | |
| | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | Broker Account No. | | |
| | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | Broker Account No. | | |
| | Current Fair Market Value $ | Loan(s) Against Security $ | |

Initials: _____

## Item 11. Non-Public Business and Financial Interests
List all non-public business and financial interests, including but not limited to any interest in a non-public corporation, subchapter-S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## Item 12. Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |

## Item 13. Life Insurance Policies
List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
| | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
| | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14. Deferred Income Arrangements
List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|---|---|---|---|
| | Date Established / / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
| | Date Established / / | Type of Plan | Surrender Value before Taxes and Penalties $ |

Initials: _____

## Item 15. Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | | Amount Expected | Date Expected (mm/dd/yyyy) |
|------|--|-----------------|----------------------------|
| | | $ | / / |
| | | $ | / / |
| | | $ | / / |

## Item 16. Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|--------------|------|-------------------------|------------------|------------------------|-------------------|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|--------------|------|-------------------------|------------------|------------------------|-------------------|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|--------------|------|-------------------------|------------------|------------------------|-------------------|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|--------------|------|-------------------------|------------------|------------------------|-------------------|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17. Other Personal Property
List all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|--------------------------------------------|---------------|-------------------|------------------|---------------|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

Initials: _____

## Item 18. Real Property
List all real property interests (including any land contract)

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages | |
|---|---|---|---|

| Acquisition Date (mm/dd/yyyy) / / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages | |
|---|---|---|---|

| Acquisition Date (mm/dd/yyyy) / / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

## LIABILITIES

## Item 19. Credit Cards
List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## Item 20. Taxes Payable
List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

# ATTACHMENT B

## FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions**:

1.  Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.  The font size within each field will adjust automatically as you type to accommodate longer responses.

3.  In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4.  When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5.  Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

6.  Type or print legibly.

7.  An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

**Item 1.**        **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

 E-Mail Address_____ Internet Home Page_____

 All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.**        **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status: Active _____ Inactive _____ Dissolved _____

If Dissolved: Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.**        **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

**Item 4.**      **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

| Name & Address | % Owned |
| --- | --- |
| | |
| | |
| | |
| | |

**Item 5.**      **Board Members**

List all members of the corporation's Board of Directors.

| Name & Address | % Owned | Term (From/Until) |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

**Item 6.**      **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

| Name & Address | % Owned |
| --- | --- |
| | |
| | |
| | |
| | |

     Initials _____

**Item 7.**       **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

|                Name & Address                | Business Activities | % Owned |
| -------------------------------------------- | ------------------- | ------- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

State which of these businesses, if any, has ever transacted business with the corporation _____

_____

**Item 8.**       **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name |      Business Name & Address       | Business Activities | % Owned |
| ----------------- | ---------------------------------- | ------------------- | ------- |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

State which of these businesses, if any, have ever transacted business with the corporation _____

_____

**Item 9.**       **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date. A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

|            Name and Address            | Relationship | Business Activities |
| -------------------------------------- | ------------ | ------------------- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Initials _____

**Item 10.**     **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Item 11.**     **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**Item 12.**     **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Initials _____

<u>Item 13.</u>　　　**Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____　Relief Requested_____　Nature of Lawsuit_____

_____ Status_____

　　　　　　　　　　　　　　　　　Initials_____

<u>Item 14.</u>        **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

**Item 15.**        **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

**Item 16.**        **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## FINANCIAL INFORMATION

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

**Item 17.**        **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| Federal/ State/Both | Tax Year | Tax Due Federal | Tax Paid Federal | Tax Due State | Tax Paid State | Preparer's Name |
|---|---|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |

Initials _____

**Item 18.**      **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|----------------------------|----------|
|      |               |                         |                     |                            |          |
|      |               |                         |                     |                            |          |
|      |               |                         |                     |                            |          |
|      |               |                         |                     |                            |          |

**Item 19.**      **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

|  | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|--|----------------------|------------|-------------|-------------|
| Gross Revenue | $ | $ | $ | $ |
| Expenses | $ | $ | $ | $ |
| Net Profit After Taxes | $ | $ | $ | $ |
| Payables | $ | | | |
| Receivables | $ | | | |

**Item 20.**      **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____     Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|------------------------------------------|------------------------|-------------|-----------------|
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |

Initials _____

**Item 21.**       **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation.  Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

**Item 22.**       **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Initials _____

**Item 23.**    **Other Assets**

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

**Item 24.**    **Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |

Initials _____

**Item 25.**     **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


**Item 26.**     **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Initials _____

**Item 27.**     **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

**Item 28.**     **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| Name of Credit Card or Store | Names of Authorized Users and Positions Held |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Item 29.**     **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

         Initials _____

**Item 30.**      **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

**Item 31.**      **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (*e.g.*, Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

Page 14                                                        Initials _____

<u>**Item 32.**</u>      **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

<u>Item No. Document</u>      <u>Description of Document</u>
<u>Relates To</u>

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____      _____
(Date)                                Signature

                                     _____
                                     Corporate Position

## Item 21. Other Amounts Owed by You, Your Spouse, or Your Dependents

List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents.

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred<br>/ /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | Current Amount Owed<br>$ | Payment Schedule |
|---|---|---|---|

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred<br>/ /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | Current Amount Owed<br>$ | Payment Schedule |
|---|---|---|---|

## OTHER FINANCIAL INFORMATION

## Item 22. Trusts and Escrows

List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Include any legal retainers being held on your behalf by legal counsel. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.

| Trustee or Escrow Agent's Name & Address | Date Established (mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| | / / | | | $ |
| | / / | | | $ |
| | / / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

## Item 23. Transfers of Assets

List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties). For each such person or entity, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date (mm/dd/yyyy) | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | / / | |
| | | $ | / / | |
| | | $ | / / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials: _____

## Item 24. Document Requests
Provide copies of the following documents with your completed Financial Statement.

|  |  |
|---|---|
|  | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
|  | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes. You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 22 | All executed documents for any trust or escrow listed in Item 22. Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

## Item 25. Combined Balance Sheet for You, Your Spouse, and Your Dependents

| Assets |  | Liabilities |  |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles - Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property – Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non-Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | **Other Liabilities (Itemize)** |  |
| Deferred Income Arrangements (Item 14) | $ |  | $ |
| Vehicles (Item 16) | $ |  | $ |
| Other Personal Property (Item 17) | $ |  | $ |
| Real Property (Item 18) | $ |  | $ |
| **Other Assets (Itemize)** |  |  | $ |
|  | $ |  | $ |
|  | $ |  | $ |
|  | $ |  | $ |
| **Total Assets** | $ | **Total Liabilities** | $ |

## Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents
Provide the current monthly income and expenses for you, your spouse, and your dependents. Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each item) |  | Expenses |  |
|---|---|---|---|
| Salary - After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials: _____

| Item 26.  Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.) | | | | |
|---|---|---|---|---|
| Distributions from Trusts and Estates Source: | $ | | Medical Expenses, Including Insurance | $ |
| Distributions from Deferred Income Arrangements Source: | $ | | Other Insurance Premiums | $ |
| Social Security Payments | $ | | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | | **Other Expenses (Itemize)** | |
| Gambling Income | $ | | | $ |
| **Other Income (Itemize)** | | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| **Total Income** | $ | | **Total Expenses** | $ |

## ATTACHMENTS

### Item 27.  Documents Attached to this Financial Statement

List all documents that are being submitted with this financial statement.  For any Item 24 documents that are not attached, explain why.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____

(Date)

_____

Signature

# ATTACHMENT C

Form **4506**

(March 2019)

Department of the Treasury
Internal Revenue Service

# Request for Copy of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506, visit *www.irs.gov/form4506.*

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See **Form 4506-T, Request for Transcript of Tax Return,** or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being mailed to a third party, ensure that you have filled in lines 6 and 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax return to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your return information, you can specify this limitation in your written agreement with the third party.

**6** **Tax return requested.** Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶

    **Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . . . □

**7** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

**8** **Fee.** There is a $50 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.**

| | | | |
|---|---|---|---|
| **a** | Cost for each return . . . . . . . . . . . . . . . . . . . . . . | $ | 50.00 |
| **b** | Number of returns requested on line 7 . . . . . . . . . . . . . | | |
| **c** | Total cost. Multiply line 8a by line 8b . . . . . . . . . . . . . | $ | |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . □

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

□   **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506.** See instructions.

Phone number of taxpayer on line 1a or 2a

| | | |
|---|---|---|
| **Sign Here** | ▶ Signature (see instructions) | Date |
| | ▶ Title (if line 1a above is a corporation, partnership, estate, or trust) | |
| | ▶ Spouse's signature | Date |

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**      Cat. No. 41721E      Form **4506** (Rev. 3-2019)

  Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506*. Information about any recent developments affecting Form 4506, Form 4506-T and Form 4506T-EZ will be posted on that page.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Tip.** Use Form 4506-T, Request for Transcript of Tax Return, to request tax return transcripts, tax account information, W-2 information, 1099 information, verification of nonfiling, and records of account.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

If you are requesting a return for more than one year or period and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

### Chart for individual returns (Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
| --- | --- |
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 |

## Chart for all other returns

| If you lived in or your business was in: | Mail to: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |

## Specific Instructions

**Line 1b.** Enter your employer identification number (EIN) if you are requesting a copy of a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.

 *You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506 but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5a. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

# ATTACHMENT D

## CONSENT TO RELEASE FINANCIAL RECORDS

I, _____ of _____ , (City, State), do hereby direct any bank, saving and loan association, credit union, depository institution, finance company, commercial lending company, credit card processor, credit card processing entity, automated clearing house, network transaction processor, bank debit processing entity, automated clearing house, network transaction processor, bank debit processing entity, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, trustee, or person that holds, controls, or maintains custody of assets, wherever located, that are owned or controlled by me or at which there is an account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in its possession or control which relate to the said accounts to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of [          ], now pending in the United States District Court of [          ], and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States of America which restrict or prohibit disclosure of bank or other financial information without the consent of the holder of the account, and shall be construed as consent with respect hereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated:_____     Signature:_____

Printed Name:_____